JASON M. FRANK (190957)
ANDREW D. STOLPER (205462)
SCOTT H. SIMS (234148)
FRANK SIMS & STOLPER LLP
19800 MacArthur Blvd., Suite 855
Irvine, CA 92612
Telephone:   (949) 201-2400
Facsimile:   (949) 201-2405

FRANKLIN D. AZAR (*pro hac vice to be filed*)
FRANKLIN D. AZAR & ASSOCIATES, P.C.
14426 East Evans Avenue
Aurora, CO 80014
Telephone:   (303) 757-3300
Facsimile:   (720) 213-5131

*Attorneys for Plaintiffs, the Proposed Class and Subclasses*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MARTIN and LORI MITCHELL, each individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> TOYOTA MOTOR CREDIT CORPORATION, a California Corporation and TOYOTA MOTOR INSURANCE SERVICES, INC., a California Corporation <br><br> Defendants. | Case No.: <br><br> **CLASS ACTION** <br><br> COMPLAINT FOR: <br><br> (1) BREACH OF CONTRACT; <br><br> (2) MONEY HAD AND RECEIVED; <br><br> (3) VIOLATIONS OF THE CALIFORNIA UNFAIR BUSINESS PRACTICES ACT; <br><br> (4) VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT; and <br><br> (5) DECLARATORY RELIEF <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs William Martin ("Martin") and Lori Mitchell ("Mitchell") (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated (the "Class"), bring this action against Defendants Toyota Motor Credit Corporation ("TMCC") and Toyota Motor Insurance Services, Inc. ("TMIS") (collectively "Toyota" or "Defendants") to recover monetary damages, injunctive relief, and other remedies for breach of contract, money had and received, violations of California's Unfair Business Practices Act (the "UCL"), violations of California's Consumer Legal Remedies Act (the "CLRA") and declaratory relief. The following allegations are based upon Plaintiffs' personal knowledge with respect to their own acts and based upon information and belief as to all other matters.

## INTRODUCTION

1.     This action concerns Toyota's practice of knowingly collecting unearned fees for Guaranteed Automobile Protection Waivers ("GAP Waivers") after the early payoff of a customer's retail installment sales contract (also referred to herein as the "finance agreement"). Toyota knows these fees have not and will never be earned but collects them anyway. Toyota then refuses to refund this unearned money to its customers, even though Toyota is contractually and legally obligated to do so as the creditor and assignee of the finance agreement and GAP Waiver. As a result of this unlawful and fraudulent practice, Toyota knowingly collects and keeps tens of millions of dollars in unearned fees from its customers each year.

## FACTUAL BACKGROUND

2.     **What is a Retail Installment Sales Contract?**  Plaintiffs and the Class financed the purchase of their cars by entering into retail installment sales contracts with Toyota authorized dealers (the "dealers"). Under the agreements, Plaintiffs and the Class agreed to pay for the price of their cars in the future over a fixed period of years, with interest, in monthly installment payments. The dealers then immediately sold and assigned those contracts to Toyota. Thereafter, all future payments on the contracts were made directly to Toyota.

3.     **What is the difference between a Retail Installment Sales Contract and a Loan?**  Although similar, a retail installment sales contract is different than an auto loan.  As the U.S Consumer Financial Protection Bureau explains: "A loan is a transaction between you and a bank or other lender for money, where you use the money to purchase a vehicle and agree to repay the loan balance plus interest.  A retail installment sale, on the other hand, is a transaction between you and the dealer to purchase a vehicle where you agree to pay the dealer over time, paying both the value of the vehicle plus interest.  A dealer could sell the retail installment sales contract to a lender or other party." (See  www.consumerfinance.gov/ask-cfpb/what-is-a-retail-installment-sales-contract-or-agreement-is-this-a-loan-en-817/.)  That is exactly what happened in the present case.  Plaintiffs and the Class entered into retail installment sales contracts with the dealers, which were then immediately sold and assigned to Toyota.  Thereafter, Toyota became the creditor on the agreements.

4.     **What is a GAP Waiver?**  Each of the retail installment sales contracts at issue in this lawsuit included a GAP Waiver.  A GAP Waiver is an addendum to the retail installment sales contract which amends the terms of the contract and becomes a part of



the agreement.  It is a debt cancellation agreement, which provides that in the event a customer suffers a "total loss" of their vehicle and the actual cash value of their vehicle is worth less than the balance owed to the creditor, then the creditor will agree to waive the difference.  This difference is known as the "GAP."

5.     For example, assume a customer's car is stolen and the customer still owes $10,000 in payments on their retail installment sales contract.  Also, assume the customer's liability insurer only agrees to pay $8,000 for the "total loss" of the vehicle. Without a GAP Waiver, the customer would still owe the $2,000 difference to Toyota as the creditor on the contract, even though the customer no longer possesses the vehicle.

However, if the retail installment sales contract has a GAP Waiver, then Toyota is required to "waive" the $2,000 difference.[1]

6.     **How does a customer pay for GAP Coverage?**  Customers pay for GAP coverage in monthly installments over the life of their finance agreement.  The total cost of GAP coverage for the full term of the contract is separately listed on the retail installment sales contract as part of the total amount financed (the "GAP fees").  The contract will also list the total amount of interest that the customer will pay over the full term of the contract (the "finance charge").  However, while the customer is told up-front what the total cost of the GAP coverage and finance charge will be for the full term of the contract, the customer actually pays these amounts incrementally over time to Toyota on a month-to-month basis, which is included in the monthly payments for their car.

7.     **What are Unearned GAP Fees?**  When customers pay off their finance agreements early (before the original maturity date) this results in what Toyota and the rest of the auto finance industry refer to as "unearned GAP fees" and "unearned finance charges."  For example, if the total cost of GAP protection for four years of GAP coverage is $800, but the customer pays off their finance agreement in two years, this results in $400 of "unearned GAP fees" for the unused half of the contract term.  This portion of the GAP fees is "unearned" because once the finance agreement is paid-off early, there is no possibility of a GAP and the customer is no longer receiving anything of value by paying for future GAP protection.  Similarly, when the finance agreement is paid off early, the difference between the interest that had accrued up to the date of the early payoff and the total finance charge listed on the contract is known as the "unearned finance charge," because the customer no longer owes interest for the unused term of the agreement.

---

[1]     By structuring the transaction as a "debt cancellation agreement," rather than "insurance," Toyota is able to avoid insurance regulations designed to protect consumers, such as regulations regarding the amount charged for insurance protection and a dealer's ability to offer GAP coverage to customers without an insurance license.

8.     **How is Toyota Collecting and Keeping Unearned GAP Fees?** When a customer wants to pay off their finance agreement early (i.e., before the end of the contract term), Toyota informs the customer of the total payoff amount. Toyota will typically not include the unearned finance charge in the total payoff amount quoted to customers, but it will include the amount of the unearned GAP fees. In other words, at the time of the early payoff, Toyota fraudulently represents to its customers (including Plaintiffs and the Class) that they owe Toyota the unearned GAP fees for the remaining term of the contract, even though Toyota knows these fees are not earned, and can never be earned, because the finance agreement is terminating early. Toyota then collects and keeps these unearned GAP fees, unless the customer affirmatively requests a refund, which rarely happens. As a result of this practice, Toyota routinely collects and keeps tens of millions of dollars of unearned money *each year* that rightfully belongs to its customers.

9.     **Toyota Always Knows Its Customers are Entitled to a Credit or Refund of Unearned GAP Fees When There is an Early Payoff of the Finance Agreement.** Toyota *always* knows when there has been an early payoff of the finance agreement because Toyota, as the creditor, is the entity receiving the early payoff. Likewise, Toyota *always* knows it customers are entitled to a credit or refund of the unearned GAP fees after an early payoff, because Toyota knows that once the retail installment sales contract is terminated early, there is no basis for continuing to charge customers for future GAP coverage. Consequently, there is no legitimate basis for Toyota to include the unearned GAP fees in the early payoff amount quoted to customers, nor is there is any legitimate basis to collect such unearned money from its customers and then refuse to give it back unless the customers affirmatively requests a refund.

10.     **The Early Payoff of the Finance Agreement Automatically Cancels the GAP Waiver.** As explained above, the GAP Waiver is simply an addendum to the retail installment sales contract and is a part of the agreement. Consequently, the early payoff of the contract results in an *automatic* termination and cancellation of the GAP Waiver

addendum.  Toyota's own internal agreements with its dealers explain that coverage under the GAP Waiver addendum will "terminate" as soon as the finance agreement "expires, is paid off, or is otherwise terminated."

11.    **Toyota's "Condition Precedent" Defense is not Well Taken.**  Toyota claims that the "fine print" language on the back of its GAP Waiver addendums provide that customers must send a written notice of cancellation to Toyota as a "condition precedent" to a credit or refund of the unearned GAP fees.  Based on well-established contract interpretation principles applicable in all 50 states, Toyota's "condition precent" defense is not well taken for several reasons:

a. **Any Ambiguities in the GAP Waiver Addendum Must Be Construed Against Toyota.**  Toyota's GAP Waiver addendums are form contracts prepared by Toyota and offered to customers on a take-it-or-leave-it basis.  In other words, they are "contracts of adhesion."  As such, any ambiguities in the GAP Waiver addendums must be strictly construed against Toyota as the drafter.

b. **Conditions Precedent are Disfavored Under the Law in all 50 States.**  A condition precedent is an act or event that must occur before a duty to perform arises.  (13 Williston on Contracts, § 38:7; MDY Industries, LLC v. Blizzard Entertainment, Inc., 629 F.3d 928, 939 (9th Cir. 2010).)  Conditions precedent are disfavored under the law because they tend to work as forfeitures -- in this case, a forfeiture of the "unearned GAP fees." (Id.)  Thus, whenever possible, courts construe a provision in a contract as a promise or covenant, rather than a condition precedent, unless it is established by clear and unmistakable language that the failure to perform will result in a forfeiture.  (Id.; see also Hammes Co. Healthcare, LLC v. Tri-City Healthcare Dist., 2011 WL 6182423, at *5 (S.D. Cal. Dec. 13, 2011) ("It is well-established that conditions precedent are disfavored, and that 'a contract is not to be construed to provide a forfeiture unless no other interpretation is reasonably possible'").)  The difference is important, because the failure to perform a covenant or promise does not generally excuse the other party's performance, and instead only allows the non-breaching party to assert a claim

for damages (if any) caused by the breach. (Id.) As Williston on Contracts explains, "[t]his interpretation protects both parties to the transaction, is based on a policy of avoiding the harsh effect of forfeiture which may result from a failure of a condition precedent, and does not result in a minor failure to perform exactly as called for, wholly destroying all rights under the contract." (13 Williston on Contracts, § 38:7.)

c. **Toyota's Gap Waiver Forms Do Not Clearly and Unambiguously Provide that Customers will Forfeit their Unearned GAP Fees Unless They Request a Refund.** Toyota is relying on a provision in their GAP Waiver addendum which provides as follows:

> You have the right to cancel this Agreement at any time and to request a refund if no benefit has been provided under this Agreement. To cancel this Agreement, You must submit a written request to the Program Administrator[2] [Toyota] at the address shown above. (**Exhibit A**.)

The second sentence in this provision -- stating that the customer "must submit a written request" to cancel this Agreement -- is referring to situations when a customer wants to *voluntarily* cancel his or her GAP coverage during the contract term. In those situations, Toyota obviously would need to know that the customer wants to *voluntarily* cancel the coverage, which is why written notice is required. In contrast, as explained in Paragraph 10 above, the early payoff of the finance agreement *automatically* cancels the GAP Waiver that is a part of the agreement. Consequently, the second sentence in this provision – requiring a "written request" to cancel the agreement – is not applicable to situations where the contract is *automatically* terminated due to an early payoff. In fact, later versions of Toyota's GAP Waiver addendum make it clear that there is a distinction between a *voluntary* cancellation of GAP coverage and an *automatic termination* of coverage due to an early payoff of the finance agreement. (**Exhibits B** & **C**.) For

---

[2] The Program Administrator is Toyota Motor Insurance Services ("TMIS"), which operates under the same trade name as Toyota Motor Credit Corporation ("TMCC"), i.e., "Toyota Financial Services." Any distinction between the two entities relating to GAP is a fiction, and TMIS has the ability to access the same early payoff information as TMCC.

example, recognizing that its notice provisions did not clearly and unambiguously apply to early payoffs, Toyota revised the provision as follows:

> To cancel this Agreement and receive any refund due to the cancellation of this agreement, You must submit a written request to the Program Administrator at the address shown above. **If cancellation is due to the early termination of Your finance or lease contract, cancellation must be made in writing to the Program Administrator.** (Exhibit C (emphasis added).)

This change demonstrates that Toyota's prior GAP Waiver forms did not clearly and unambiguously apply to early payoffs, and this provision cannot be construed as a condition precedent, especially with respect to the earlier versions of the GAP Waiver forms.

        d. **Plaintiffs and the Class Actually and/or Substantially Complied with any Purported Notice Prerequisites.** Regardless of which version of Toyota's GAP Waiver form was provided to its customers, the notice provisions relied on by Toyota, at most, require written notice of cancellation of the finance agreement and its GAP Waiver addendum. Toyota's customers (including Plaintiffs and the Class) *always* provide written notice of cancellation to Toyota when they pay off their finance agreements early. These early payoffs are made by the customers in writing to Toyota (by written instrument, check or electronic payment), recorded in writing in Toyota's database and confirmed in writing by an "early payoff" letter sent by Toyota to its customers. Thus, Toyota always receives written notice of the cancellation of the agreement after an early payoff, thereby triggering its obligation to issue a credit or refund of the unearned GAP fees. While customers may not have sent the notice to the correct "address" listed on the GAP Waiver form for the "Program Administrator" – which is a Toyota entity – the law does not consider such minor and immaterial deviations from a contract provision to be grounds for a forfeiture. In all circumstances, Toyota received actual notice of the cancellation of the finance agreement and its GAP Waiver addendum, so the purpose of any purported notice prerequisite was fulfilled.

e. **Numerous States Have Laws or Regulations Concerning GAP Waivers that Require the Creditor to Automatically Issue a Credit or Refund of the Unearned GAP Fees After an Early Payoff, Without Any Further Notice or Request for a Refund from Customers.** There are currently at least 15 States in the United States, including Plaintiff Lori Mitchell's home State of Colorado, which prohibit creditors like Toyota from refusing to automatically refund unearned GAP fees after an early payoff. These States include Alabama, Colorado, Indiana, Iowa, Massachusetts, New Jersey, Nevada, Oklahoma, Oregon, South Carolina, Texas, Vermont and Wisconsin. Consequently, to the extent Toyota contends that customers are required to request a refund as a "condition precedent" to a credit or refund of unearned GAP fees after an early payoff in those States, such provisions are unlawful and cannot be enforced.

f. **Interpreting the Notice Provisions as Requiring Strict Compliance as a Condition Precedent to a Credit or Refund of Unearned GAP Fees will result in a Disproportionate Forfeiture.** Even if the notice provision was interpreted as a "condition precedent" (and it should not be), strict compliance with a condition precedent will be excused if "literal and exact performance" will result in a "disproportionate forfeiture." (Restatement of Law (Second) of Contracts, § 229.) When determining whether there will be a "disproportionate forfeiture" a court must weigh the extent of the forfeiture by the obligee (the customer) against "the importance of the risk the from which [the obligor (Toyota)] sought to be protected and the degree to which that protection will be lost if the non-occurrence of the condition is excused." (Id.) This presents a question of fact. Here, Toyota is refusing to refund the unearned GAP fees, because customers (including Plaintiffs and the Class) purportedly failed to send written notice of cancellation to the correct address listed in the GAP Wavier addendums. Toyota contends these customers forfeited their right to a refund of such fees, and customers are, in fact, no longer able to obtain a refund of this money as a result of this purported deviation from the notice provision. These customers (including

Plaintiffs and the Class) did not receive anything of value in exchange for paying unearned GAP fees after the early payoff, because once the retail installment sales contract is paid off early there is no potential GAP to protect against.  In contrast, Toyota did not suffer any harm from a customer's purported failure to mail notice of cancellation to the correct address specified in the contract, because it is undisputed that Toyota received actual notice of the cancellation.  Allowing this trivial deviation to result in a forfeiture of a customer's money would be the very definition of "disproportionate."

12.     **Toyota's Early Payoff Letters are Misleading and Fraudulently Conceal Toyota's Obligations to Refund the Unearned GAP Fees.**  After an early payoff, Toyota sends its customers (including Plaintiffs and the Class) a uniform letter from "Toyota Financial Services" confirming that the finance agreement has been "paid in full."  (**Exhibit D.**)  In the letter, Toyota informs customers that "[i]f you have paid off your account before the original maturity date" (i.e., an "early payoff") "you may be entitled to a refund" for products such as GAP, and "you can cancel these products by contacting your dealer or the product provider/administrator directly."  (Id.)  This letter is highly misleading because Toyota knows its customers are, in fact, entitled to a refund of the unearned GAP fees after an early payoff and Toyota knows the exact amount of the refund.  Thus, informing customers that they "may be entitled to a refund" of an unknown amount deceptively suggests that a refund is not certain and this language is used as an effort to deter customers from pursuing the refund.  Further, the early payoff of the finance agreement automatically cancels the GAP Waiver, because it is a part of the contract, so there is no need to "contact" anyone to "cancel" the product.  In addition, under the GAP Waiver, it is Toyota, not the dealer, that owes the refund to the customer, so directing customers to contact the dealer is an effort at misdirection.  Finally, the "program provider/administrator" of the GAP Waiver is "Toyota Financial Services" – the same company sending the pay-off letter – but this is not disclosed in the letter.[3]

---

[3] The provider of the GAP Waiver form is listed as "Toyota Financial Services" and the "Program Administrator" is TMIS.  (**Exhibit A, B**, and **C**.)  As noted above, both TMCC and TMIS operate under the service mark "Toyota Financial Services."

This is all designed to misleadingly conceal Toyota's refund obligations, and discourage customers from obtaining a refund of their unearned GAP fees.

13.   **Toyota Continues to Collect and Fail to Refund Unearned GAP Fees After an Early Payoff.**   Toyota is continuing its fraudulent and unlawful practice of including unearned GAP fees in the total payoff amount and refusing to automatically issue a credit or refund of those fees to its customers upon an early payoff.   Plaintiffs intend to enter finance agreements with Toyota GAP Waivers in the future and are thus at risk of being harmed by this practice in the future, just like the rest of the public.   Thus, Plaintiffs on behalf of themselves, the Class, and the general public are seeking:

a.   An order requiring Toyota to refund all unearned GAP fees it collected after the early payoff of the finance agreement to every customer in the United States;

b.   An order requiring Toyota to pay the interest that accrued on those delinquent refunds;

c.   An order requiring Toyota, on a go forward basis, to either: (i) issue a credit for the unearned GAP fees in the early payoff amount quoted to customers; or (ii) directly refund those unearned fees back to the customer promptly upon the early payoff of the finance agreement; and

d.   Damages, restitution and all other relief as may be just and proper.

## JURISDICTION AND VENUE

14.   This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) ("CAFA"), because at least one Class Member is of diverse citizenship from one of the defendants, there are 100 or more Class Members nationwide, and the aggregate amount in controversy exceeds $5,000,000.00.

15.   Venue is proper in the Central District of California under 28 U.S.C. § 1391 because Defendants' headquarters were located in the Central District in Torrance, California up until approximately September 2017, Defendants would be subject to personal jurisdiction in the Central District if that district was a separate State and

Defendants still maintain their most significant California operations in the Central District.  Further, a substantial portion of the events or omissions giving rise to this Action occurred in the Central District, including but not limited to (a) the creation and implementation of Defendants' policy to include unearned GAP fees in the early payoff amount quoted to customers and to collect and fail to refund those unearned fees to their customers; (b) the creation and dissemination of the GAP Waiver forms at issue in this Action; (c) the creation and dissemination of the final payoff letters at issue in this Action; (d) the acceptance of the assignment of the finance agreements from Plaintiff William Martin and other Class Members who purchased their cars prior to at least September 2017; and (e) the collection of unearned GAP fees from Class Members prior to at least September 2017.

## THE PLAINTIFFS

16.     Plaintiffs are individuals (a) who entered into finance agreements with GAP Waiver addendums that were assigned to Toyota, (b) who paid off their finance agreements to Toyota before the end of the original contract term, and (c) who did not receive a refund of the unearned GAP fees collected by Toyota and/or the accrued interest on those unpaid amounts.

17.     At all relevant times, Plaintiff William Martin ("Martin") was a citizen of the State of California, and a resident of Novato, California.  On or about February 10, 2012, Martin purchased a 2012 Toyota Tundra from the Toyota Marin dealership, located in San Rafael, California.  As part of this purchase, Martin entered a retail installment sales contract with a Toyota GAP Waiver addendum, a true and correct copy of which is attached as **Exhibit A**.[4]  The original contract term was for 84 months and the full cost of GAP coverage for that term would have been $545.37.  The finance agreement and GAP Waiver addendum were immediately sold and assigned to Toyota.  On or around

---

[4] Martin only had the front page of his GAP Waiver addendum.  Based on the form number listed in the bottom right-hand corner of the addendum, Plaintiffs are informed and believe that the second page included in **Exhibit A** is a true and correct copy of the terms on the back page of Martin's GAP Waiver addendum with Toyota Financial Services.

May 17, 2018, approximately 75 months after the contract start date, Toyota informed Martin of the total payoff amount for his finance agreement if he wanted to pay off the agreement early.  Toyota included unearned GAP fees of approximately **$57.37** in the total payoff amount.  Martin paid the total amount quoted by Toyota and provided Martin with written notice that the finance agreement was terminated.  Toyota collected and failed to refund the unearned GAP fees of approximately **$57.37** to Martin and Toyota contends that Martin has forfeited the right to receive a refund of those fees or any applicable interest.  After the early payoff of his finance agreement, Martin moved from California and is now currently a citizen and resident of the State of Nevada.

18.     At all relevant times, Plaintiff Lori Mitchell ("Mitchell") has been and is currently a citizen of the State of Colorado, and a resident of Lakewood, Colorado.  On or about May 8, 2018, Mitchell purchased a 2018 Toyota Highlander from the Mountain States Toyota dealership, located in Denver, Colorado.  In connection with this purchase, Mitchell entered a retail installment sales contract with a Toyota GAP Waiver addendum, a true and correct copy of which is attached as **Exhibit B**.  The original contract term was for 75 months and the full cost of GAP coverage for that term would have been $450.00.  The finance agreement and GAP Waiver addendum were immediately sold and assigned to Toyota.  On or around May 18, 2019, just over a year after the contract start date, Toyota informed Martin of the total payoff amount for her finance agreement if she wanted to pay off the agreement early.  Toyota included unearned GAP fees of approximately **$376.12** in the total payoff amount.  Mitchell paid the total amount quoted by Toyota and provided Toyota with written notice that the finance agreement was terminated.  Toyota collected and failed to refund the unearned GAP fees of approximately **$376.12** to Mitchell and Toyota contends that Mitchell has forfeited the right to receive a refund of those fees or any applicable interest.

## **DEFENDANTS**

19.     Defendant Toyota Motor Credit Corp. ("TMCC") is a California Corporation.  TMCC is the assignee of the finance agreements of Plaintiffs and the Class,

including the GAP Waiver addendums that are part of those finance agreements. TMCC's headquarters was located in Torrance, California until approximately September 2017, at which time it moved its headquarters to Plano, Texas.  TMCC, nevertheless, still maintains significant operations in Torrance, California.

20.    Defendant Toyota Motor Insurance Services, Inc. ("TMIS") is a California Corporation.  TMIS is listed as the "Program Administrator" in the GAP Waiver forms signed by Plaintiffs and the Class.  TMIS's headquarters was located in Torrance, California until approximately September 2017, at which time it moved its headquarters to Plano, Texas.  TMIS, nevertheless, still maintains significant operations in Torrance, California.

21.    TMCC and TMIS both operate under the trade name and service mark "Toyota Financial Services."[5]  TMCC and TMIS share many of the same officers and directors and operate out of the same offices.

22.    On information and belief, Plaintiffs allege that Defendants were, at all relevant times, the alter egos of each other such that to affirm the legal separateness of the Defendants for the purposes of the claims presented here would lead to an injustice and/or inequitable result.  There is a unity of interest and ownership between the defendant companies and their equitable owner(s) such that the separate personalities of the companies and their shareholders do not in reality exist.

23.    On information and belief, Plaintiffs allege that, at all relevant times, each Defendant was acting as a partner, agent, servant and/or employee of the remaining Defendants, within the course and scope of such agency and with the knowledge and/or understanding of the remaining Defendants.

24.    If necessary, Plaintiffs will seek to amend this Complaint to reflect Defendants' true names and capacities when they have been ascertained if not correctly named or yet named.  Plaintiffs are informed and believe, and thus allege, that each

---

[5] TMCC and TMIS also both operate under the service marks "TFS," "Lexus Financial Services" and "LFS."

defendant is responsible, jointly and severally, for the events and injuries described herein that caused damage to Plaintiffs and the Class.

## <u>CLASS ACTION ALLEGATIONS</u>

25.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class and Subclasses:

**a.     Nationwide Class**: Plaintiffs seek to represent a nationwide class including all persons: (1) who entered into finance agreements with a Toyota GAP Waiver addendum that were assigned to Toyota, (2) who paid off their finance agreements before the end of the contract term, and (3) who did not receive a credit or refund of the unearned GAP fees and/or the accrued interest on those amounts (the "Nationwide Class" or "Class").   On behalf of the Nationwide Class, Plaintiffs are asserting claims against Toyota for breach of contract, money had and received and declaratory relief.   The class period is based on the applicable statutes of limitations in each State.

**b.     The California Subclass:**   Plaintiff Martin is seeking to represent a subclass of consumers who fit the definition of the Nationwide Class, but which is limited to consumers who entered finance agreements with a Toyota GAP Waiver addendum in the State of California (the "California Subclass").   On behalf of the California Subclass, Plaintiff Martin is asserting claims against Toyota for breach of contract, money had and received, violation of California's Business & Professions Code section 17200 (the "UCL"), violation of California's Consumer Legal Remedies Act (the "CLRA"), and declaratory relief.   The class period is based on the applicable statutes of limitations.

**c.     The Colorado Subclass:**   Plaintiff Mitchell is seeking to represent a subclass of consumers who fit the definition of the Nationwide Class, but which is limited to consumers who entered finance agreements with a Toyota GAP Waiver addendum in the State of Colorado (the "Colorado Subclass").   On behalf of the Colorado Subclass, Plaintiff Mitchell is asserting claims against Toyota for breach of contract, money had

and received and declaratory relief.  The class period is based on the applicable statutes of limitations.

        **d.**    **Statutory Refund Subclass.**  Plaintiff Mitchell is seeking to represent a subclass of consumers who fit the definition of the Nationwide Class, but which is limited to those customers who entered Toyota GAP Waiver addendums in States which have specific statutes or regulations requiring the assignee and holder of the finance agreement (Toyota) to directly refund the unearned GAP fees upon the early payoff of the finance agreement (the "Statutory Refund Subclass").  This subclass includes consumers who entered Toyota GAP Waivers in the States of Alabama, Colorado, Indiana, Iowa, Massachusetts, New Jersey, Nevada, Oklahoma, Oregon, Texas, Vermont and Wisconsin.  On behalf of the Statutory Refund Subclass, Plaintiffs are asserting claims against Toyota for breach of contract, money had and received and declaratory relief.  The class period is based on the applicable statutes of limitations.

26.    Excluded from the proposed Class and Subclasses are: (a) Defendants and their agents, officers, directors, parent companies, subsidiaries, and affiliates; (b) counsel representing Plaintiffs and any person employed by counsel; and (c) any judicial officers assigned to this case and their staff.

27.    Plaintiffs reserve the right to revise the definition of the Class and Subclasses based upon subsequently discovered information.

28.    **Numerosity:**  While the exact numbers of the members of the Class and Subclasses are unknown to Plaintiffs at this time, membership in the Class and Subclasses may be ascertained from the records maintained by Toyota.  At this time, Plaintiffs are informed and believe that the Class includes hundreds of thousands of members and the Subclasses includes tens of thousands of members.  Therefore, the Class and Subclasses are sufficiently numerous that joinder of all members of the Class and Subclasses in a single action is impracticable under Rule 23(a)(1) of the Federal Rules of Civil Procedure, and the resolution of their claims through a class action will be of benefit to the parties and the Court.

29.     **Ascertainability:** The names and addresses of the members of the Class and Subclasses are contained in Toyota's records.  Notice can be provided to the members of the Class and Subclasses through direct mailing, email, publication, or otherwise using techniques and a form of notice similar to those customarily used in consumer class actions arising under State and Federal law.

30.     **Common Facts:** Common facts exist as to all members of the Class and Subclasses and predominate over any issues affecting individual members of the Class and Subclasses.  The common facts include the following:

a.     Plaintiffs and the members of the Class and Subclasses entered into finance agreements with Toyota GAP Waiver addendums.

b.     The finance agreements and GAP Waiver addendums were standard form contracts offered to customers on a take-it-or-leave-it basis.

c.     The finance agreements and GAP Waiver addendums were purchased by and assigned to Toyota.

d.     Every finance agreement entered by Plaintiffs and the members of the Class and Subclasses contained a provision stating that: "Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof."

e.     Toyota was the assignee and "holder" of every finance agreement and GAP Waiver addendum entered by Plaintiffs and the members of the Class and Subclasses.

f.     The total purchase price for GAP coverage for the full term of the finance agreement was listed as a separate line item on the first page of the finance agreement and included in the "total amount financed."

g.     After the assignment to Toyota, Plaintiffs and the members of the Class and Subclasses were required to make all payments under the finance agreements to Toyota with interest, including, but not limited to, the monthly payment of GAP fees.

h.      Toyota is responsible for preparing and drafting the terms and language in every Toyota GAP Wavier form.

i.      Every Toyota GAP Waiver form defines "We, Us or Our" as the "Creditor/Lessor."

j.      Every Toyota GAP Waiver form defines the "Creditor/Lessor" as "any person or entity who purchases or accepts assignment of the original finance or lease contract."

k.      Toyota, as the purchaser and assignee of the finance agreement, was the "Creditor/Lessor" of every GAP Waiver form entered by Plaintiffs and the members of the Class and Subclasses;

l.      After the assignment, every reference in the GAP Waiver forms to "We, Us or Our" refers to Toyota;

m.      Every Toyota GAP Waiver form provides that customers have the right to cancel the GAP Waiver at any time and to request a refund.

n.      Every GAP Waiver addendum is automatically cancelled when the finance agreement is paid off before the end of the contract term.

o.      Every Toyota GAP Waiver form provides that if the GAP Waiver is cancelled thirty-one (31) days or more from the contract start date, "We [Toyota] will refund the purchase price pro-rata based on the elapsed time from the Agreement Effective Date to the cancellation date."

p.      Toyota and the auto finance industry refer to the unused portion of the total GAP purchase price as "unearned fees" or "unearned GAP fees."

q.      Plaintiffs and the members of the Class and Subclasses paid off the balances on their finance agreements early – i.e. before the end of the original contract term.

r.      Toyota received written notice that Plaintiffs and the members of the Class and Subclasses paid off their finance agreements before the end of the original contract terms and thereby cancelled their GAP Waiver addendums early, because (1)

these customers paid off their balances through checks, wires or electronic payments, (2) Toyota recorded the pay-off date, in writing, in Toyota's computer records and (3) Toyota issued written confirmation letters confirming the finance agreements were paid off before the end of the original contract terms.

s.      Toyota possessed all of the information necessary to calculate the unearned GAP fees when Plaintiffs and the members of the Class and Subclasses paid off their finance agreements early, including (1) the method for calculating the refund (e.g., the pro-rata method), (2) the total purchase price for GAP coverage for the full term of the contract, (3) the date of the early payoff and resulting cancellation of the agreement, and (4) the amount of time remaining under the original contract term.

t.      Rather than deduct the unearned GAP fees from the total payoff amount, Toyota's common policy and practice throughout the United States is to include the unearned GAP fees in the total payoff amount quoted to customers when customers seek to pay off their finance agreements early.

u.      In conformance with its common policy and practice, Toyota included the unearned GAP fees in the total payoff amount quoted to Plaintiffs and the members of the Class and Subclasses.

v.      In conformance with its common policy and practice, Toyota collected the unearned GAP fees from Plaintiffs and the members of the Class and Subclasses and did not issue a credit or refund of the unearned GAP fees.

w.      Toyota's common policies and practices with respect to GAP Waivers are the same regardless of the language in the GAP Waiver forms.  In other words, Toyota treats all GAP Waiver forms as uniform in its business operations.

x.      **Exhibits A, B** and **C** reflect the three versions of GAP Waiver forms used by Toyota during the Class Period.  Any other differences in the forms are non-material.

1         y.    In practice, Toyota regularly does not require customers to strictly

2 comply with any applicable notice provisions in its GAP Waiver forms, thereby

3 demonstrating that strict compliance is not required by the contracts.

4         z.    After an early payoff, Toyota sends customers a standard payoff letter

5 confirming that the finance agreement has been "paid in full" and informing customers

6 that they "may be entitled to a refund" for their GAP Product and they should contact the

7 dealer or GAP provider/administrator to cancel the product.   Toyota misleadingly

8 conceals and fails to disclose in its payoff letter that: (i) Toyota knows for a fact that the

9 customer is entitled to a refund of the unearned GAP fees; (ii) Toyota knows the exact

10 amount of the refund; (iii) Toyota knows that Toyota is the entity that is contractually

11 obligated to issue the credit or refund of the unearned GAP fees to the customer, not the

12 dealer; and (iv) Toyota is the provider/administrator of the GAP product.

13         aa.    Toyota contends that Plaintiffs and the members of the Class and

14 Subclass have forfeited their right to a refund of unearned GAP fees by failing to strictly

15 comply with the GAP Waiver's purported notice requirements.

16    31.    **Common Questions of Law:** Common questions of law exist as to all

17 members of the Class and Subclasses and predominate over any issues solely affecting

18 individual members of the Class and Subclasses.  The common questions of law include,

19 but are not limited to:

20         a. Whether the early payoff of the finance agreement automatically

21 cancels the GAP Waiver addendum.

22         b. Whether Toyota, as the assignee, owes a contractual obligation to the

23 customer to issue a credit or refund of unearned GAP fees when required under the GAP

24 Waiver addendums.

25         c. Whether Toyota, as the "holder" of the finance agreement and GAP

26 Waiver addendum is responsible for issuing the credit or refund of the unearned GAP

27 fees to the customer pursuant to the "holder rule" mandated by 16 C.F.R. § 433.2.

28

d.  Whether Toyota was required to directly refund the unearned GAP fees after the early payoff of the finance agreement pursuant to the following State statutes and regulations:  Alabama (Ala. Code 1975 § 8-37-6; Ala. Admin. Code r. 155-2-2-.13); Colorado (4 Colo. Code Regs. § 902-1-8), Indiana (Ind. Code § 24-4.5-3-202; Ind. D.F.I., GAP Program Approval, Standardized GAP Agreements, No. 14), Iowa (Ia. St. § 537.2510), Massachusetts (Ma. St. 140D § 22, Mass Gen. Laws Ch. 255B § 16), Nevada (Nev. Rev. Stat. § 690D.200); New Jersey (N.J. Stat. § 17:16BB-6(b)); Oregon (Or. Rev. Stat. § 50.646A), Texas (Tex. Admin. Cod § 83.812; Tex. Fin Code § 354.007), Vermont (8 V.S.A. § 10405(11)), and Wisconsin (WSA § 218.0148).

e.  Whether Toyota owes the interest that accrued on the unpaid refund amounts.

f.  Whether Toyota's actual notice that the finance agreements have been paid off early is sufficient to trigger Toyota's credit and refund obligations under the GAP Waivers.

g.  Whether the payment of the final payoff amount constitutes written notice to Toyota that the finance agreement has been paid off early thereby entitling Plaintiffs and the members of the Class and Subclasses to a refund of their unearned GAP fees.

h.  Whether Toyota's records of the final payoff date and Toyota's payoff confirmation letters constitute sufficient written notice to Toyota under any applicable notice provision that the finance agreements have been paid off early thereby entitling Plaintiffs and the members of the Class and Subclasses to a refund of their unearned GAP fees.

i.  Whether Plaintiffs and the members of the Class and Subclasses "substantially complied" with any purported notice requirements in the GAP Waiver addendums by providing notice to the party with the refund obligation (Toyota) that the finance agreements have been paid off early.

j.   Whether it would be unjust to conclude that Plaintiffs and the members of the Class and Subclasses forfeited their right to a refund of the unearned GAP fees as a result of technical deviations from the GAP Waiver's purported notice requirements, especially where, as here, the party with the refund obligation (Toyota) received actual notice.

k.   Whether it would be unconscionable to conclude that Plaintiffs and the members of the Class and Subclasses forfeited their right to a refund of the unearned GAP fees as a result of technical deviations from the GAP Waiver's purported notice provisions, especially where, as here, the party with the refund obligation (Toyota) received actual notice.

l.   Whether the knowledge of TMCC is imputed to TMIS, and vice-versa.

m. Whether Toyota has received money which belongs to Plaintiffs and the members of the Class and Subclasses and which in equity and good conscience should be paid over to Plaintiffs and the members of the Class and Subclasses.

n.   Whether a contractual provision, if any, requiring Plaintiffs and the members of the Class and Subclasses to send a subsequent written notice that the finance agreement has been paid off early as a condition precedent to the refund is enforceable, when the party with the refund obligation (Toyota) already knows the finance agreement has been paid off early.

o.   Whether Toyota's interpretation of its notice provisions as a condition precedent requiring strict compliance would result in a disproportionate forfeiture of unearned GAP fees after an early payoff.

p.   Whether Toyota's practice of including unearned GAP fees in the early payoff amount quoted to customers is an unfair, fraudulent or unlawful business practice under the UCL.

q.   Whether Toyota's practice of denying its refund obligations is an unfair, fraudulent or unlawful business practice under the UCL.

r. Whether Toyota's payoff confirmation letter is deceptive and misleading in violation of the UCL.

s. Whether Toyota violated the CLRA because it represented to its customers that they owed unearned GAP fees in the total payoff amount, even though Toyota knew those fees were not earned and could never be earned as a result of the early payoff.

t. Whether Toyota's interpretation of its notice provisions as a condition precedent requiring strict compliance and a forfeiture of unearned GAP fees would be unconscionable and violate the CLRA.

u. Whether Plaintiffs and the members of the Class and Subclasses are entitled to damages and restitution in the amount of the unearned GAP fees, as well as the accrued interest on those unpaid amounts.

v. Whether Plaintiffs and the members of the Class and Subclasses are entitled to an award of reasonable attorneys' fees and costs.

w. Whether the Court should issue a public injunction requiring Toyota to either: (1) refrain from including unearned GAP fees in the total payoff amount quoted to customers; or (2) automatically refund those unearned fees back to the customer promptly upon the early payoff of the finance agreement

32. **Typicality:** Plaintiffs' claims are typical of the claims of the members of the Class and Subclasses. Plaintiffs have been subjected to the same wrongful business practices and have been damaged in the same manner. Specifically, Toyota included unearned GAP fees in the total payoff amount quoted to Plaintiffs and then proceeded to collect those unearned GAP fees without issuing a credit or refund back to Plaintiffs, nor pay interest on the delinquent amounts.

33. **Adequacy:** Plaintiffs will fairly and adequately represent and protect the interests of the Class and Subclasses as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiffs are adequate representatives of the Class and Subclasses because they do not have any interests which are adverse to the interests of the members of the Class

or Subclasses.  Plaintiffs are committed to the vigorous prosecution of this action and, to that end, Plaintiffs have retained counsel who are competent and experienced in handling class action litigation on behalf of consumers.

34.     Plaintiffs' interests are co-extensive with, and not antagonistic to, those of the absent members of the Class and Subclasses.  Plaintiffs will undertake to represent and protect the interests of the absent members of the Class and Subclasses.

35.     Plaintiffs have engaged the services of the undersigned counsel.  Counsel is experienced in complex consumer class action litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiffs and the absent members of the Class and Subclasses.

36.     **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action under Rule 23(b)(3) of the Federal Rules of Civil Procedure because: (a) the expense and burden of individual litigation make it economically unfeasible for members of the Class and Subclasses to seek redress of their claims other than through the procedure of a class action; (b) if separate actions were brought by individual members of the Class and Subclasses, the resulting duplicity of lawsuits would risk inconsistent results; and (c) absent a class action, Toyota will likely retain the benefits of its wrongdoing, resulting in a failure of justice.

37.     **Predominance:** Class action status is warranted under Rule 23(b)(3) of the Federal Rules of Civil Procedure because questions of law or fact common to the members of the Class and Subclasses predominate over any questions affecting only individual members.  The interests of the members of the Class and Subclasses in individually controlling the prosecution of separate actions are theoretical and not practical.  Prosecution of this action through multiple Class Representatives would be superior to individual lawsuits.  Plaintiffs are not aware of any difficulty which will be encountered in the management of this litigation which should preclude its maintenance as a class action.

# FIRST CLAIM
## BREACH OF CONTRACT
### (On Behalf of All Plaintiffs and the Class and Subclasses)

38.     Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

39.     Plaintiffs bring this claim on behalf of themselves and the members of the Class and Subclasses.

40.     Plaintiffs and the members of the Class and Subclasses entered into finance agreements with Toyota GAP Waiver addendums that were assigned to Toyota.

41.     A true and correct copy of Plaintiff Martin's finance agreement and GAP Waiver addendum is attached as **Exhibit A.**[6]

42.     A true and correct copy of Plaintiff Mitchell's finance agreement and GAP Waiver addendum is attached as **Exhibit B.**

43.     The Toyota GAP Waiver addendums provide that Toyota will issue a credit or refund of unearned GAP fees if the GAP Waiver is cancelled before the end of the original contract term, so long as Toyota has not been required to waive any GAP amounts under the agreement.

44.     Plaintiffs and the members of the Class and Subclasses paid off the finance agreements early (i.e., before the end of the original contract term), which resulted in the automatic cancellation of the GAP Waiver addendum.

45.     At the time of the early payoff, Toyota included the unearned GAP fees in the total payoff amount quoted to Plaintiffs and the members of the Class and Subclasses.

46.     Plaintiffs and the members of the Class and Subclasses paid the total payoff amount to Toyota, including the unearned GAP fees.

---

[6] As noted above, Martin only had the front page of his GAP Waiver addendum.  Based on the form number listed in the bottom right-hand corner of the addendum, Plaintiffs are informed and believe that the second page of the GAP Waiver included in **Exhibit A** is a true and correct copy of the terms and conditions on the back page of the GAP Waiver.

24

47.     Plaintiffs and the members of the Class and Subclasses provided written notice to Toyota that they were cancelling the GAP Waiver by paying off the finance agreement early (i.e., prior to the end of the original contract term).

48.     Plaintiffs and the members of the Class and Subclasses actually and/or substantially complied with all of their contractual obligations under the GAP Waiver addendum, including but not limited to any purported written notice requirements.

49.     In breach of the finance agreements and GAP Waiver addendums, Toyota wrongfully collected the unearned GAP fees upon the early payoff of the finance agreements and failed to refund those amounts to Plaintiffs and the members of the Class and Subclasses as required under the GAP Waiver addendums.

50.     Plaintiffs and the members of the Class and Subclasses were harmed, suffered out-of-pocket loss, and did not receive the benefit of their bargains because Toyota failed to issue a credit or refund of the unearned GAP fees after the early payoff of the finance agreements and failed to pay the interest that accrued on those unpaid amounts.

51.     Toyota is liable to Plaintiffs and the members of the Class and Subclasses for the damages they suffered as a direct result of Toyota's collection and failure to promptly issue a credit or refund of the unearned GAP fees, as well as the interest that accrued on those unpaid amounts.

52.     Allowing Toyota to keep unearned money due to a purported failure to strictly comply with the GAP Waiver's notice provisions would result in a disproportionate forfeiture as described in Paragraph 11(f) above.

**SECOND CLAIM**
**BREACH OF CONTRACT IN STATUTORY REFUND STATES**
**(On Behalf of Plaintiff Lori Mitchell, the Colorado Subclass and the Statutory Refund Subclass)**

53.     Plaintiff Mitchell hereby repeat, reallege and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

54.     Plaintiff Mitchell brings this claim on behalf of herself and the members of the Colorado Subclass and the Statutory Refund Subclass.

55.     Plaintiff Mitchell and the members of the Colorado Subclass and the Statutory Refund Subclass entered into finance agreements with Toyota GAP Waiver addendums that were assigned to Toyota.  These agreements were entered into in the States of Alabama, Colorado, Indiana, Iowa, Massachusetts, Nevada, New Jersey, Oregon, Texas, Vermont and Wisconsin.

56.     A true and correct copy of Plaintiff Mitchell's finance agreement and GAP Waiver addendum is attached as **Exhibit B.**

57.     The Toyota GAP Waiver addendums provide that Toyota will issue a credit or refund of unearned GAP fees if the GAP Waiver is cancelled before the end of the original contract term.

58.     Plaintiffs and the members of the Colorado Subclass and Statutory Refund Subclass paid off the finance agreements early (i.e., before the end of the original contract term), which resulted in the automatic cancellation of the GAP Waiver addendums.

59.     At the time of the early payoff, Toyota included the unearned GAP fees in the total payoff amount quoted to Plaintiff Mitchell and the members of the Colorado Subclass and Statutory Refund Subclass.

60.     Plaintiff Mitchell and the members of the Colorado Subclass and Statutory Refund Subclass paid the total payoff amount to Toyota, including the unearned GAP fees.

61.     The following State statutes and regulations require Toyota, as the assignee and creditor of the GAP Waiver addendums, to automatically issue a credit or refund of unearned GAP fees upon the early payoff of the finance agreement: Alabama (Ala. Code 1975 § 8-37-6; Ala. Admin. Code r. 155-2-2-.13); Colorado (4 Colo. Code Regs. § 902-1-8), Indiana (Ind. Code § 24-4.5-3-202; Ind. D.F.I., GAP Program Approval, Standardized GAP Agreements., No. 14), Iowa (Ia. St. § 537.2510), Massachusetts (Ma. St. 140D § 22, Mass Gen. Laws Ch. 255B § 16), Nevada (Nev. Rev. Stat. § 690D.200);

New Jersey (N.J. Stat. § 17:16BB-6(b)); Oregon (Or. Rev. Stat. § 50.646A), Texas (Tex. Admin. Cod § 83.812; Tex. Fin Code § 354.007), Vermont (8 V.S.A. § 10405(11)), and Wisconsin (WSA § 218.0148).

62.     Plaintiff Mitchell and the members of the Colorado Subclass and Statutory Refund Subclass actually and/or substantially complied with all of their contractual obligations under the GAP Waiver addendums.

63.     In breach of their legal and contractual obligations under the finance agreements and GAP Waiver addendums and the aforementioned State laws and regulations, Toyota wrongfully collected the unearned GAP fees upon the early payoff of the finance agreements and failed to promptly issue a credit or refund of those amounts to Plaintiff Mitchell and the members of the Colorado Subclass and Statutory Refund Class

64.     Plaintiff Mitchell and the members of the Colorado Subclass and Statutory Refund Subclass were harmed, suffered out-of-pocket loss, and did not receive the benefit of their bargains because Toyota failed to refund the unearned GAP fees after the early payoff of the finance agreements and failed to pay the interest that accrued on those unpaid amounts.

65.     Toyota is liable to Plaintiffs and the members of the Colorado Subclass and Statutory Refund Subclass for the damages they suffered as a direct result of Toyota's collection and failure to promptly issue a credit or refund of the unearned GAP fees, as well as the interest that accrued on those unpaid amounts as required under the applicable State laws and regulations.

### THIRD CLAIM
### MONEY HAD AND RECEIVED
**(On Behalf of all Plaintiffs and the Class and Subclasses)**

66.     Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

67.     A claim for "money had and received" may be asserted any time a defendant holds money in its possession which in equity and good conscience belongs to the plaintiff.

68.     Toyota acknowledges and refers to the remaining portion of GAP fees after an early payoff of the finance agreement as "unearned fees" or "unearned GAP fees."

69.     After the early termination of the finance agreement, Plaintiffs and the members of the Class and Subclasses did not receive any consideration for the unearned GAP fees collected by Toyota.

70.     Toyota included the unearned GAP fees in the total payoff amount quoted to Plaintiffs and the members of the Class and Subclasses and collected those fees from Plaintiffs and the members of the Class and Subclasses.

71.     Toyota maintains possession of the unearned GAP fees belonging to Plaintiffs and the members of the Class and Subclasses.  This money in equity and good conscience rightfully belongs to Plaintiffs and the members of the Class and Subclasses.

72.     Plaintiffs and the members of the Class and Subclasses seek restitution of the unearned GAP fees collected and retained by Toyota, as well as the interest that accrued on those unpaid amounts.

**FOURTH CLAIM**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**(On Behalf of Plaintiff William Martin and the California Subclass)**

73.     Plaintiff Martin hereby repeats, realleges and incorporates by reference each and every allegation contained above as though the same were fully set forth herein.

74.     Plaintiff Martin brings this claim for violation of California Business and Professions Code section 17200 *et seq.* (the "UCL") on behalf of himself and the members of the California Unfair Business Practices Subclass.

75.     The UCL prohibits acts of "unfair competition" including any unfair, fraudulent or unlawful business practices.

76.     Toyota violated the UCL and CLRA by wrongly including the unearned GAP fees in the total payoff amount, and Plaintiff Martin, in reliance on that

representation, paid the unearned GAP fees to Toyota. Toyota then wrongfully refused to acknowledge its refund obligation and its liability under the UCL, CLRA and the FTC's "holder rule" for such amounts. It further actively concealed its refund obligation by sending a uniform payoff letter misleadingly stating the customer "may" be entitled to a refund of a portion of their GAP fees and they should contact the dealer or the product provider/administrator to cancel the product. This payoff letter is deceptive and misleading because it fails to disclose that: (i) Toyota knows for a fact that the customer is entitled to a refund of the unearned GAP fees upon an early payoff; (ii) Toyota knows the exact amount of the refund; (iii) Toyota knows that Toyota is the entity that is contractually and legally obligated to issue the credit or refund of the unearned GAP fees to the customer, not the dealer; and (iv) Toyota is the provider/administrator of the GAP product. These practices are likely to and actually did mislead Plaintiff Martin and other reasonable consumers into paying unearned GAP fees to Toyota and failing to seek a refund of such fees from Toyota.

77.     Toyota's practice of collecting and failing to refund unearned GAP fees after the early payoff of the finance agreement is an "unfair" business practice proscribed by the UCL. There is no reasonable basis for Toyota to collect and fail to refund fees that Toyota knows are not earned and will never be earned. Further, there is no legitimate basis to require customers to send a subsequent written notice to Toyota or its agents that the finance agreement has been paid off early as a condition precedent for the refund, when the party with the refund obligation (Toyota) already knows the finance agreement has been paid off early. This practice is substantially injurious to consumers and has allowed Toyota to be unjustly enriched at the consumers' expense. This substantial injury is not outweighed by any countervailing benefits to customers or competition.

78.     Toyota's inclusion of unearned GAP fees in the total payoff amount quoted is a "fraudulent" business practice under the UCL in that it is likely to deceive a reasonable consumer, and did in fact deceive Plaintiff Martin and the members of the California Subclass, into paying money to Toyota that Toyota did not earn and could

never be earned.  Toyota's refusal to acknowledge its obligation to refund the unearned GAP fees in its payoff letters, and its liability under the "holder rule" for such amounts, is a "fraudulent" business practice under the UCL in that it is tantamount to an incorrect and misleading assertion that no claims for refunds may be brought against Toyota. Likewise, Toyota's practice of misdirecting customers to contact the dealer about a possible refund, when Toyota knows customers are, in fact, entitled to a refund of the unearned GAP fees from Toyota when the finance agreement is paid off early, is a "fraudulent" business practice under the UCL, because it is likely to deceive and deter a reasonable consumer from seeking such refunds from Toyota.

79.    Toyota's practices described above are unlawful and, at a minimum, violate California's Consumer Legal Remedies Act (the "CLRA") which prohibits Toyota from representing that a transaction confers or involves rights, remedies and obligations that it does not have and prohibits the inclusion of unconscionable terms in a consumer contract.

80.    As a direct and proximate result of Toyota's violations of the UCL, Plaintiff Martin and each of the members of the California Subclass have been injured in fact and suffered lost money or property in that Toyota collected and failed to refund their unearned GAP fees after the early payoff of their finance agreements.

81.    Pursuant to section 17203 of the UCL, Plaintiff Martin and the members of California Subclass, are seeking restitution of all unearned GAP fees that Toyota failed to refund after the early payoff of their finance agreements, with accrued interest on the unpaid amounts.

82.    Plaintiff Martin and the members of the California Subclass are further seeking an order enjoining Toyota from collecting and failing to promptly refund unearned GAP fees after the early payoff of the finance agreement.  Without such an order, there is a continuing threat to Plaintiff Martin and the members of the California Subclass, as well as to members of the general public, that Toyota will continue to improperly collect and keep possession of unearned GAP fees and fail to issue a credit or refund such fees to California consumers.

**FIFTH CLAIM**
**VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT**
**(On Behalf of Plaintiff William Martin and the California Subclass)**

83.     Plaintiff Martin hereby repeats, realleges and incorporates by reference each and every allegation contained above as though the same were fully set forth herein.

84.     Plaintiff Martin brings this claim for violations of California's Consumer Legal Remedies Act, California Civil Code section 1750 et seq. (the "CLRA").   This claim is brought on behalf of himself and the members of the California Subclass.

85.     The finance agreements and GAP Waiver addendums are consumer service contracts covered by the CLRA.

86.     California Civil Code section 1770(a), subdivision (14), prohibits a seller of consumer goods or services from representing that a transaction confers or involves rights, remedies or obligations that it does not have.

87.     California Civil Code section 1770(a), subdivision (19), prohibits a seller of consumer goods or services from inserting an unconscionable provision in a contract.

88.     The GAP Waiver addendums are adhesion contracts.

89.     Toyota violated California Civil Code section 1770(a), subdivision (14), because it represented to its customers that they owed unearned GAP fees in the total payoff amount, even though Toyota knew those fees were not earned and could never be earned as a result of the early payoff.

90.     Toyota violated California Civil Code section 1770(a), subdivision (19) by including unconscionable provisions in its GAP Wavier forms.   Any provision in the GAP Waiver forms that purports to require customers to send a subsequent written notice to Toyota, the dealer or any other party that the finance agreement has been paid off early as a condition precedent to a credit or refund of unearned GAP fees is unfair, unconscionable and unenforceable, because the party with the refund obligation (Toyota) already knows the finance agreement has been paid off early.   Consequently, any provision that would result in a customer forfeiting the refund of unearned GAP fees in

these circumstances would be overly harsh, would unreasonably favor Toyota and is unconscionable as a matter of fact and law.

91.     In light of this violation of the CLRA, Plaintiff Martin, on behalf of himself and the members of the California Subclass, hereby seek an order enjoining Toyota from including unearned GAP fees in the total payoff amount quoted to customers and collecting and failing to promptly refund unearned GAP fees after the early payoff of the finance agreement.  Without such an order, there is a continuing threat to Plaintiff Martin and the members of the California Subclass, as well as to members of the general public, that Toyota will continue to improperly include unearned GAP fees in the total payoff amount quoted to its customers and continue to improperly collect and keep possession of unearned GAP fees, rather than issue a credit or refund of such fees to California consumers.

92.     Plaintiff Martin has sent a CLRA Demand Letter via certified registered mail to Toyota demanding, *inter alia*, that (a) Toyota no longer include unearned GAP fees in the total payoff amount quoted to customers; (b) Toyota promptly issue a credit or refund of the unearned GAP fees upon the early payoff of the finance agreement; (c) Toyota issue a refund of the unearned GAP fees with accrued interest to all customers in California who paid off their finance agreements early and did not receive a credit or refund of the unearned GAP fees; and (d) Toyota no longer purport to require additional written notice of the cancellation of the GAP Waiver addendum after an early payoff as a purported condition precedent to a credit or refund of unearned GAP fees.  If Toyota fails to implement the requested corrective measures within thirty days of receipt of the CLRA Demand Letter, or within a reasonable time thereafter, Plaintiff Martin will amend this claim to seek damages and punitive damages under the CLRA.

**SIXTH CLAIM**
**DECLARATORY RELIEF**
**(On Behalf of all Plaintiffs and the Class and Subclasses)**

93.    Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

94.    There exists a present controversy between the parties as to the following issues:

a.    Whether Toyota, as the assignee, owes a contractual obligation to the customer under the GAP Waiver to refund unearned GAP fees when the finance agreement has been paid off early.

b.    Whether Toyota is required to pay interest on any unearned GAP fees that it collects when the finance agreement has been paid off early and which it subsequently fails to promptly refund.

c.    Whether Toyota is legally required to refund the unearned GAP fees it collects from customers who pay off their finance agreements early under the following State statutes and regulations:  Alabama (Ala. Code 1975 § 8-37-6; Ala. Admin. Code r. 155-2-2-.13); Colorado (4 Colo. Code Regs. § 902-1-8), Indiana (Ind. Code § 24-4.5-3-202; Ind. D.F.I., GAP Program Approval, Standardized GAP Agreements, No. 14), Iowa (Ia. St. § 537.2510), Massachusetts (Ma. St. 140D § 22, Mass Gen. Laws Ch. 255B § 16), Nevada (Nev. Rev. Stat. § 690D.200); New Jersey (N.J. Stat. § 17:16BB-6(b)); Oregon (Or. Rev. Stat. § 50.646A), Texas (Tex. Admin. Cod § 83.812; Tex. Fin Code § 354.007), Vermont (8 V.S.A. § 10405(11)), and Wisconsin (WSA § 218.0148).

d.    Whether Toyota is legally required to pay interest on the unpaid refund amounts under the following State statutes and regulations:  Alabama (Ala. Code 1975 § 8-37-6; Ala. Admin. Code r. 155-2-2-.13); Colorado (4 Colo. Code Regs. § 902-1-8), Indiana (Ind. Code § 24-4.5-3-202; Ind. D.F.I., GAP Program Approval, Standardized GAP Agreements, No. 14), Iowa (Ia. St. § 537.2510), Massachusetts (Ma. St. 140D § 22, Mass Gen. Laws Ch. 255B § 16), Nevada (Nev. Rev. Stat. § 690D.200); New Jersey (N.J. Stat. § 17:16BB-6(b)); Oregon (Or. Rev. Stat. § 50.646A), Texas (Tex.

Admin. Cod § 83.812; Tex. Fin Code § 354.007), Vermont (8 V.S.A. § 10405(11)), and Wisconsin (WSA § 218.0148).

95.     Plaintiffs and the members of the Class and Subclasses contend Toyota owes these obligations.

96.     Accordingly, Plaintiffs and the members of the Class and Subclasses hereby request the Court issue an order declaring that:

a.     Toyota, as the assignee, owes a contractual obligation to the customer under the GAP Waiver to refund unearned GAP fees when the finance agreement has been paid off early.

b.     Toyota is required to pay interest on any unearned GAP fees that it collects when the finance agreement has been paid off early and which it subsequently fails to promptly refund.

c.     Toyota is legally required to refund the unearned GAP fees it collects from customers who pay off their finance agreements early under the following state statutes and regulations:  Alabama (Ala. Code 1975 § 8-37-6; Ala. Admin. Code r. 155-2-2-.13); Colorado (4 Colo. Code Regs. § 902-1-8), Indiana (Ind. Code § 24-4.5-3-202; Ind. D.F.I., GAP Program Approval, Standardized GAP Agreements, No. 14), Iowa (Ia. St. § 537.2510), Massachusetts (Ma. St. 140D § 22, Mass Gen. Laws Ch. 255B § 16), Nevada (Nev. Rev. Stat. § 690D.200); New Jersey (N.J. Stat. § 17:16BB-6(b)); Oregon (Or. Rev. Stat. § 50.646A), Texas (Tex. Admin. Cod § 83.812; Tex. Fin Code § 354.007), Vermont (8 V.S.A. § 10405(11)), and Wisconsin (WSA § 218.0148).

d.     Toyota is legally required to pay interest on the unpaid refund amounts under the following state statutes and regulations:  Alabama (Ala. Code 1975 § 8-37-6; Ala. Admin. Code r. 155-2-2-.13); Colorado (4 Colo. Code Regs. § 902-1-8), Indiana (Ind. Code § 24-4.5-3-202; Ind. D.F.I., GAP Program Approval, Standardized GAP Agreements, No. 14), Iowa (Ia. St. § 537.2510), Massachusetts (Ma. St. 140D § 22, Mass Gen. Laws Ch. 255B § 16), Nevada (Nev. Rev. Stat. § 690D.200); New Jersey (N.J. Stat. § 17:16BB-6(b)); Oregon (Or. Rev. Stat. § 50.646A), Texas (Tex. Admin. Cod §

83.812; Tex. Fin Code § 354.007), Vermont (8 V.S.A. § 10405(11)), and Wisconsin (WSA § 218.0148).

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court enter a judgment against Toyota in favor of Plaintiffs and the members of the Class and Subclasses and award the following relief:

1. An order certifying this lawsuit as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as the representatives of the Class and their respective Subclasses, and appointing Plaintiffs' counsel as Class Counsel for the Class and Subclasses;

2. An order declaring the following:

   a. Toyota, as the assignee, owes a contractual obligation to the customer under the GAP Waiver to refund unearned GAP fees when the finance agreement has been paid off early.

   b. Toyota is required to pay interest on any unearned GAP fees that it collects when the finance agreement has been paid off early and which it subsequently fails to promptly refund.

   c. Toyota is legally required to refund the unearned GAP fees it collects from customers who pay off their finance agreements early under the following state statutes and regulations: Alabama (Ala. Code 1975 § 8-37-6; Ala. Admin. Code r. 155-2-2-.13); Colorado (4 Colo. Code Regs. § 902-1-8), Indiana (Ind. Code § 24-4.5-3-202; Ind. D.F.I., GAP Program Approval, Standardized GAP Agreements, No. 14), Iowa (Ia. St. § 537.2510), Massachusetts (Ma. St. 140D § 22, Mass Gen. Laws Ch. 255B § 16), Nevada (Nev. Rev. Stat. § 690D.200); New Jersey (N.J. Stat. § 17:16BB-6(b)); Oregon (Or. Rev. Stat. § 50.646A), Texas (Tex. Admin. Cod § 83.812; Tex. Fin Code § 354.007), Vermont (8 V.S.A. § 10405(11)), and Wisconsin (WSA § 218.0148).

d.  Toyota is legally required to pay interest on the unpaid refund amounts under the following state statutes and regulations:  Alabama (Ala. Code 1975 § 8-37-6; Ala. Admin. Code r. 155-2-2-.13); Colorado (4 Colo. Code Regs. § 902-1-8), Indiana (Ind. Code § 24-4.5-3-202; Ind. D.F.I., GAP Program Approval, Standardized GAP Agreements, No. 14), Iowa (Ia. St. § 537.2510), Massachusetts (Ma. St. 140D § 22, Mass Gen. Laws Ch. 255B § 16), Nevada (Nev. Rev. Stat. § 690D.200); New Jersey (N.J. Stat. § 17:16BB-6(b)); Oregon (Or. Rev. Stat. § 50.646A), Texas (Tex. Admin. Cod § 83.812; Tex. Fin Code  § 354.007), Vermont (8 V.S.A. § 10405(11)), and Wisconsin (WSA § 218.0148).

3.  An award to Plaintiffs and the members of the Class and Subclasses of all appropriate relief, including actual damages, restitution and disgorgement of the unearned GAP fees;

4.  An award of all costs for prosecuting the litigation, including expert fees;

5.  An award of pre- and post-judgment interest;

6.  An award of attorneys' fees; and

7.  An order granting any such additional relief as this Court may deem just and proper.

Dated:  November 17, 2020            FRANK SIMS & STOLPER LLP

                                    _____/s/ Jason M. Frank_____
                                    JASON M. FRANK, ESQ.
                                    ANDREW STOLPER, ESQ
                                    SCOTT H. SIMS, ESQ.

                                    *Attorneys for Plaintiffs*

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury as to all claims in this action.

Dated:  November 17, 2020                 FRANK SIMS & STOLPER LLP

                                         <u>/s/ Jason M. Frank</u>
                                         JASON M. FRANK, ESQ.
                                         ANDREW STOLPER, ESQ
                                         SCOTT H. SIMS, ESQ.

                                         *Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT