JASON M. FRANK (190957)
ANDREW D. STOLPER (205462)
SCOTT H. SIMS (234148)
FRANK SIMS & STOLPER LLP
19800 MacArthur Blvd., Suite 855
Irvine, CA 92612
Telephone:  (949) 201-2400
Facsimile:   (949) 201-2405

FRANKLIN D. AZAR (pro hac vice )
FRANKLIN D. AZAR &
ASSOCIATES, P.C.
14426 East Evans Avenue
Aurora, CO 80014
Telephone:  (303) 757-3300
Facsimile:   (720) 213-5131

*Attorneys for Plaintiffs, the Proposed Class and Subclasses*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MARTIN and LORI MITCHELL, each individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TOYOTA MOTOR CREDIT CORPORATION, a California Corporation<br><br>Defendant. | Case No.:  2:20-cv-10518-JVS-MRW<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF NATIONWIDE CLASS ACTION SETTLEMENT**<br><br>**[*Declaration of Scott H. Sims and Supplemental Declaration of Christopher Longley filed concurrently herewith*]**<br><br>**Date:**          **November 7, 2022**<br>**Time:**          **1:30 p.m.**<br>**Courtroom:**   **10C** |

**TO THE COURT AND ALL PARTIES OF RECORD:**

**PLEASE TAKE NOTICE** that on November 7, 2022 at 1:30 p.m. in Courtroom 10C of the United States District Court for the Central District of California, located at 411 West Fourth Street, Santa Ana, California 92701-4516, or on a different date set by the Court, Plaintiffs will and hereby do move for an order:

1.      Granting final approval of the Stipulation Re: Nationwide Class Action Settlement and Release (the "Settlement" or "Settlement Agreement"), a copy of which is attached as **Exhibit 1**;

2.      Awarding Class Counsel $19 million in attorneys' fees and $112,600 in litigation expenses;

3.      Awarding service awards of $2,500 each to Plaintiffs William Martin and Lori Mitchell;

4.      Entering a judgment dismissing this case with prejudice in accordance with the terms of the Settlement.

This Motion is based on the grounds that (a) the Settlement is a fair, adequate and reasonable compromise of the claims at issue in this lawsuit, (b) the proposed Settlement Class satisfies the requirements of Federal Rule of Civil Procedure 23; (c) the Notice Plan provided the best notice practicable under the circumstances and satisfied due process and the requirements of Federal Rule of Civil Procedure 23; and (d) Plaintiffs' request for attorneys' fees, expenses and service awards are fair and reasonable.

This Motion is based on this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the Declaration of Scott H. Sims and the Supplemental Declaration of Christopher Longley filed concurrently; the Declarations of Jason M. Frank, Scott Baggett, Christopher Longley, Franklin Azar, William Martin and Lori Mitchell filed in connection with Plaintiffs' Motion for Preliminary Approval (Dkts. 61 through 61-7); the Declarations of the Hon. Andrew J. Guilford (Ret.), Brian Fitzpatrick, Scott Baggett, Chris Longley, Jason M. Frank, Franklin Azar, William Martin and Lori Mitchell filed in connection with Plaintiffs' Motion for Attorney Fees,

Expenses and Service Awards (Dkts. 87-1 to 88-8); the pleadings on file herein; and such other and further materials to be offered at the hearing.

Dated:  October 10, 2022                    FRANK SIMS & STOLPER LLP

By:___*/s/ Scott H. Sims*_____
JASON M. FRANK, ESQ.
ANDREW STOLPER, ESQ
SCOTT H. SIMS, ESQ.
*Attorneys for Plaintiffs*

**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

1

## <u>TABLE OF CONTENTS</u>

2    I.    INTRODUCTION ............................................................................6

3    II.    STATEMENT OF FACTS ..............................................................7

4    III.    THE SETTLEMENT .......................................................................7

5         a)    Definition of the Settlement Classes.............................. 8

6         b)    Consideration for the Settlement. ................................... 8

7         c)    Release. ........................................................................... 12

8         d)    Notice and Claims Process............................................. 13

9    IV.    LEGAL STANDARD .................................................................... 14

10    V.    THE MOTION FOR FINAL APPROVAL SHOULD be granted................. 15

11         A.    Approval of Proposed Settlement. ...................................... 15

12         B.    Adequacy of the Representation........................................... 16

13         C.    Negotiated at Arm's Length. ................................................ 17

14         D.    Adequacy of Relief to the Proposed Class. ......................... 18

15              a)    Costs, Risks and Delay of Trial and Appeal .............. 20

16              b)    Effectiveness of Proposed Method of Relief Distribution......... 21

17              c)    Terms of the Proposed Award of Attorney's Fees. .................. 22

18              d)    Agreement Identification Requirement....................... 24

19         E.    Equitable Treatment of Class Members ............................... 24

20         F.    Reaction of the Class ............................................................. 25

21    VII.    CONCLUSION ............................................................... 26

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Federal Cases**

4

*Aichele v. City of Los Angeles,*
5    2015 WL 5286028 (C.D. Cal. Sept. 9, 2015) ......................................................23

6    *In re Bluetooth Headset Products Liab. Lit.,*
7    654 F.3d 935 (9th Cir. 2011) ...................................................................................16

8    *Churchill Village, L.L.C. v. General Electric,*
361 F.3d 566 (9th Cir. 2004) .............................................................................16, 25
9

*Herrera v. Wells Fargo Bank, N.A.,*
10    2021 WL 9374975 (C.D. Cal. Nov. 16, 2011) .......................................... *passim*

11
*In re Hyundai & Kia Fuel Economy Litig.,*
12    926 F.3d 539 (9th Cir. 2019) (en banc) ...........................................................23

13
*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.,*
14    221 F.R.D. 523 (C.D. Cal. 2004) ..........................................................................20

15    *In re Online DVD-Rental Antitrust Litig.,*
16    779 F.3d 934 (9th Cir. 2015) .................................................................................23

17    *Staton v. Boeing Co.,*
18    327 F.3d 938 (9th Cir. 2003) ...........................................................................14, 23

19    **Federal Statutes**

20    Class Action Fairness Act .........................................................................................13

21    Fed. R. Civ. P. 23
22        23(a) ...............................................................................................................15
23(e) ...........................................................................................................14, 16
23        23(e)(2)............................................................................................ *passim*
23(e)(2)(A) ...................................................................................................16
24        23(e)(2)(B) ...................................................................................................17
23(e)(2)(C) ...................................................................... 21, 22, 24
25        23(e)(2)(D) ...................................................................................................25
23(e)(3)............................................................................................15, 18
26

27

28

**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

## I.    INTRODUCTION

On July 13, 2022, this Court granted preliminary approval of a proposed nationwide class action settlement ("Settlement") between Plaintiffs and Defendant Toyota Motor Credit Corporation ("TMCC").  There have been **zero (0) objections** to the Settlement from any of the 663,343 customers who were mailed notices.

Under the Settlement, TMCC will pay approximately **$80.5 million** to the Class, plus at least an additional **$275.9 million** in refunds to TMCC's future customers during the next four years, including over **$27.3 million** in future refunds to existing Class members.  Dkt. 88-3, ¶¶ 15-17.  In total, the Class will receive over **$107.8** million in benefits under the Settlement.  Id.  When factoring in the future GAP refunds that will be paid to all TMCC customers (including non-Class members), the total monetary benefits provided by the Settlement will be over **$355 million**.  Id.  The Settlement is an excellent outcome for the Class and TMCC's customers.  It was reached after hard-fought litigation and three separate mediation sessions -- the first before the Honorable Jay C. Gandhi (Ret.) and the latter two before the Honorable Andrew J. Guilford (Ret.).[1]

The reaction to the Settlement has been overwhelmingly positive.  Direct notice was mailed to 663,343 potential Class members and as noted, *no objections* were received.  Supplemental Declaration of Christopher Longley ("2 Longley Decl."), ¶¶ 4, 8.  And there are likewise *no objections* to Plaintiffs' Motion for Attorney Fees, Costs and Incentive Awards.  Id.[2]  Further, there were only sixty-seven (67) requests for exclusion (0.01% of the potential Class).  Id., ¶ 7.  There are also already 76,612 Approved Claims received from Non-Statutory Class members, and there are another 12,376 claims pending a cure from Non-Statutory Class members.  Id., ¶ 10.  The Net Settlement Fund will be sufficient for every Non-Statutory Class member who submitted a valid claim to receive a full GAP

---

[1] Judge Guilford was intimately familiar with the issues in the case, having previously presided over the related Wells Fargo matter before retiring from the federal bench, and then successfully mediating the Wells Fargo case.

[2] TMCC has indicated it will oppose Plaintiffs' fee request, notwithstanding the fact that no Class members have objected to Plaintiffs' fee request.

refund.[3]  Id., ¶¶ 15, 17-18.  Statutory Class members, who were not required to submit a claim because TMCC could verify from its "own records" that they were part of Statutory Class, will also receive a full GAP refund.  Settlement (Ex. 1 hereto), ¶¶ 103, 104.

The proposed Settlement is a fair, adequate and reasonable compromise of the claims asserted in this matter and should be granted final approval.  Accordingly, by this Motion, Plaintiffs request the Court: (1) grant final approval of the Settlement; (2) approve Plaintiff's request for an award of $19 million in attorneys' fees and $112,600 in litigation expenses; (3) approve incentive awards in the amount of $2,500 for each of the Class Representatives; and (4) issue an order and judgment dismissing the case with prejudice pursuant to the terms of the Settlement.

## II.    STATEMENT OF FACTS

A summary of the case and procedural history is set forth in Plaintiffs' Motion for Preliminary Approval and Plaintiffs' Motion for Attorney Fees, Costs and Incentive Awards, the latter of which is scheduled to be heard concurrently with this Motion and both of which are incorporated by reference herein.  Dkt. 60 at pp. 11-14; Dkt. 88, pp. 9-12.  To avoid burdening the Court with duplicative papers, this Motion will reference and rely largely on the supporting declarations and evidence previously filed in connection with those Motions.  (Dkt. 60-2 to 60-7, 87-1 and 88-1 to 88-8.)  It will also rely on the Declaration of Scott H. Sims and Supplemental Declaration of Christopher Longley filed with the present Motion, which will be referred to as "Sims Decl." and "2 Longley Decl.", respectively.

## III.    THE SETTLEMENT

The Settlement follows a similar structure as the settlement approved by this Court in the related GAP refund class action against Wells Fargo.  See Herrera v. Wells Fargo Bank, N.A., 2021 WL 9374975 (C.D. Cal. Nov. 16, 2011).  It also provides substantially

---

[3] This does not include claims that were timely received but that contained a deficiency for which the customer has been sent a cure notice.

more money to Class members on an individual basis than the <u>Wells Fargo</u> settlement did. The Settlement's terms are summarized below.

### a)    Definition of the Settlement Classes.

The Settlement Class (also referred to as the "Class") includes two groups: the Statutory Class and the Non-Statutory Class.  Settlement, ¶ 10.

The Statutory Class includes all persons in the United States: (a) who entered into Finance Agreements with GAP protection in the States of Alabama, Colorado, Indiana, Iowa, Massachusetts, New Jersey, Oklahoma, Oregon, Texas, Vermont, Wisconsin or Wyoming; (b) whose agreements were assigned to TMCC; (c) who paid off their Finance Agreements at least 30 days prior to the original maturity date (an "Early Payoff"); (d) whose Early Payoffs occurred during the Statutory Class Period; and (e) who did not receive a GAP Refund or suffer a total loss of their Vehicle during the term of their Finance Agreement.  Settlement, ¶ 60.  The Statutory Class Periods vary by State depending on the later of: (i) the date the applicable State's Automatic Refund Requirement went into effect; (ii) the beginning of the applicable State's statute of limitations period for breach of contract claims; or (iii) January 1, 2016.  <u>Id.</u>, ¶ 61.  The applicable dates for the Statutory Class Period are set forth in Exhibit A to the Settlement.  <u>Id.</u>

The Non-Statutory Class includes all persons in the United States: (a) who entered into Finance Agreements with GAP protection; (b) whose agreements were assigned to TMCC; (c) who paid off their Finance Agreements at least 30 days prior to the original maturity date (an "Early Payoff"); (d) whose Early Payoffs occurred during the period January 1, 2016 through October 25, 2021; and (e) who did not receive a GAP Refund or suffer a total loss of their Vehicle during the term of their Finance Agreement.  Settlement, ¶ 44.  The Non-Statutory Class also excludes any persons whose Vehicle is covered by the Statutory Class definition.  <u>Id.</u>

### b)    Consideration for the Settlement.

The Settlement provides for the following benefits in exchange for the Release of the claims in this lawsuit.

- **Business Practice Change.**  Commencing on **October 25, 2021** (approximately one-year after the filing of this lawsuit), TMCC implemented changes to its refund practices so that it now automatically and directly provides GAP Refunds to customers in all U.S. States within a reasonable time after receipt of an Early Payoff, provided such payoff occurs more than thirty (30) days prior to the original maturity date of the Finance Agreement.  Settlement, ¶ 102.  Customers are now not required to take any action to seek a refund and no cancellation fee is charged unless provided for in the customer's GAP Agreement.  Id.  The Business Practice Change applies to all customers whose Finance Agreements with GAP protection have been or will be assigned to TMCC. Id.  TMCC agrees it will not materially change this practice for at least four years after the Settlement's Effective Date, and it will not revert to a State-by-State approach during this four-year period.  Id.  Plaintiffs' expert estimates that TMCC will pay at least **$275.9 million** in refunds during this four-year period that it was not paying prior to the filing of this lawsuit.  Dkt. 88-3, ¶¶ 15, 34-36.

- **Statutory Class.**  TMCC will directly pay each member of the Statutory Class the full amount of their GAP Refund without any deduction for cancellation fees, plus interest at the applicable State-specific pre-judgment interest rate, which such interest will accrue from the date of the Early Payoff to the date the GAP Refund is issued by TMCC. Settlement, ¶ 103.  Upon completion of these refund payments, TMCC will provide a declaration to the Settlement Administrator and Class Counsel verifying the refund payments have been completed.  Id.  The declaration will include a list of Statutory Class members, the amount of their GAP Refund and the interest.  Id.  Any checks that were returned or not cashed will be handled in accordance with the applicable State's unclaimed property/escheatment laws.  Id.  The members of the Statutory Class were not required to submit a Claim Form for their GAP Refunds because TMCC can reasonably determine from its "own records" that such individuals are part of the Statutory Class.  Id.  Plaintiffs' expert estimates, based on the current Statutory Class list, that TMCC will pay over **$21.5 million ($21,562,394.76)** to the Statutory Class, with an average payment per account of

**$471.97**.  Dkt. 88-3, ¶¶ 15, 25, Ex. 2.[4]

- **Non-Statutory Class.**  Each member of the Non-Statutory Class was eligible to submit a claim for up to the full amount of their GAP Refund to be paid from the Settlement Fund, without any deduction for cancellation fees.  Settlement, ¶ 104.  As set forth below, the Net Settlement Fund will be sufficient to pay a full GAP refund, without any deduction for cancellation fees, to every Non-Statutory Class member that submitted an Approved Claim.  2 Longley Decl., ¶¶ 15, 17-18.  To receive the GAP Refund, each Non-Statutory Class member was required to submit a completed and signed Claim Form to the Settlement Administrator by the Claim Form Deadline, verifying certain information, including that they did not previously receive a GAP Refund from a Dealer, GAP Administrator or any other third-party for that Vehicle.  Settlement, ¶ 104.  The members of the Non-Statutory Class were required to submit a Claim Form verifying that information because TMCC cannot reasonably and systematically determine from its records whether these customers qualify for a GAP Refund under the terms of the Settlement.  Id.  The Claim Form Deadline of September 26, 2022 has now passed.

- **Settlement Fund.**  TMCC will establish a non-reversionary Settlement Fund totaling **$59 million** to pay for: (a) Approved Claims for GAP Refunds to Non-Statutory Class members; (b) Notice and Administration Costs; (c) Fee and Expense Awards approved by the Court; and (d) Service Awards approved by the Court.  Settlement, ¶ 105.

Based on the number of Approved Claims received by the Settlement Administrator, the Net Settlement Fund will be sufficient to pay (a) full GAP refunds to all Non-Statutory Class members who submitted Approved Claims, without any deduction for cancellation fees, (b) the full amounts requested in Plaintiffs' Motion for Attorney Fees, Costs and

---

[4] TMCC is conducting an account level review of the Statutory Class's loan files and providing data to Plaintiffs for any customers whom they contend are properly excluded from the Class.  To date, TMCC has provided Plaintiffs with data for 1,105 such customers, who if excluded would reduce the amount paid to the Statutory Class to approximately $306,276.36.  Sims Decl., ¶ 3.  Plaintiffs are reviewing that data and are likely to challenge many of those exclusions.  Id.

Service Awards, and (c) Notice and Administration Costs approved by the Court.[5]

- **Notice and Administrative Costs.**  The Notice and Administration Costs shall be paid from the Settlement Fund.  Settlement, ¶ 106.  The Court previously approved Notice and Administration costs of up to **$960,000**.  Dkt. 85 (order granting increase in costs of Notice and Administration to permit mailing of reminder postcards); 2 Longley Decl., ¶ 16.  Subject to Court approval, the parties jointly request that the Court increase that amount to **$1,020,000**, to account for additional expenses incurred by the Settlement Administrator.  Sims Decl., ¶ 2.  There will be sufficient money in the Net Settlement Fund to do so without decreasing the amount paid to any Class members.  Id., ¶¶ 15, 17-18.

- **Fee and Expense Award.**  Plaintiffs' counsel is seeking a Fee Award of **$19 million**, and an Expense Award of **$112,600**.  Dkt. 88; Settlement, ¶ 145.  There are *no objections* to Plaintiffs' fee and expense request.  2 Longley Decl., ¶ 8.  Any fee and expense Awards approved by the Court will be paid from the Settlement Fund.  Settlement, ¶ 107.  Plaintiffs' fee request is based upon Judge Guilford issuing a mediator's proposal recommending, based on his review of the evidence and arguments of the parties, that an appropriate fee award would be **$19 million**, with the understanding that this Court has the sole authority to make this determination.  Dkt. 87-1, ¶ 17.  Plaintiffs' counsel agreed to accept Judge Guilford's proposal and agreed to limit their request to that amount.  Id. TMCC is reserving its right to oppose Plaintiffs' request.  Id.

- **Service Awards.**  The Settlement provides for a Service Award of **$2,500** to the two named Plaintiffs, William Martin and Lori Mitchell subject to the approval of this Court.  Settlement, ¶ 148.  Any Service Awards approved by the Court will be paid from the Settlement Fund.  Id., ¶ 108.  There are *no objections* to the Service Awards.  2 Longley Decl., ¶ 8.

---

[5] The Settlement provides that if the Net Settlement Fund (the amount remaining after administrative costs, attorneys' fees and costs, and service awards) is insufficient to pay full GAP refunds, the GAP refunds will be reduced on a pro-rata basis.  Settlement, ¶ 109.  But based on the total amount of Approved Claims, there will be no pro-rata reduction.  2 Longley Decl., ¶¶ 15, 17-18.

**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

**c)** **Release.**

Unless a Class member timely Requests Exclusion from the Class ("Opt-Out"), Plaintiffs and each and every Class member (including both the Statutory Class and Non-Statutory Class), individually or together, and each and every one of their former, present, or future agents, predecessors, successors, heirs, legatees, executors, administrators, insurers, assigns, trustees, spouses, and domestic partners ("Class Releasors") will release and fully discharge TMCC and TMIS, and each of their former, present, or future agents, insurers, predecessors, successors, subsidiaries, parent company(ies), affiliates, officers, directors, and employees and attorneys ("Class Releasees") from any and all past and/or present claims, counterclaims, lawsuits, set-offs, costs, losses, rights, demands, charges, complaints, actions, causes of action, obligations, or liabilities of any and every kind, whether class, individual, or otherwise in nature, including, without limitation, those known or unknown or capable of being known; those which are unknown but might be discovered or discoverable based upon facts other than or different from those facts known or believed at this time; those which are foreseen or unforeseen, suspected or unsuspected, asserted or unasserted, and/or contingent or non-contingent; and those which are accrued, unaccrued, matured or not matured, under the laws of any jurisdiction, which they, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have, arising from or relating in any way to the Class member's entitlement to a GAP Refund after an Early Payoff that occurred during the Class Period or Statutory Class Period, as appropriate (the "Class Released Claims"). Settlement, ¶ 97. For clarification, the Class Releasees do not include any Dealers or GAP Administrators (other than TMIS), including without limitation, those identified in the Class members' GAP Agreements or Finance Agreements. Id. In other words, the Settlement Class will preserve any potential claims against those entities. Id.

**d)**    **Notice and Claims Process.**

On July 13, 2022, this Court appointed Atticus Administration to serve as the Settlement Administrator and ordered dissemination of notice to the Class.  Dkt. 63, p. 19.[6]

The Settlement Administrator mailed notice to 663,343 potential Class members, consisting of 627,164 potential Non-Statutory Class members and 36,179 Statutory Class members. 2 Longley Decl., ¶ 4.[7]  Where email addresses were available, email notice was also sent.   Dkt. 88-4, ¶ 9.   In instances where the initial notice was returned as undeliverable, the Settlement Administrator also took steps, where possible, to re-mail notices to updated addresses obtained through forwarding information or professional tracing. 2 Longley Decl., ¶ 4.  On September 9, 2022, the Settlement Administrator also sent reminder notices to Non-Statutory Class members who had not yet submitted claims. Id.

At this time 97.83% of the potential Class members are believed to have been successfully mailed notice. 2 Longley Decl., ¶ 5.

In addition to the direct notice successfully mailed to the overwhelming number of potential Class members, the Settlement Administrator launched a digital notice campaign beginning on July 27, 2022. 2 Longley Decl., ¶ 6.  It included a Settlement Website (www.tmccgap.com) containing detailed case and Settlement related information, and a targeted internet notice campaign using banner and display ads.   Id.   As of the Claim/Objection/Exclusion deadline, the Settlement Website had received 425,521 total visits.  Id.  The internet notice campaign implemented multiple targeting layers to ensure that the ads are viewed by persons more likely to be Settlement Class Members, based on the analysis of the target audience.  Id.  As of the Claim/Objection/Exclusion deadline, the

---

[6] On June 27, 2022 (10 days after Plaintiffs moved for preliminary approval), the Settlement Administrator provided notice of the Settlement in conformance with the Class Action Fairness Act ("CAFA").  2 Longley Decl., ¶ 4, n. 1.

[7] The number of individuals who were mailed notices is higher than the number of loan files, because sometimes there were multiple persons on the same finance agreement (i.e., co-borrowers).

**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

internet notice campaign generated 16,243,051 impressions that resulted in 61,215 click-throughs to the Settlement Website.  Id.

The Claim Form Deadline and the Exclusion/Objection Deadline were September 26, 2022.  2 Longley Decl., ¶¶ 7-8.  The Non-Statutory Class Members were required to submit a Claim Form verifying they did not receive a GAP Refund from a Dealer or GAP Administrator.  Settlement, ¶ 104.  To make the claims process user-friendly, the Non-Statutory Subclass Members were provided with the option of filling out their Claim Form on the Settlement Website and signing it electronically.  Id.  Class Members could also scan a unique QR code printed on their mailed notice, which would take them to the Settlement Website to electronically complete and submit the Claim Form on their smartphone or tablet.  Settlement, ¶¶ 118, 124.  Class Members also had the option of filling out the Claim Form and submitting it by first-class mail to the Claims Administrator.  Id.  Statutory Members were not required to submit a Claim Form, since TMCC could determine from its own records that such individuals were part of the Statutory Class.  Settlement, ¶¶ 103, 123.

As of the filing of this Motion:

- There have been **76,612 Approved Claims submitted** and are another **12,376 timely Claims that are incomplete but still curable**.
- There have been **zero (0) objections**.
- There have only been sixty-seven (67) **requests for exclusion** (0.01%).

2 Longley Decl., ¶¶ 7-10, 13-14.

## IV.   LEGAL STANDARD

Federal Rule of Civil Procedure Rule 23(e) requires court approval for class-action settlements.  Fed. R. Civ. P. 23(e).  When the parties reach a settlement agreement before class certification, a court uses a two-step process to approve a class-action settlement.  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).  First, the court must certify the proposed settlement class.  Id.  Second, the court must determine whether the proposed settlement is fundamentally fair, adequate, and reasonable.  Id.

1  **V.      THE MOTION FOR FINAL APPROVAL SHOULD BE GRANTED**

2          The Court preliminarily certified the Class on July 13, 2022.  Dkt. 63, pp. 8-11.  The

3  Court found that the proposed Class satisfied the Rule 23(a) prerequisites of numerosity,

4  commonality, typicality, and adequacy.  Id.  The Court further found that common issues

5  predominated over individual questions.  Id.  The Court noted that Plaintiffs challenge

6  TMCC's "uniform policy of collecting unearned GAP fees as part of an Early Payoff, and

7  its failure to comply with the Automatic Refund Requirements in 12 States."  Id. at p. 9.

8  Those claims all "rely on the legal question of whether [TMCC] assumed the GAP

9  Agreement's contractual and/or legal obligation to issue a refund of unearned GAP fees

10  after an Early Payoff after being assigned the Finance Agreement and the GAP Agreement"

11  and "whether [TMCC's] policy to collect and fail to refund unearned GAP fees constitutes

12  a breach of contract and violation of the applicable State's Automatic Refund

13  Requirements. Id.

14          Nothing has changed in the interim that would warrant a deviation from the Court's

15  prior ruling.

16          **A.      Approval of Proposed Settlement.**

17          Under Rule 23(e)(2), if the proposed settlement would bind class members, the Court

18  may approve it only after a hearing and only on finding that it is fair, reasonable and

19  adequate.  To make this determination, the Court must consider the following factors:

20          (1)    The class representatives and counsel have adequately represented the class;

21          (2)    The proposal was negotiated at arm's length;

22          (3)    The relief provided for the class is adequate, taking into account:

23                  (a)    The costs, risks, and delay of trial and appeal;

24                  (b)    The effectiveness of any proposed method of distributing relief to the

25                          class, including the method of processing class-member claims;

26                  (c)    The terms of any proposed award of attorneys' fees, including timing of

27                          payment; and

28                  (d)    Any agreement required to be identified under Rule 23(e)(3); and

(4)    The proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Before the revisions to the Rule 23(e), the Ninth Circuit had developed its own list of factors to be considered.  See e.g., In re Bluetooth Headset Products Liab. Lit., 654 F.3d 935, 964 (9th Cir. 2011) (citing Churchill Village, L.L.C. v. General Electric, 361 F.3d 566, 575 (9th Cir. 2004)).  The revised Rule 23 "directs the parties to present [their] settlement to the court in terms of [this new] shorter list of core concerns[.]"  Herrera, 2021 WL 9374975 at *5 (quoting Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes). "The goal of [amended Rule 23(e)] is . . . to focus the [district] court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Id.

## B.    Adequacy of the Representation

Under Rule 23(e)(2)(A), the first factor to consider is whether the class representatives and class counsel have adequately represented the class.  Herrera, 2021 WL 9374975 at *5.  This analysis focuses on "the nature and amount of discovery" undertaken in the litigation.  Id.

Class Counsel are experienced in class action litigation, including cases involving unfair business practices and complex business litigation.  Dkt. 60-2, ¶¶ 3-8; Dkt. 87-1, ¶¶ 3-8.  The parties have engaged in substantial discovery, including: (1) reviewing and analyzing over 20,486 pages of documents, not including spreadsheets; (2) reviewing and analyzing data for over 1.1 million Finance Agreements with GAP protection that were paid off early during the time period January 1, 2016 through October 25, 2021; (3) taking five witness depositions; and (4) propounding and responding to voluminous special interrogatories and document requests.  Dkt. 60-2, ¶ 13; Dkt. 87-1, ¶ 12.  The case only settled after the completion of Class discovery and the preparation of Plaintiffs' motion for class certification.  Dkt. 60-2, ¶ 14; Dkt. 87-1, ¶ 13.  Moreover, the litigation of the claims against TMCC was substantially aided by the motion practice, discovery and Court decisions in the related Wells Fargo matter, which was actively litigated for nearly four

years before this Court.  Dkt. 60-2, ¶ 36; Dkt. 87-1, ¶ 37.  The evidence demonstrates that
Plaintiffs and Class Counsel have conducted a thorough examination of the relevant facts
and law, sufficient to assess the strengths of weaknesses of the claims asserted.  Thus, the
first factor for final approval of the Settlement is satisfied.

### C.    Negotiated at Arm's Length.

The second Rule 23(e)(2) factor asks the Court to confirm that the proposed
settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). "[T]he involvement
of a neutral or court-affiliated mediator or facilitator in [settlement] negotiations may bear
on whether th[ose] [negotiations] were conducted in a manner that would protect and
further the class interests." Herrera, 2021 WL 9374975 at *5.

Here, the parties attended three mediation sessions, the first before Judge Gandhi
and the latter two before Judge Guilford. Dkt. 87-1 at ¶¶ 14-17; 88-1 at ¶¶ 5-8. Both judges
are highly experienced in class action litigation and well-respected mediators.  Dkt. 87-1
at ¶ 14.  Judge Guilford was also the former judge who presided over the related Wells
Fargo GAP matter and mediated that matter after he retired from the bench. Dkt. 87-1 at ¶
16; Dkt. 88-1 at ¶ 4.  Judge Guilford was thus particularly familiar with the issues in the
case. Id.  Each of the parties are represented by experienced class action counsel, and the
Settlement was reached after careful consideration of the risks and benefits of continued
litigation. Id.

After reaching an agreement on all material terms for the Class, the parties attended
a separate mediation session before Judge Guilford (the third of the parties three sessions).
Dkt. 87-1 at ¶¶ 16-17; Dkt. 88-1 at ¶¶ 6-8.  During that session, Judge Guilford heard
evidence and arguments regarding an appropriate award of attorney's fees award, with the
understanding that this Court has the sole authority to determine the appropriate fee award.
Dkt. 87-1 at ¶ 17; Dkt. 88-1 at ¶¶ 7-8. Based on that evidence and argument, Judge Guilford
"independently determined what [he] believed to be a reasonable attorney fee award and
presented that recommendation to the Parties as a 'mediator's proposal.'" Dkt. 88-1 at ¶
8; Dkt. 871- at ¶ 17. Specifically, Judge Guilford recommended an award of $19 million

in attorney's fees. Id.  Plaintiffs agreed to accept Judge Guilford's proposal and agreed to limit their request to this lower amount. Dkt. 87-1 at ¶ 17.  TMCC is reserving its right to oppose Judge Guilford's recommendation. Id.

Accordingly, the evidence demonstrates the Settlement was the product of arm's length negotiations and not the product of collusion.

**D.    Adequacy of Relief to the Proposed Class.**

The third Rule 23(e)(2) factor concerns the adequacy of the relief provided for the class, taking into account: (a) the costs, risks and delay of trial and appeal; (b) the effectiveness of any proposed method of distributing relief to the class; (c) the terms of any proposed attorneys' fees and (d) any agreement required to be identified under Rule 23(e)(3). Herrera, 2021 WL 9374975 at *6. Under this factor, the "relief to the class members is a central concern." Id. The proposed Settlement provides substantial relief to the Class and TMCC's customers.

First, *each Statutory Class member will receive a full GAP refund* without any cancellation fees, plus interest at the applicable state prejudgment interest rate. Settlement, ¶ 103.    Based on the Master Spreadsheet prepared by TMCC, TMCC will pay approximately $21.5 million ($21,562,395) to the Statutory Class for an average payout of approximately $472 per account. Dkt. 88-3, ¶¶ 15, 25-26, Ex. 2. This is a complete win for the Statutory Class and the maximum amount of money they could recover if they prevailed at trial. Dkt. 87-1, ¶ 36.

Second, *every Non-Statutory Class member who submitted an Approved Claim will receive their full GAP refund* from the $59 million Settlement Fund, without any deduction for cancellation fees (typically a $50 cancellation fee). 2 Longley Decl., ¶ 15, 17-18. The potential Non-Statutory class members were required to submit a claim because TMCC did not have the information necessary to determine if they are properly part of the Non-Statutory Class. Settlement, ¶ 104. That information was in the possession of third-party auto dealerships and GAP Administrators. Id. To date, there have been 76,612 Approved Claims submitted by Non-Statutory Class members for a total of $30,785,265.23 million

in GAP refunds to Non-Statutory Class members.  2 Longley Decl., ¶ 15.  There are another 12,376 potential Non-Statutory Class members who submitted a timely but incomplete claim and have been or are being given the opportunity to cure, and if all of those claims are cured, the total value of the Approved Claims will be $35,934,364.39.  2 Longley, ¶¶ 13-15.  The minimum amount of the Net Settlement Fund will be approximately $39 million, and thus sufficient to pay a full refund to all Non-Statutory Class members who submitted an Approved Claim.[8]  2 Longley Decl., ¶ 15, 17-18.  In other words, each participating Class member will receive essentially 100% of their damages in this case, and the average payout to each Non-Statutory Class member who submitted an Approved Claim is estimated to be $401.01, per account.  Id., 2 Longley Decl., ¶ 15.

Third, TMCC has also agreed to keep in place a business practice change it implemented approximately one year after the filing of this lawsuit for at least the next four years (the "Business Practice Change").  Settlement, ¶ 102.  Pursuant to the Business Practice Change, TMCC has agreed that it will automatically and directly pay full GAP refunds to all customers in the United States that pay off their vehicle at least thirty (30) days or more before the original maturity date.  Id.  Based on TMCC's past records, Plaintiffs' expert (Dr. Baggett) estimates that TMCC will pay out at least $275.9 million ($275,850,513) in future refunds that it was not otherwise paying prior to the filing of this lawsuit.  Dkt. 88-3, ¶¶ 16, 37, Ex. 4.  That number is conservative because it assumes no growth in GAP Refunds, even though the previous years of data produced by TMCC (January 2016 through October 2021) showed significant growth each year since 2018, and no material decrease in the prior years.  Id., ¶ 32.  Plaintiffs' expert further determined that of the approximately $275.9 million in future GAP refunds, approximately $27.3 million will be received by existing Class members.  Id., ¶¶ 16, 44.  Plaintiffs' expert was able to

---

[8] If the Court awards Plaintiffs the amounts requested for attorneys' fees ($19 million), litigation expenses ($112,600) and service awards ($5,000), and approves the parties' agreement to increase the permitted Notice and Administration Costs from $960,000 to $1,020,000, the amount of the Net Settlement Fund will be $38,862,400.

estimate the future GAP refunds that will be paid to existing Class members based on the same methodology he used in the Wells Fargo matter. Id., ¶¶ 8, 39. The future GAP refunds are "hard dollars" that TMCC was not paying prior to the filing of this lawsuit. Id., ¶¶ 35.

Fourth, the $59 million Settlement Fund will cover the Notice and Administrative Costs of $960,000 to $1,020.00. Settlement, ¶ 106; Dkt. 85. "While notice and administrative costs do not go directly to the class, they may be properly considered a benefit because they make it possible to distribute the settlement award in a 'meaningful and significant way' and allow class members to learn about the settlement." Herrera, 2021 WL 9374975, at *6.

In sum, given the considerable risks of this case, the benefits achieved by this Settlement are outstanding.

### a)    Costs, Risks and Delay of Trial and Appeal

"A central concern when evaluating a proposed class action settlement ... relate[s] to the cost and risk involved in pursuing a litigated outcome." Herrera, 2021 WL 9374975, at *8. "In the context of a settlement ... the test is not the maximum amount plaintiffs might have obtained at trial on the complaint, but rather whether the settlement is reasonable under all of the circumstances." Id. 'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." Nat'l Rural Telecom. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004).

First, with respect to the Statutory Class, while Plaintiffs believe the Automatic Refund Requirements require TMCC to directly issue the refunds, Plaintiffs recognize the interpretation of these laws will, in most instances, present an issue of first impression and there is no guarantee Plaintiffs' view will prevail. Dkt. 87-1, ¶ 37(a).

Second, with respect to the Non-Statutory Class, Plaintiffs believe they have a strong case but recognize there are serious challenges to these claims, including: (a) the Non-Statutory Class members are unable to rely on Automatic Refund Requirements as a basis for their refunds, (b) they are subject to TMCC's defense that they did not strictly comply

with the GAP Agreements' written notice requirements; and (c) they are subject to the argument that TMCC did not assume the contractual obligation to issue the refund as part of the assignment of the Finance Agreement.  Dkt. 87-1, ¶ 37(b).

Third, a significant percentage of the Class members are subject to arbitration agreements with class action waivers.  Dkt. 87-1, ¶ 37(c).  It would not be cost effective for these Class members to arbitrate their claims on individual basis given the fact that the relatively small amounts at issue would be dwarfed by the cost of litigation.  Id.

Fourth, while courts routinely certify breach of contract claims on a nationwide basis – especially where, as here, the Class members were subject to a uniform practice by a finance company – there is a material risk that TMCC's arguments against class certification could prevail or present a risk of decertification in the future.  Dkt. 87-1, ¶ 37(d).

Fifth, while the parties have been vigorously litigating this case, absent a Settlement, the parties would have to engage in class certification briefing, summary judgment briefing and a trial in the future.  Dkt, 87-1, ¶ 37(e).  The parties would also have to complete fact discovery.  Id.  Consequently, this litigation would likely take at least another year before a final resolution was reached in this matter, not including the time for any appeal.  Id.

In light of these risks, the proposed Settlement provides a far favorable alternative, especially when participating Class members will likely receive the maximum amount of damages they could obtain at trial.  Dkt. 60-2, ¶ 38.  Moreover, there can be little doubt that resolving the Class members' claims through a single class action is superior to a multitudinous series of individual lawsuits and arbitrations.  Indeed, the terms of the Settlement demonstrate the advantages of collective bargaining.  Accordingly, these factors strongly favor final approval.

**b)    Effectiveness of Proposed Method of Relief Distribution.**

The Court is also instructed to consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."  Fed. R. Civ. P. 23(e)(2)(C).  "A claims processing method should deter or defeat unjustified

claims, but the court should be alert to whether the claims process is unduly demanding." <u>Herrera</u>, 2021 WL 3932257, at *10.

Here, the Claims Process was straightforward. Statutory Class members were not required to submit a claim and will directly receive their settlement payment from TMCC by mail; the payments of which will be verified by a declaration from TMCC. Settlement, ¶ 103. Non-Statutory Class members were able to easily complete and submit their Claim Form online by scanning the QR Code on their Notice of Settlement or clicking on the link in the Email-Notice. <u>Id.</u>, ¶¶ 118, 123-124. Non-Statutory Class members could also request a hard copy of the Claim Form be mailed or emailed to them, or they could also download and print it from the Settlement Website. <u>Id.</u> The Claim Form was easy to fill out – the Non-Statutory Class members just need to check three boxes verifying their eligibility for Settlement relief and sign the Claim Form. <u>Id.</u> Assuming the Court grants final approval of the Settlement, approved Claims to the Non-Statutory Class will be paid electronically or by mail at the election of the Class member. <u>Id.</u> The Court previously found this similar Claims Process was a reasonable means of distributing relief in <u>Wells Fargo</u>. <u>Herrera</u>, 2021 WL 3932257, at *11.

### c)    Terms of the Proposed Award of Attorney's Fees.

The Court is also instructed to consider the terms of any proposed award of attorney's fees. Fed. R. Civ. P. 23(e)(2)(C). In considering the proposed award of attorney's fees, the Court must scrutinize the Settlement for three factors that tend to show collusion: "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing arrangement,' under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant, rather than the class." <u>Herrera</u>, 2021 WL 3932257, at *11.

First, Plaintiffs' counsel's fee request of **$19 million** is not disproportionate and is below the standard 25% benchmark employed in the Ninth Circuit. Where, as here, a settlement creates a monetary benefit for the class, the preferred method for determining

the appropriate fee award is the "percentage method." Aichele v. City of Los Angeles, 2015 WL 5286028, at *5 (C.D. Cal. Sept. 9, 2015). Under the percentage method, the court simply awards the attorneys a percentage of the compensation provided under the settlement using 25% as a benchmark. In re Hyundai & Kia Fuel Economy Litig., 926 F.3d 539, 570 (9th Cir. 2019) (en banc). The court then may raise or lower the percentage based on several factors, including the quality of the representation, the benefits obtained for the class, the complexity and novelty of the issues presented and the risk of non-payment. Id. "Many courts and commentators have recognized that the [percentage method] is the preferred approach in class action fee requests because it more closely aligns the interests of the counsel and the class, i.e., class counsel directly benefit from increasing the size of the class fund and working in the most efficient manner." Aichele, 2015 WL 5286028, at *5.

When determining the value of the Settlement, courts are instructed to include any attorney's fees, litigation expenses and notice and administrative costs as part of the overall benefit. In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 953 (9th Cir. 2015). In addition, "where the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained many courts include such relief as part of the value of a common fund for purposes of applying the percentage method of determining fees." Staton v. Boeing Co., 327 F.3d 938, 974 (9th Cir. 1988). In Wells Fargo, when assessing the total value of the Settlement, this Court included: (a) the refund and interest payments made to the Statutory Class; (b) the total value of the Settlement Fund, including the payments to the Non-Statutory Class, as well as the Fee and Expense Awards and Service Awards approved by the Court; (c) the total Notice and Administrative Costs; and (d) the estimated future refunds that would be paid to existing Class members. Herrera, Dkt. No. 209, pp. 22-23.

Under the proposed Settlement, based on the current data, TMCC will be paying over **$355 million** as a result of the Settlement: (i) over **$21.5 million** to the Statutory Class; (ii) **$59 million** to cover the Approved Claims to the Non-Statutory Class, the Notice

and Administration Costs, and any Fee and Expense Awards and Service Awards approved by the Court; and (iii) **$279.5 million** in future refunds to its customers due to the Business Practice Change, of which **$21.5 million** will go to existing Class members.  Settlement, ¶¶ 103-109.  A Fee Award of **$19 million** represents approximately **5.4%** of the total **$355 million** value of the Settlement, and **17.6%** of the total value of Settlement to existing Class members.  And even if the Court excluded the value of the Business Practice Change entirely (which it did not do in <u>Wells Fargo</u> and should not due here), a $19 million fee award would still represent only 23.6% of the value of the Settlement.  In sum, no matter how the Court measures the Settlement value, Plaintiffs' fee request will always be below the 25% benchmark and, thus, is not disproportionate.  <u>Id.</u>

Second, there is no "clear-sailing provision" in this Settlement.  TMCC reserves the right to oppose the fee request.  Settlement, ¶ 145.

Third, there is no "kicker" or "reverter" clause that returns unawarded fees to the TMCC, rather than the Class.  The Settlement Fund is non-reversionary.  Settlement, ¶ 105.

Fourth, the amount of the $19 million fee request was recommended by Judge Guilford as a mediator's proposal after reviewing the evidence submitted by Plaintiffs and hearing argument from the parties.  Dkt. 87-1, ¶ 18.  This factor further demonstrates that the fee request was not the product of collusion between the parties.

In sum, the proposed fee request is not disproportionate to the Settlement's benefits nor is it the product of collusion.  This subfactor thus favors preliminary approval.  <u>Herrera</u> 2021 WL 3932257, at *11.

### d)    Agreement Identification Requirement.

The Court must also evaluate any agreement made in connection with the proposed Settlement.  Fed. R. Civ. P. 23(e)(2)(C)(iv, (e)(3).  Here, there are not any agreements other than the Settlement, and thus there is nothing else for the Court to evaluate other than the Settlement.  Sims Decl., ¶ 4.

### E.    Equitable Treatment of Class Members

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class

members equally relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." <u>Herrera</u>, 2021 WL 3932257, at *12.

Here, the Settlement appropriately makes a distinction between Statutory Class members and the Non-Statutory Class members. Dkt. 87-1, ¶ 37(b). The Statutory Class members have stronger claims because they can rely on Automatic Refund Requirements that require creditors, like TMCC to, at a minimum, "ensure" that a GAP Refund is paid after an Early Payoff. <u>Id.</u> This is why the Statutory Class members are receiving refunds plus interest directly from TMCC. Settlement, ¶ 103. In <u>Wells Fargo</u>, this Court found this distinction is "logical" and weighs in favor of preliminary approval. <u>Herrera</u>, 2021 WL 3932257, at *12. Otherwise, the Settlement and Release is the same for all Settlement Class members. Settlement, ¶ 97.

### F.    Reaction of the Class

The reaction of the Class also weighs heavily in favor of the Settlement. As noted above, out of 663,343 people who received direct notice of the Settlement, there were *no objections*. 2 Longley Decl., ¶ 4, 8. Further, requests for exclusion were received from less than 0.01% of the people to whom notice was sent. <u>Id.</u>, ¶ 7. That reaction is a testament to the extraordinary result obtained by Plaintiffs, as the Settlement Administrator has never seen a settlement with this many class members not receive an objection and receive so few requests. <u>Id.</u>, ¶¶ 7, 8. In comparison, there are currently 76,612 Approved Claims submitted and there are another 12,377 timely but incomplete claims which may still be cured. (<u>Id.</u>, ¶ 15.) This positive response likewise favors final approval of the Settlement. <u>See</u>, <u>e.g.</u>, <u>Churchill</u>, 361 F.3d at 575.

## VII.   CONCLUSION

In sum, the Settlement provides a "fair, reasonable and adequate" compromise of the claims asserted in this case.  The requested fees, costs and service awards are fair and reasonable as established herein and the concurrent Motion for Attorney Fees, Costs and Service Awards.  Based on the foregoing, Plaintiffs request the Court (1) grant final approval of the Settlement; (2) approve Plaintiff's request for an award of $19 million in attorneys' fees and $112,600 in litigation expenses; (3) approve incentive awards in the amount of $2,500 for each of the Class Representatives; (4) increase the permitted Notice and administrative Costs to $1,020,000; and (5) issue an order and judgment dismissing the case with prejudice pursuant to the terms of the Settlement.

Dated:  October 10, 2022                          FRANK SIMS & STOLPER LLP

                                                                By:  /s/ Scott H. Sims
                                                                        JASON M. FRANK, ESQ.
                                                                        ANDREW STOLPER, ESQ
                                                                        SCOTT H. SIMS, ESQ.
                                                                        *Attorneys for Plaintiffs*

# Exhibit 1

1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MARTIN and LORI MITCHELL, each individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>vs.<br><br>TOYOTA MOTOR CREDIT CORPORATION, a California Corporation<br><br>                    Defendant. | Case No.:  2:20-cv-10518-JVS-MRW<br><br>**STIPULATION RE: NATIONWIDE CLASS ACTION SETTLEMENT AND RELEASE** |

1

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...........................................................................1

II.     DEFINITIONS ...............................................................................1

III.    RECITALS .....................................................................................9

IV.     DUTIES OF THE PARTIES WITH RESPECT TO PRELIMINARY
        APPROVAL AND FINAL APPROVAL ......................................12

V.      RELEASES ..................................................................................18

VI.     SETTLEMENT CONSIDERATION TO THE CLASS ................21

VII.    NOTICE PLAN AND ADMINISTRATION OF SETTLEMENT ..............25

VIII.   REQUEST FOR EXCLUSIONS ..................................................30

IX.     OBJECTIONS TO THE SETTLEMENT ....................................32

X.      DUTIES OF THE SETTLEMENT ADMINISTRATOR .............34

XI.     FEE, EXPENSES AND SERVICE AWARDS .............................38

XII.    CONDITIONS OF SETTLEMENT AND EFFECT OF
        DISAPPROVAL, CANCELLATION, OR TERMINATION ......39

XIII.   NO ADMISSION OF LIABILITY ..............................................42

XIV.    REPRESENTATIONS AND WARRANTIES .............................44

XV.     MISCELLANEOUS PROVISIONS ............................................46

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.   INTRODUCTION

1.   This Stipulation re: Nationwide Class Action Settlement and Release (the "Agreement" or "Settlement") is made and entered as of the Effective Date between Plaintiffs William Martin and Lori Mitchell, both individually and on behalf of the Class, and Toyota Motor Credit Corporation ("TMCC") (collectively, the "Parties"), through their respective counsel of record.

2.   This Agreement is subject to the terms and conditions set forth below and the Final Approval of the Court.  By entering this Agreement, the Parties intend to fully, finally, and forever resolve, discharge, and settle the claims described in the Release.  If the Court does not enter an order granting Final Approval of the Settlement, or if the associated Judgment does not become Final for any reason, this Settlement Agreement shall be deemed null and void and shall be of no force or effect whatsoever.

# II.   DEFINITIONS

As used in the Settlement Agreement, the following terms have the meanings specified below:

3.   "Action" means the lawsuit entitled *William Martin and Lori Mitchell et al. v. Toyota Motor Credit Corporation*, Case No. 2:20-cv-10518-JVS-MRW, filed in the United States District Court for the Central District of California.

4.   "Approved Claim" means a Non-Statutory Class Member submitted a completed Claim Form for a GAP Refund.

5.   "Automatic Refund Requirements" means those State laws, regulations, or other guidance that require a creditor, dealer and/or GAP administrator on a Finance Agreement to take certain actions to ensure that a customer receives a GAP Refund after an Early Payoff without any additional action from the customer.  For purposes of this Settlement only, the Parties agree that **Exhibit A** sets forth a list of the States with Automatic Refund Requirements and either (a) the date the applicable

Automatic Refund Requirements went into effect; (b) the beginning date of the applicable State's statute of limitations period for breach of contract claims; or (c) January 1, 2016 whichever is later.  This list will be used solely for the purpose of defining the members in the Statutory Class as part of this Settlement.

6.    "CAFA Notice" means the notice that TMCC is required to provide to the "appropriate federal official" and "appropriate State official" in every State where a Class Member resides pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(a)(1).

7.    "Claim Form" means the form that Non-Statutory Class Members will need to complete to submit a claim for a GAP Refund.  The Claim Form will be in substantially the same form and with substantially the same content as **Exhibit B**. The Claim Form may be completed online on the Settlement Website, or by printing the Claim Form and mailing it to the Settlement Administrator.

8.    "Claim Form Deadline" means the date when the Non-Statutory Class Members must submit a completed Claim Form to the Settlement Administrator in accordance with the requirements set forth in Paragraph 123 of this Agreement and which shall be sixty (60) days from the mailing of the Notice of Settlement.

9.    "Claims Period" means the sixty (60) day period between the mailing of the Notice of Settlement and the Claim Form Deadline.

10.    "Class" or "Class Member(s)" means all persons who are members of the Statutory Class and/or the Non-Statutory Class.

11.    "Class Counsel" shall refer to Jason M. Frank, Andrew D. Stolper and Scott H. Sims of Frank Sims & Stolper LLP and Franklin D. Azar of Franklin D. Azar & Associates P.C.

12.    "Class Information" means the information about each potential Class Member that TMCC is required to provide to the Settlement Administrator to maintain on a confidential basis, including the information set forth in Paragraph 115 of this Agreement.

SETTLEMENT AGREEMENT
*WILLIAM MARTIN et al. v. TOYOTA MOTOR CREDIT CORPORATION, CASE NO. 2:20-cv-10518-JVS-MRW*
116000927v2

13. "Class Notice" has the meaning set forth in Section VII of this Agreement and shall include the Notice of Settlement emailed or mailed to the Class, the Long-Form Notice published on the Settlement Website, the content of the Settlement Website and any Digital Advertisements published about the Settlement.

14. "Class Period" means January 1, 2016 through October 25, 2021.

15. "Class Released Claims" has the meaning set forth in Paragraph 97 of this Agreement.

16. "Class Releasors" has the meaning set forth in Paragraph 97 of this Agreement.

17. "Class Releasees" has the meaning set forth in Paragraph 97 of this Agreement.

18. "Class Representatives" means Plaintiffs William Martin and Lori Mitchell.

19. "Counsel for TMCC" shall refer to Ashley L. Shively and Judith M. Mercier of Holland & Knight LLP.

20. "Court" shall refer to the United States District Court for the Central District of California.

21. "Day" or "Days" has the meaning ascribed to it in Federal Rule of Civil Procedure 6, and all time periods specified in this Agreement shall be computed in a manner consistent with that rule.  All references to days shall be interpreted to mean calendar days, unless otherwise noted.

22. "Dealer" means an automobile dealership that assigned a Finance Agreement to TMCC.

23. "Defendant" means TMCC.

24. "Digital Advertisements" means the advertisements that the Settlement Administrator will cause to be displayed on targeted websites as part of the Class Notice during the Claims Period, which will be in substantially the same form and with substantially the same content as **Exhibit C**.

25.    "Early Payoff" means the payment in full of the Finance Agreement more than 30 days prior to its original scheduled maturity date.

26.    "Effective Date" means the first date by which all of the events and conditions specified in Paragraph 150 of this Agreement have occurred and have been met.

27.    "Eligible Class Member" means a Non-Statutory Class Member who returned a completed Claim Form.

28.    "Exclusion/Objection Deadline" means the deadline for requesting exclusion from the Class or objecting to the Settlement, which shall be sixty (60) days from the date of the mailing of the Notice of Settlement.

29.    "Execution Date" means the latest date associated with a signature on the fully executed Agreement as set forth on this Agreement's signature pages.

30.    "Fee, Expense and Service Award Application" means the application Class Counsel submits to the Court for (a) an award of attorneys' fees and reimbursement of reasonable expenses incurred in connection with prosecuting the Action and (b) a Service Award to the Class Representatives.

31.    "Fee and Expense Award" means any amounts that are awarded by the Court in response to the Fee, Expense and Service Award Application.

32.    "Final" means, with respect to any order of the Court, including, without limitation, the Judgment, that such order represents a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise. Without limitation, an order becomes "Final" when: (a) no appeal has been filed and the prescribed time for commencing any appeal has expired; or (b) an appeal has been filed and either (i) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (ii) the order has been affirmed in its entirety and the prescribed time, if any, for commencing any further appeal has expired. For purposes of this Agreement, an "appeal" includes appeals as of right, discretionary appeals, interlocutory appeals, proceedings involving writs of

4

certiorari or mandamus, and any other proceedings of like kind.  Any appeal or other proceeding pertaining solely to any order issued with respect to an application for attorneys' fees and expenses consistent with this Agreement shall not in any way delay or preclude the Judgment from becoming Final.

33.    "Final Approval" has the meaning set forth in Paragraph 94 of this Agreement.

34.    "Final Approval Order" has the meaning set forth in Paragraph 94 this Agreement.

35.    "Finance Agreement" means the retail installment sales contract entered into between a Class Member and Dealer for the purchase of a vehicle and that was subsequently assigned to TMCC.

36.    "GAP" means Guaranteed Asset Protection and/or Guaranteed Auto Protection.

37.    "GAP Administrator" means the administrator identified in a GAP Agreement.

38.    "GAP Agreement" means the addendum to the Finance Agreement that provides for GAP protection.

39.    "GAP Refund" means a credit or refund of all or part of the purchase price for a GAP Agreement, which such amount is calculated on a pro rata basis based on the elapsed time from start date of the GAP Agreement to the date of the Early Payoff.

40.    "Identification Number" means the unique identification number that will be assigned to each potential Class Member by the Settlement Administrator.

41.    "Judgment" means the order of judgment and dismissal of the Action with prejudice.

42.    "Long Form Notice" means the written notice of the Settlement that will be published on the Settlement Website in substantially the same form and with substantially the same content as **Exhibit D**.

43.    "Net Settlement Fund" means the amount that would remain in the Settlement Fund after deducting any Notice and Administrative Costs, Fee and Expense Awards and Service Awards approved by the Court.

44.    "Non-Statutory Class" means all persons in the United States (a) who entered into Finance Agreements with GAP protection that were assigned to TMCC; (b) who paid off their Finance Agreements at least 30 days prior to the original scheduled maturity date; (c) whose Early Payoffs occurred during the time period January 1, 2016 through October 25, 2021; and (d) who did not receive a GAP Refund, or suffer a total loss of the Vehicle during the term of the Finance Agreement. Excluded the Non-Statutory Class are any persons who fall under the definition of the Statutory Class for the Vehicle covered by their GAP Agreement.

45.    "Notice and Administration Costs" means the total cost incurred by the Settlement Administrator to provide the Class Notice and perform the administrative duties required by the Settlement, which such amount will not exceed $800,000.00.

46.    "Notice of Settlement" means the postcard notice of the Settlement that will be provided to the Non-Statutory Class in substantially the same form and with substantially the same content as **Exhibit E** and the similar postcard notice of the Settlement that will be provided to the Statutory Class in substantially the same form and with substantially the same content as **Exhibit F.**

47.    "Notice Plan" has the meaning set forth in Section VII of this Agreement concerning the proposed form of notice to the Class.

48.    "Operative Complaint" means the Second Amended Complaint that will be filed in this Action to conform to the terms of the Settlement.

49.    "Opt-Out" means a person who falls within the definition of the Class who has timely and validly elected to be excluded from the Class pursuant to the procedures set forth in Section VIII of this Agreement.  It does not include any person whose request for exclusion is challenged by TMCC and the challenge is not overruled by the Court or withdrawn by TMCC, any person whose communication is

6

not treated as a request for exclusion, and/or any person whose request for exclusion is not valid or is otherwise void.

50.    "Opt-Out List" is the list of Class Members who submit valid and timely Requests for Exclusion from the Class as set forth in Paragraph 131 of this Agreement.

51.    "Plaintiffs" means Plaintiffs William Martin and Lori Mitchell, individually on behalf of themselves and as representatives of the Class.

52.    "Preliminary Approval" has the meaning set forth in Paragraph 89 of this Agreement.

53.    "Preliminary Approval Order" has the meaning set forth in Paragraph 89 of this Agreement.

54.    "Pro Rata Method."  The Settlement Administrator will calculate the GAP Refund utilizing the "Pro Rata Method" which means the following: (a) dividing the number of days that the GAP product was in use (i.e., the date of the Early Payoff minus start date of the GAP Agreement) by the total number of days in the original term of the Finance Agreement (i.e., the original scheduled maturity date of the Finance Agreement minus the start date of the Finance Agreement); (b) subtracting that figure from 1 to yield the "unused" percentage, and (c) multiplying the unused percentage by the total purchase price for the GAP Agreement.  No cancellation fee should be applied and/or included in this calculation.

55.    "Service Awards" means the amount awarded by the Court to Plaintiffs for their service as Class Representatives as described in Paragraph 148 of this Agreement.

56.    "Settlement" means the settlement of the claims released by this Agreement.

57.    "Settlement Administrator" means Atticus Administration, LLC, or such other entity selected by Class Counsel and approved by TMCC, which approval will not be unreasonably withheld.

7

SETTLEMENT AGREEMENT
*WILLIAM MARTIN et al. v. TOYOTA MOTOR CREDIT CORPORATION, CASE NO. 2:20-cv-10518-JVS-MRW*
116000927v2

58.    "Settlement Fund" means the $59 million that will be deposited by TMCC into an account administered by the Settlement Administrator to cover the amounts to be paid for (a) Approved Claims for Refunds to Non-Statutory Class Members; (b) Notice and Administration Costs; (c) the Fee and Expense Awards approved by the Court and (d) the Service Awards approved by the Court.

59.    "State of Origination" shall mean the State of the dealership that originated the Finance Agreement, as determined by the data maintained by TMCC.

60.    "Statutory Class" means all persons in the United States: (a) who entered into Finance Agreements with GAP protection in the States of Alabama, Colorado, Indiana, Iowa, Massachusetts, New Jersey, Oklahoma, Oregon, Texas, Vermont, Wisconsin or Wyoming; (b) whose agreements were assigned to TMCC; (c) who paid off their Finance Agreements at least 30 days prior to the original maturity date; (d) whose Early Payoffs occurred during the Statutory Class Period; and; (e) who did not previously receive a GAP Refund or suffer a total loss of the Vehicle during the term of the Finance Agreement.  The applicable dates for the Statutory Class Period are set forth in **Exhibit A** to this Agreement.

61.    "Statutory Class Period" is the later of: (i) the date the applicable State Automatic Refund Requirement went into effect; (ii) the beginning of the applicable State's statute of limitations period for breach of contract claims; or (iii) January 1, 2016.  The applicable dates for the Statutory Class Period are set forth in **Exhibit A** to this Agreement

62.    "Term Sheet" means the Term Sheet agreed to by the Parties on or about March 15, 2022.

63.    "TMCC" means defendant Toyota Motor Credit Corporation and all of its related companies, including but not limited to TMIS.

64.    "TMIS" means Toyota Motor Insurance Services, Inc.

65.    "Vehicle" means the automobile that is covered by the GAP Agreement.

SETTLEMENT AGREEMENT
*WILLIAM MARTIN et al. v. TOYOTA MOTOR CREDIT CORPORATION, CASE NO. 2:20-cv-10518-JVS-MRW*
116000927v2

66.    As used in this Agreement, the plural of any defined terms includes the singular thereof and vice versa, except where the context requires otherwise.

## III.    RECITALS

67.    Plaintiffs filed this Action on behalf of themselves and a class of similarly situated consumers on November 17, 2020.  See Dkt. 1.[1]

68.    Plaintiffs allege that TMCC wrongfully collected and failed to refund unearned GAP fees after the Early Payoff of a customer's Finance Agreement with TMCC in purported violation of TMCC's contractual obligations under the GAP Agreement and/or certain States' Automatic Refund Requirements.  Plaintiffs further contend this practice constitutes a violation of California's unfair business practice laws and consumer protection laws.

69.    TMCC denies each and all of the claims and allegations of wrongdoing made by Plaintiffs.

70.    The initial complaint in this Action included claims for (a) breach of contract; (b) money had and received; (c) violation of the California Unfair Business Practices Act (Cal. Bus. & Prof. Code § 17200 et seq.); (d) violation of the California Consumer Legal Remedies Act (the "CLRA") and (e) Declaratory Relief.  Plaintiffs initially named TMCC and TMIS as defendants.

71.    On January 11, 2021, TMCC and TMIS filed a motion to dismiss Plaintiffs' initial complaint.  See Dkt. 20.

72.    On February 16, 2021, per the stipulation of the Parties, Plaintiffs filed a First Amended Class Action Complaint which, among other things, dismissed TMIS from the lawsuit, without prejudice, and dismissed Plaintiffs' claims for money had and received, without prejudice.  See Dkt. 25, 26.

73.    On March 3, 2021, TMCC filed its Answer and Affirmative Defenses to Plaintiffs' First Amended Class Action Complaint.  See Dkt. 32.

---

[1] References to "Dkt" are to the docket in this Action.

SETTLEMENT AGREEMENT

*WILLIAM MARTIN et al. v. TOYOTA MOTOR CREDIT CORPORATION, CASE NO. 2:20-cv-10518-JVS-MRW*

116000927v2

74.    The Parties thereafter engaged in substantial written and deposition discovery.

75.    On August 4, 2021, the Parties attended a mediation before the Honorable Jay C. Gandhi (Ret.).  While the Parties were able to reach agreements in principle on certain areas, they were unable to fully resolve the issues in dispute between the Parties.

76.    Effective October 25, 2021, TMCC changed its practice, and now provides pro rata refunds of GAP to all customers who pay off their Finance Agreement more than 30 days prior to the original maturity date.

77.    On January 27, 2022, the Parties stipulated to and the Court agreed to extend the time for Plaintiffs to file their Motion for Class Certification by two weeks (from February 22, 2022 to March 8, 2022) so that the Parties could complete all class-related discovery.  See Dkt. 47, 48.

78.    On February 24, 2022, after the completion of the class-related discovery, the Parties stipulated to and the Court granted an approximate 45-day extension of all deadlines so the Parties could attend a mediation before the Honorable Andrew J. Guilford (Ret.) on March 15, 2022.

79.    On March 15, 2022, at the conclusion of a full-day arms-length negotiation before a neutral mediator (Judge Guilford), the Parties were able to reach agreement on the material terms of this Settlement and entered into the Term Sheet. The Term Sheet provided that the Parties would prepare this Settlement Agreement and that such Agreement would supersede the terms in the Term Sheet.

80.    On March 16, 2022, the Parties filed a Joint Notice of Tentative Class Action Settlement requesting that the Court stay the Action pending the Parties' preparation and execution of this Agreement.

81.    On May 12, 2022, having reached an agreement on all material terms of the Settlement for the Class, the Parties attended a half-day mediation session before

Judge Guilford concerning attorneys' fees. Both sides presented evidence and argument regarding an appropriate Fee Award. At the end of the session, Judge Guilford issued a mediator's proposal. Class Counsel has agreed to accept Judge Guilford's proposal and will not seek a Fee Award in excess of $19 million. TMCC is reserving its right to oppose this request.

82.   On June 10, 2022, the Parties stipulated to the filing of a Second Amended Complaint (the "Operative Complaint") to conform with the terms of this Settlement. See Dkt. 55, 55-1.

83.   This Settlement is a compromise of disputed claims. Nothing contained in this Agreement, no documents referred to herein, and no action taken to carry out this Agreement may be construed or used as an admission by or against any of the Parties as to the merits or lack thereof of any of the claims or defenses asserted in this Action.

84.   Plaintiffs and Class Counsel have conducted substantial fact discovery and legal analysis in this Action so that they are fully apprised of the strengths and weaknesses of this case, and the costs and benefits of further litigation. In entering this Settlement, Plaintiffs and Class Counsel have taken into account the uncertainty and risks of the further litigation, and the difficulties and delays inherent in such litigation, including potential appeals. Plaintiffs and Class Counsel are also aware of the burdens of proof necessary to establish liability for the claims asserted in this Action, both generally and in response to TMCC's defenses thereto, and the difficulties in establishing liability and damages for the Class. Plaintiffs and Class Counsel have also taken into account the substantial benefits this Settlement will provide to the Class and future customers of TMCC. Based on the foregoing, Plaintiffs and Class Counsel have determined that the Settlement set forth in this Agreement is a fair, adequate and reasonable compromise of the issues in dispute, and is in the best interests of the Class.

SETTLEMENT AGREEMENT
*WILLIAM MARTIN et al. v. TOYOTA MOTOR CREDIT CORPORATION, CASE NO. 2:20-cv-10518-JVS-MRW*
116000927v2

85.    TMCC has concluded that any further defense of this litigation would be protracted and expensive for all Parties.  Unless this Settlement is made, TMCC will devote substantial amounts of time, energy and resources to the defense of the claims asserted by Plaintiffs.  TMCC has taken into account the risks of further litigation in reaching its decision to enter into this Settlement.  Despite continuing to contend that TMCC is not liable for any of the claims asserted by Plaintiffs, TMCC has, nevertheless, agreed to settle this Action in the manner and upon the terms set forth in this Agreement to put to rest the claims set forth in this Action.  TMCC continues to assert that the claims in this Action have no merit and do not give rise to liability.

86.    The Parties stipulate and agree that the fact of this Agreement, the terms in this Agreement, the documents filed in support of this Agreement, and any statement made in the negotiation thereof shall not be deemed or construed to be an admission or evidence of (a) any violation of any statute or law, (b) any liability or wrongdoing by TMCC, (c) any liability on any claims or allegations, (d) any merit to the affirmative defenses asserted by TMCC nor (d) the propriety of certifying a litigation class in any proceeding.  This Agreement shall not be used by any person for any purpose whatsoever in this Action or any other legal proceeding, including but not limited to arbitrations, mediations, or subsequent litigations other than a proceeding to enforce the terms of this Agreement.

## IV.    DUTIES OF THE PARTIES WITH RESPECT TO PRELIMINARY APPROVAL AND FINAL APPROVAL

87.    **Reasonable Best Efforts to Effectuate This Settlement.** The Parties (a) acknowledge that it is their intent to consummate this Agreement and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement the terms and conditions of this Agreement and to exercise their best efforts to accomplish the terms and conditions of this Agreement.

88.    **Certification of Class and Appointment of Class Counsel.** For

settlement purposes only, the Parties agree to certification of the Class, including the Non-Statutory Class and the Statutory Class, pursuant to the Federal Rules of Civil Procedure ("Rules") 23(a) and 23(b)(3).  The Parties further agree to the appointment of Jason M. Frank, Andrew D. Stolper and Scott H. Sims of Frank Sims & Stolper LLP and Franklin D. Azar of Franklin D. Azar & Associates P.C. as Class Counsel pursuant to Rule 23(g).  The Parties do not agree to, and Plaintiffs do not pursue, class certification pursuant to Rule 23(b)(2).  TMCC's agreement to class certification under Rule 23(a) and 23(b)(3) is solely for the purpose of this Settlement and does not, and shall not, constitute, in this or any other proceeding, an admission by TMCC of any kind or any determination that certification of a class for trial or other litigation purposes in this Action or any other separate action is, or would be, appropriate.  If the Court does not grant Final Approval of the Settlement or this Agreement is otherwise terminated or rendered null and void, the certification of the Class, including the Non-Statutory Class and the Statutory Class, shall be automatically vacated and shall not constitute evidence of or any determination that the requirements for certification of a class for trial or other litigation purposes in this Action or any other action are satisfied.   In such circumstances, TMCC reserves all rights to challenge certification of any class or subclass for trial or other litigation purposes in this Action or in any other action on all available grounds as if no Class had been certified for purposes of the Settlement.

89.    **Motion for Preliminary Approval.** As soon as practicable following the Execution Date, Class Counsel shall file an unopposed Motion for Preliminary Approval of this Settlement with the Court and shall apply for entry of a Preliminary Approval Order that would: (a) preliminarily approve this Settlement; (b) certify a conditional settlement Class for settlement purposes only, including the Non-Statutory Class and Statutory Class, pursuant to Rule 23(a) and 23(b)(3); (c) appoint Class Counsel; (d) appoint Plaintiffs as the Class Representatives; (e) appoint the Settlement Administrator; (f) approve as to form and content the proposed Notice of

Settlement and Notice Plan; (g) direct the mailing of the Notice of Settlement to the Class; and (h) schedule the Final Approval Hearing.  The Motion for Preliminary Approval shall ask the Court to find that the proposed form of and method for dissemination of notice to the Class constitutes valid, due, and sufficient notice to the Class; constitutes the best notice practicable under the circumstances; and complies fully with the requirements of Rule 23 and constitutional due process.  The Motion for Preliminary Approval shall also request the Court issue the Stay Order described in the following Paragraph. Plaintiffs will provide a draft of the Motion for Preliminary Approval and [Proposed] Preliminary Approval Order to Counsel for TMCC before filing so that Counsel for TMCC will have the opportunity to review, comment and propose changes.

90.    **Stay Order.** Upon the date that the Court enters the Preliminary Approval Order, Plaintiffs and all Class Members shall be barred and enjoined from commencing, instituting, or continuing to prosecute any action or any proceeding of any kind (including, but not limited, to an action for actual damages, statutory damages, and/or exemplary or punitive damages) in any court of law, arbitration tribunal, administrative forum, or other forum of any kind worldwide, based on the Class Released Claims.

91.    **Compliance with Class Action Fairness Act.** Within ten (10) days after the filing of the Motion for Preliminary Approval and the proposed Settlement with the Court, TMCC shall provide all notices required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715  (the "CAFA Notice").  TMCC may elect to have the Settlement Administrator prepare the CAFA Notice for TMCC's review and approval, and send such Notice to the appropriate federal and/or state officials. Prior to sending the CAFA Notice, a draft of the CAFA Notice shall be provided to Class Counsel so that Class Counsel will have the opportunity to review.

92.    **Implementation of Notice Plan.** As discussed further in Section VII below, the Settlement Administrator will provide direct notice to the Class by mailing

and emailing (to the extent email addresses are available) a copy of the Notice of Settlement to each potential Class Member pursuant to the schedule approved by the Court.   In addition, a Settlement Website will be established by the Settlement Administrator, which will include, among other documents, the Long Form Notice, the Claim Form, the Settlement Agreement, the Operative Complaint, the Motion for Preliminary Approval, the Court's Preliminary Approval Order, the Fee, Expense and Service Award Application, and the Motion for Final Approval.   The Settlement Website will also enable Non-Statutory Class Members to electronically complete and submit a Claim Form or print the Claim Form to be mailed to the Settlement Administrator.   The Settlement Administrator will also publish digital ads about the Settlement on targeted websites that will link to the Settlement Website.

93. **Fee, Expense and Service Award Application.**  Within thirty (30) days prior to the Objection/Exclusion Deadline, Plaintiffs and Class Counsel shall file the Fee, Expense and Service Award Application.  A copy of the application will be provided to the Settlement Administrator to publish on the Settlement Website.  In the event TMCC objects to Class Counsel's request for fees or expenses, TMCC shall file any opposition twenty-one (21) days after Class Counsel's Application is filed.

94. **Motion for Final Approval and Entry of Final Judgment**. Not less than fourteen (14) days prior to the date set by the Court to consider whether this Settlement should be finally approved, Class Counsel shall submit a Motion for Final Approval of the Settlement by the Court.  Class Counsel shall seek entry of the Final Approval Order and Judgment, which shall be approved as to form and content by TMCC prior to submission by Class Counsel, containing at least the following:

(a)  Finding that the Court has personal jurisdiction over Plaintiffs and all Class Members and that the Court has subject matter jurisdiction to approve this Settlement and Agreement;

(b)  Certifying the Non-Statutory Class and Statutory Class, pursuant to Rule 23(a) and Rule 23(b)(3), solely for purposes of this Settlement;

1         (c)  Fully and finally approving this Agreement and its terms as being
2 fair, reasonable, and adequate within the meaning of Rule 23, and directing its
3 consummation pursuant to its terms and conditions;

4         (d)  Declaring this Agreement and the Final Approval Order and
5 Judgment to be binding on and to have res judicata and preclusive effect in all pending
6 and future lawsuits or other proceedings encompassed by the Class Released Claims
7 maintained by or on behalf of the Class Releasors.

8         (e)  Finding that the notice given to the Class Members pursuant to the
9 Notice Plan and Class Notice (i) constituted the best notice practicable under the
10 circumstances; (ii) constituted notice that was reasonably calculated under the
11 circumstances to apprise Class Members of the pendency of the Action, of their right
12 to object to or exclude themselves from the proposed Settlement as applicable, of their
13 right to appear at the final approval hearing, and of their right to seek relief; (iii)
14 constituted reasonable, due, adequate, and sufficient notice to all Persons entitled to
15 receive notice; and (iv) complies in all respects with the requirements of Rule 23, due
16 process, and any other applicable law;

17         (f)  Finding that Class Counsel and Plaintiffs adequately represented
18 the Class Members for purposes of entering into and implementing this Agreement
19 and Settlement;

20         (g)  Ruling on the Fee, Expense and Service Award Application;

21         (h)  Directing that the Action and claims for damages be dismissed
22 with prejudice and, except as otherwise explicitly provided for in this Agreement,
23 without costs;

24         (i)  Discharging and releasing the Class Releasees from all Class
25 Released Claims;

26         (j)  Permanently barring and enjoining the institution and prosecution,
27 by Class Releasors and/or any other Person, of any and all of the Class Released
28 Claims;

SETTLEMENT AGREEMENT
*WILLIAM MARTIN et al. v. TOYOTA MOTOR CREDIT CORPORATION, CASE NO. 2:20-cv-10518-JVS-MRW*
116000927v2

(k)   Approving the Opt-Out List and determining that the Opt-Out List is a complete list of all Persons who have timely and validly requested exclusion from the Class, and accordingly, who shall neither share in nor be bound by the Final Approval Order and Judgment;

(l)   Determining that this Agreement and the Settlement provided for therein and any proceedings taken pursuant to it are not and should not in any event be offered or received as evidence of a presumption, concession, acknowledgment, or an admission of liability or of any wrongdoing by TMCC or the Class Releasees or of the suitability of these or similar claims to class treatment for litigation, trial, or any other purpose except settlement; provided, however, that reference may be made to this Agreement and the Settlement provided for herein in such proceedings as may be necessary to effectuate this Agreement;

(m)   Reserving continuing and exclusive jurisdiction over the Settlement, including all future proceedings concerning the administration, consummation, and enforcement of this Agreement;

(n)   Authorizing the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications, and expansions of this Agreement as shall be consistent in all material respects with the Final Approval Order and Judgment and not limit the rights of the Parties or Class Members; and

(o)   Containing such other and further provisions consistent with the terms of this Agreement to which the Parties expressly consent in writing.

95.   TMCC will not oppose Final Approval of the Settlement if it does not void or revoke this Agreement pursuant to Paragraph 133 and so long as it is consistent with the terms set forth in this Agreement.

96.   Following entry of the Court's Final Approval Order and Judgment, the Parties will each act to assure the timely execution and fulfillment of a provisions of this Agreement, including but not limited to the following:

(a)   Should an appeal be taken from the Final Approval Order, all

1    Parties will support the Final Approval Order on appeal.

2         (b)    The Parties will reasonably assist the Settlement Administrator as

3    needed or requested in the process of resolving any claims, questions or concerns

4    submitted by Class Members.

5         (c)    Class Counsel will ensure that the Settlement Administrator will

6    certify to the Court completion of all payments required to be made by this

7    Agreement.

8                           **V.    RELEASES**

9         Upon the Effective Date, and pursuant to the Court's entry of the Final

10   Approval Order and Judgment, Plaintiffs and the Class Releasors provide the

11   following Releases:

12        97.    **Plaintiffs and Class Release.** Plaintiffs and each and every Class

13   Member, individually or together, and each and every one of their former, present, or

14   future agents, predecessors, successors, heirs, legatees, executors, administrators,

15   insurers, assigns, trustees, spouses, and domestic partners ("Class Releasors")

16   releases and fully discharges TMCC and TMIS, and each of their former, present, or

17   future agents, insurers, predecessors, successors, subsidiaries, parent company(ies),

18   affiliates, officers, directors, and employees and attorneys ("Class Releasees") from

19   any and all past and/or present claims, counterclaims, lawsuits, set-offs, costs, losses,

20   rights, demands, charges, complaints, actions, causes of action, obligations, or

21   liabilities of any and every kind, whether class, individual, or otherwise in nature,

22   including, without limitation, those known or unknown or capable of being known;

23   those which are unknown but might be discovered or discoverable based upon facts

24   other than or different from those facts known or believed at this time; those which

25   are foreseen or unforeseen, suspected or unsuspected, asserted or unasserted, and/or

26   contingent or non-contingent; and those which are accrued, unaccrued, matured or not

27   matured, under the laws of any jurisdiction, which they, whether directly,

28   representatively, derivatively, or in any other capacity, ever had, now have, or

18

hereafter can, shall, or may have, arising from or relating in any way to the Class Member's entitlement to a GAP Refund after an Early Payoff that occurred during the Class Period or Statutory Class Period, as appropriate (the "Class Released Claims").  For clarification, the Class Releasees do not include any Dealers or GAP Administrators (other than TMIS), including without limitation, those identified in the Class Members' GAP Agreements or Finance Agreements.

98.    **No Future Actions Following Release.** The Class Releasors shall not after the Effective Date seek (directly or indirectly) to commence, institute, maintain, or prosecute any suit, action, or complaint of any kind (including, but not limited to, claims for actual damages, statutory damages, restitution, and exemplary or punitive damages) against Class Releasees (including pursuant to the Action), based on the Class Released Claims, in any forum worldwide, whether on his or her own behalf or as part of any putative, purported, or certified class or as part of an action by any other plaintiff on his or her behalf.

99.    **Covenant Not to Sue.** Class Releasors hereby covenant not to sue the Class Releasees with respect to any Class Released Claims, including any claims that Class Releasors, or any of them, does not know or suspect to exist in his or her favor at the time of the release that if known by him or her, might have affected his or her settlement with and release of the Class Releasees, or might have affected his or her decision not to object to or opt out of this Settlement. Class Releasors shall be permanently barred and enjoined from instituting, commencing, or prosecuting any claims against the Class Releasees of any kind (including, but not limited to, for actual damages, statutory damages, restitution, and exemplary or punitive damages) based on the Class Released Claims. The Class Releasors contemplate and agree that this Agreement may be pleaded as a bar to a lawsuit, and an injunction may be obtained preventing any action from being initiated or maintained, in any case sought to be prosecuted on behalf of any Class Releasors (including, but not limited to, for actual damages, statutory damages, and exemplary or punitive damages) based on the Class

Released Claims.

100. **Waiver of California Civil Code § 1542 and Similar Laws.** In addition, the Class Releasors expressly acknowledge that they are familiar with and, upon Final Approval of this Settlement, waive and release with respect to the Class Released Claims any and all provisions, rights, and benefits conferred (a) by Section 1542 of the Civil Code of the State of California, which reads:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

(b) by any law of any and all equivalent, similar, or comparable federal or state rules, regulations, laws, or principles of law of any other jurisdiction that may be applicable herein; and/or (c) any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth in this Agreement. The Class Releasors expressly agree that by executing this Agreement, and for the consideration received hereunder, it is their intention to release, and they are releasing, all Class Released Claims, including any claims that Class Releasors, or any of them, does not know or suspect to exist in his or her favor at the time of the release that if known by him or her, might have affected his or her settlement with and release of the Class Releasees, or might have affected his or her decision not to object to or opt out of this Settlement. The Class Releasors acknowledge that they may hereafter discover claims or facts other than or different from those which they know, believe, or suspect to be true with respect to the subject matter of the Class Released Claims, but the Class Releasors expressly waive and fully, finally, and forever settle and release any and all past, present, and future claims, counterclaims, lawsuits, set-offs,

costs, losses, rights, demands, charges, complaints, actions, causes of action, obligations, or liabilities of any and every kind, whether class, individual, or otherwise in nature, including, without limitation, those known or unknown or capable of being known; those which are unknown but might be discovered or discoverable based upon facts other than or different from those facts known or believed at this time; those which are foreseen or unforeseen, suspected or unsuspected, asserted or unasserted, and/or contingent or non-contingent; and those which are accrued, unaccrued, matured or not matured, all from the beginning of the world until the Effective Date, under the laws of any jurisdiction, which Class Releasors or any of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have, arising out of the Class Released Claims. The release of unknown, unanticipated, unsuspected, unforeseen, and unaccrued losses or claims in this paragraph is contractual and not a mere recital.

101. **Dismissal.** Subject to Court approval, all Class Releasors shall be bound by this Agreement, and all of their claims shall be dismissed with prejudice and released, even if they never received actual notice of the Action or this Settlement.

## VI.    SETTLEMENT CONSIDERATION TO THE CLASS

In full, complete, and final settlement of any and all claims in the Action, and as consideration for the Releases provided by this Agreement, TMCC agrees as follows:

102. **Business Practice Change.** Commencing on October 25, 2021, TMCC implemented changes to its refund practice so that it now automatically and directly provides pro rata refunds of GAP to all customers in all U.S. States within a reasonable time after receipt of an Early Payoff, provided such payoff occurs more than thirty (30) days prior to the original maturity date of the Finance Agreement. Customers are not required to take any action to seek a refund and no cancellation fee will be charged unless provided for in the customer's GAP Agreement. The practice applies to all customers whose Finance Agreements with GAP Agreements have been

or will be assigned to TMCC.  TMCC agrees it will not materially change this practice for at least four (4) years after the Effective Date of this Agreement, and it will not revert back to a State-by-State approach during this four-year period.  This business practice change is a material term of Settlement to be enforced pursuant to this Agreement.    Notwithstanding the foregoing, the Parties agree that TMCC is not agreeing to, nor will there be any, injunctive relief pursuant to this Settlement and the Settlement will not be approved under Rule 23(b)(2).  TMCC is not agreeing to and will not be subject to any monitoring.

103.    **Refunds to the Statutory Class.**  TMCC will directly pay each member of the Statutory Class the full amount of their GAP Refund without any deduction for cancellation fees, plus interest at the applicable State-specific pre-judgment interest rate, which such interest will accrue from the date of the Early Payoff to the date the GAP Refund is issued by TMCC.  Upon completion of these refund payments, TMCC will provide a declaration to the Settlement Administrator and Class Counsel verifying the refund payments have been completed.  The declaration will include a list of Statutory Class members, the amount of their GAP Refund and the interest.  Any checks that were returned or not cashed will be handled in accordance with the applicable State's unclaimed property/escheatment laws.  The members of Statutory Class will <u>not</u> be required to submit a Claim Form for their GAP Refunds because TMCC can reasonably determine from its own records that such individuals are part of the Statutory Class.

104.    **Refunds to the Non-Statutory Class.**    Each member of the Non-Statutory Class will be eligible to submit a Claim Form for up to their full GAP Refund, without any deduction for cancellation fees, to be paid from the Settlement Fund.  In order to receive the GAP Refund, each Non-Statutory Class Member will be required to submit a completed and signed Claim Form to the Settlement Administrator by the Claim Form Deadline verifying under penalty of perjury that: (a) they purchased GAP protection for the Vehicle identified on their Claim Form;

(b) they did not did not suffer a total loss of their Vehicle during the term of the Finance Agreement;; and (c) they did not previously receive a credit or refund of GAP from TMCC, a Dealer, a GAP Administrator or any other third-party.  If the collective amount of the Approved Claims is greater than the amount remaining in the Net Settlement Fund, then the individual refund amount will be reduced on a prorated basis as set forth in Paragraph 109 below.  The members of the Non-Statutory Class are being required to submit a Claim Form verifying the information set forth in this Paragraph because TMCC cannot reasonably and systematically determine from its records whether these customers qualify for a GAP Refund under the terms of this Settlement.  Upon request, TMCC will provide a confidential declaration to the Court expounding on this issue.

105.  **Settlement Fund.**  Within fourteen (14) days after the Effective Date, TMCC will deposit the sum of **Fifty-Nine Million Dollars ($59,000,000.00)** into a non-reversionary Settlement Fund to be used to pay for the following obligations under this Agreement: (a) Approved Claims for GAP Refunds to Non-Statutory Class Members; (b) Notice and Administration Costs; (c) Fee and Expense Awards approved by the Court; and (d) Service Awards approved by the Court.  TMCC shall not be required to pay more than $59 million and in the event TMCC advances funds to the Settlement Administrator for Notice and Administration Costs, that amount shall be credited towards the Settlement Fund.

106.  **Notice and Administration Costs.**  The Notice and Administration Costs shall be paid from the Settlement Fund.  The Settlement Administrator has agreed that the Notice and Administration Costs will not exceed $800,000.00, unless specifically approved by the Court and the Parties.

107.  **Fee and Expense Awards**.  The Fee and Expense Awards approved by the Court shall be paid from the Settlement Fund.

108.  **Service Awards.**  The Service Awards approved by the Court shall be paid from the Settlement Fund.

109.  **Operation of Net Settlement Fund.**  The Net Settlement Fund is the amount of money that remains in the Settlement Fund after the deduction of any Notice and Administration Costs, Fee and Expense Awards and Service Awards approved by the Court.  If the amount of the Net Settlement Fund is not sufficient to fully cover the Approved Claims for GAP Refunds to the Non-Statutory Class Members, then the individual GAP Refund amounts will be reduced on a prorated basis. Each Non-Statutory Class Member's individual payment from the Settlement Fund will be reduced by the same percentage.  For example, if the combined total of Approved Claims is ten percent (10%) greater than the Net Settlement Fund, then each individual's GAP Refund will be reduced by ten percent.

110.  **Bankruptcy.**   In the event a Class Member is in a bankruptcy proceeding, then TMCC or the Settlement Administrator may pay any compensation under this Settlement Agreement to the bankruptcy trustee or otherwise as required under any applicable bankruptcy law, rules, and/or court orders.

111.  **Agreement To Be Bound.** All members of the Class shall be subject to and bound by the provisions of this Agreement, the Class Released Claims, and the Judgment with respect to all Class Released Claims regardless of whether such Class Members obtain payment pursuant to the Settlement.

112.  **Disbursement of Unused Portions of the Settlement Fund**.   The Settlement Fund is non-reversionary.  In the event there are any amounts remaining in the Net Settlement Fund after payment of all Claims, then the Parties will meet and confer on a proposal for how the remaining amounts shall be distributed, subject to the approval of the Court.  If the Parties are unable to agree on a proposal, then both sides will submit their proposals to the Honorable Andrew J. Guilford (Ret.) for consideration.

113.  **Uncashed Claim Checks.**  If a Claim check is not cashed within one-hundred and eighty (180) days after it is mailed by the Settlement Administrator, then the Settlement Administrator will place a stop-order on the check.  The Settlement

1  Administrator will then take reasonable efforts to contact the Class Member and issue
2  a new Claim check.  If the Settlement Administrator is unable to reach the Class
3  Member within thirty (30) days, then the Settlement Administrator will remit the
4  unclaimed Settlement Check amount to the appropriate State agency based on the
5  escheat laws and regulations applicable for the State of the Class Member's last
6  known address.

7  ## VII.   NOTICE PLAN AND ADMINISTRATION OF SETTLEMENT

8  **114.  Identification of Potential Class Members.**  TMCC shall identify
9  potential members of the Non-Statutory Class and Statutory Class by relying on data
10 and information reasonably available to TMCC.  Specifically, TMCC shall identify
11 all customers who had a Finance Agreement with a GAP Agreement that was assigned
12 to TMCC and who made an Early Payoff 30 days or more prior to the original maturity
13 date during the Class Period or during the Statutory Class Period with respect to
14 Statutory Class Members.  TMCC may exclude any customers for whom TMCC has
15 records verifying that (a) the customer's GAP Agreement was cancelled prior to the
16 Early Payoff, or (b) the customer suffered a total loss of the Vehicle covered by the
17 GAP Agreement during the term of the Finance Agreement.

18 **115.  Class Information Provided to Settlement Administrator.**  Within
19 fourteen (14) days after the filing of the Motion for Preliminary Approval, TMCC
20 shall provide to the Settlement Administrator with the following information for each
21 potential Class Member: (a) the customer's name; (b) the customer's account number;
22 (c) the customer's last known mailing address; (d) the customer's email address (if
23 available); (e) the State of Origination; (f) a description of the Vehicle covered by the
24 customer's Finance Agreement; (g) the Vehicle Identification Number; (h) the name
25 of the Dealer; (i) the start date for the customer's Finance Agreement; (j) the original
26 scheduled maturity date for the customer's Finance Agreement; (k) the date of the
27 Early Payoff; and (l) the total purchase price for the customer's GAP Agreement.
28 With respect to the Statutory Class Members, TMCC shall also provide the customer's

1  actual or estimated GAP Refund and accrued interest.

2      116.  **Calculation of GAP Refunds.**  The Settlement Administrator will be

3  responsible for calculating the GAP Refund for the Non-Statutory Class Members

4  using the Pro Rata Method based on the information provided by TMCC.  The

5  Settlement Administrator will provide examples of the calculation to the Parties to

6  confirm the calculation is being performed accurately.

7      117.  **Updating Addresses.**  The Settlement Administrator will use reasonable

8  efforts to update and confirm the accuracy of the Class Members' contact information

9  through the USPS change of address system prior to mailing the Notice of Settlement.

10      118.  **The Notice of Settlement.**  The Notice of Settlement will be a postcard

11  notice in substantially the same form and with substantially the same content as

12  **Exhibit E** (the "Non-Statutory Class Notice") and **Exhibit F** (the "Statutory Class

13  Notice").  The Notice of Settlement will be customized for each potential Class

14  Member so that it includes, among other information, (a) a unique Identification

15  Number for each potential Class Member, (b) the Vehicle covered by the Settlement

16  and (c) the estimated maximum GAP Refund (or, in the case of the Statutory Class

17  Notice, the actual or estimated GAP Refund plus the applicable interest).  The Notice

18  of Settlement will also include a QR code that Class Members can scan to link directly

19  to the Settlement Website.   The email Notice of Settlement will contain a link

20  allowing potential Class Members to directly access the Settlement Website.

21      119.  **Mailing Notice of Settlement.**  Within fourteen days (14) days after the

22  Court issues its Preliminary Approval Order, or by any alternate deadline ordered by

23  the Court, the Settlement Administrator will mail, via first-class mail, and email

24  (where email addresses are available) the Notice of the Settlement to each potential

25  Class Member.

26      120.  **Undeliverable Notices.**  Any mailed Notices of Settlement returned to

27  the Settlement Administrator as non-delivered on or before the Claim Form Deadline

28  shall be sent to the forwarding address affixed thereto.  If no forwarding address is

provided, the Settlement Administrator shall promptly attempt to determine a correct mailing address using a skip-trace, or other search using information available in TMCC's records and provided to the Settlement Administrator upon request and shall re-mail the Notice of Settlement.  If, after performing a skip-trace search, the Notice of Settlement is still returned to the Settlement Administrator as non-deliverable, the Settlement Administrator will have no further obligation to undertake efforts to obtain an alternative address.

121.   **The Settlement Website.**  Within fourteen days (14) days after the Court issues its Preliminary Approval Order, or by any alternate deadline ordered by the Court, the Settlement Administrator will establish a Settlement Website, with a URL acceptable to the Parties subject to TMCC's final right of approval, which will not be unreasonably withheld.   The Settlement Website will include, among other documents, the Long Form Notice, the Claim Form, the Settlement Agreement, the Operative Complaint, the Motion for Preliminary Approval, the Court's Preliminary Approval Order, the Fee, Expense and Service Award Application, and the Motion for Final Approval.  The Settlement Website will also enable Non-Statutory Class Members to electronically complete and submit a Claim Form or print the Claim Form to be mailed to the Settlement Administrator as set forth in further detail below.  The Settlement Administrator will take down the Settlement Website after the Settlement is Final and all payments have been completed to the Class.

122.   **Digital Advertisements.**  Within fourteen days (14) days after the Court issues its Preliminary Approval Order, or by any alternate deadline ordered by the Court, the Settlement Administrator will ensure that Digital Advertisements about the Settlement will appear on targeted websites that will link to the Settlement Website. The Digital Advertisements will be in substantially the same form and with substantially the same content as **Exhibit C**.  The Digital Advertisements will run each week during the Claims Period.

123. **Claim Form.** The Claim Form will be in substantially the same form and with substantially the same content as **Exhibit B**. The Claim Form will be customized so that it identifies the Vehicle covered by the Settlement and the estimated maximum GAP Refund. The Non-Statutory Class Members will be required to check three boxes verifying that: (a) they purchased GAP protection for the Vehicle identified on their Claim Form; (b) they did not suffer a total loss of the Vehicle covered by their GAP Agreement during the term of their Finance Agreement; and (c) they did not previously receive a GAP Refund from TMCC, a Dealer, a GAP Administrator or any other third party. The Non-Statutory Class Members will also be required to sign the Claim Form verifying under penalty of perjury that the information in the Claim Form is accurate. The Claim Form will further request the Non-Statutory Class Members provide the best telephone number or email to contact them if there are any issues with their Claim Form, but the Non-Statutory Class Members are <u>not</u> required to provide this information in order have their Claim Form approved. The Statutory Class Members are <u>not</u> required to submit a Claim Form because TMCC can reliably verify from its records, through an individual account level review, that these customers are entitled to a GAP Refund in accordance with the terms of this Settlement.

124. **Claims Process.** The Claim Form will be available on the Settlement Website. The Non-Statutory Class Members may also contact the Settlement Administrator to request a hard copy of the Claim Form be sent to them via mail or email. The Non-Statutory Class Members will be able to input their Identification Number into the Settlement Website so they can complete the Claim Form online and sign the Claim Form electronically. If a Non-Statutory Class Member fails to check a box or sign the Claim Form, they will be automatically notified that they need to complete that portion before they can submit the Claim Form. Upon completion of the Claim Form, the Non-Statutory Class Members will be asked whether they want their Settlement payment distributed electronically (through services such as PayPal,

Venmo or other similar services agreed to by the Parties) or if they want a check mailed to their home address.  Where a Non-Statutory Class Member has a co-borrower, the Settlement Administrator shall issue the payment in the names of both co-borrowers and shall mail the check to the primary borrower's address.  The Non-Statutory Class Members will also have the option of printing the Claim Form from the Settlement Website, so that they can complete and mail a hard copy of the Claim Form to the Settlement Administrator or upload it on the Settlement Website.  All Claim Forms must be submitted or post-marked before the Claims Deadline to be valid and approved.  The Settlement Administrator will not approve late Claim Forms unless directed to by the Parties or the Court.

125. **Incomplete Claim Forms or Disputed Claims.**  The Settlement Administrator will be responsible for notifying any Class Member who submitted an incomplete Claim Form of the deficiency with their Claim Form so that they will have a reasonable time of no more than thirty (30) days to correct the Claim Form.  To the extent there is a question as to whether a Claim Form should be treated as an Approved Claim, the Settlement Administrator will make the final determination after consultation with the Parties.  Any challenges to the Settlement Administrator's decision by the Class Member will be submitted to Judge Guilford for a final determination if it cannot be satisfactorily resolved by the Parties.  In determining whether to approve a Claim Form, the Settlement Administrator is directed to liberally apply the rules in favor of approving the Claim Form, so long as there are no signs of fraud.   TMCC's records and the Settlement Administrator's calculation of the GAP Refunds and Settlement payments will be presumed to be accurate unless the Class Member presents documentary proof conclusively demonstrating that TMCC's records or the Settlement Administrator's calculations were in error.

126. **Calculation and Payment of GAP Refunds to Non-Statutory Class Members.**  The Settlement Administrator will be responsible for calculating and paying claims from the Settlement Fund to the Non-Statutory Class Members.  As

noted above, the Non-Statutory Class Members will be provided with the option to receive their settlement payment electronically (via Pay Pal, Venmo or similar service) or with a written check to be mailed by the Settlement Administrator. Where a Non-Statutory Class Member has a co-borrower, the Settlement Administrator shall issue the payment in the names of both co-borrowers and shall mail the check to the primary borrower's address.

127. **No Liability for Distribution of the Settlement Fund.** The Parties shall not have any liability with respect to the distribution of payments; the determination, administration, or calculation of claims; or any losses incurred in connection with any such matters. In addition to the Releases set forth herein, the Class Releasors hereby fully, finally, and forever release, relinquish, and discharge the Class Releasees, and their counsel from any and all such liability. No Person shall have any claim against the Settlement Administrator based on the distributions made substantially in accordance with this Agreement.

## VIII. REQUEST FOR EXCLUSIONS

128. **Requests for Exclusion/Opt-Outs.** Any Class Member who wishes to Request Exclusion from the Settlement or "Opt-Out" of the Class must do so on or before the Exclusion/Objection Deadline specified in the Class Notice in the manner laid out in the Class Notice.

129. **Requirements for Requesting Exclusion.** To Request Exclusion from the Settlement, a Class Member must mail a Request for Exclusion with the Settlement Administrator with a post-mark date no later than the Exclusion/Objection Deadline. To be valid, the Request for Exclusion must include all information specified in the Long Form Notice, including the Class Member's name, Identification Number, address, signature and date along with the following statement:

"I wish to opt-out of the class action settlement of the lawsuit entitled *Martin et al. v. Toyota Motor Credit Corporation*, Case

30

No. 2:20-cv-10518-JVS-MRW.  I understand that by requesting exclusion, I will not be eligible to receive any payment from the Settlement of this matter and it will be my responsibility to pursue any claims I may have, if I so desire, on my own and at my expense."

130.    **No Mass or Class Opt-Outs.**  Class Members may only Request Exclusion from the Settlement on an individual basis and so-called "mass" or "class" opt-outs shall not be allowed and shall be of no force or effect.

131.    **The "Opt-Out List."** No later than five (5) Days after the Exclusion/Objection Deadline, the Settlement Administrator shall provide Class Counsel and Counsel for TMCC a complete and final list of all individuals who Request Exclusion from the Settlement.  Class Counsel will file with the Court a complete list of these individuals with the Motion for Final Approval, including the name, city, and state of the person Requesting Exclusion from the Settlement (the "Opt-Out List").

132.    **TMCC's Reservation of Rights and Challenges to Requests for Exclusion.**  With respect to any individual who Requests Exclusion from the Settlement, TMCC reserves all legal rights and defenses, including, but not limited to, any defenses relating to whether the person qualifies as a Class Member and/or has standing to bring any claim.  TMCC may challenge the validity of any Request for Exclusion by filing a motion with the Court within ten (10) days after the Settlement Administrator provides Counsel for TMCC a complete and final list of all individuals who Requested Exclusion from the Settlement. The Court shall have jurisdiction to resolve any disputes regarding the validity of any Request for Exclusion. Any decision by TMCC not to dispute a Request for Exclusion shall not be a waiver, determination, or preclusive finding against the Class Releasees in any proceeding.

133.    **TMCC's Right to Revoke.**  If, after the Exclusion/Objection Deadline

31

and before the Final Approval Hearing, ten percent (10%) or more of the Class Members Request Exclusion form the Settlement, then TMCC shall have the right, in its sole discretion, to void and revoke this Agreement and stipulation to class certification.   TMCC shall have thirty (30) days after the Exclusion/Objection Deadline to notify Class Counsel in writing of its intent to revoke this Agreement and the conditional class certification.   If TMCC revokes this Agreement, it shall be responsible for paying all Notice and Administration costs incurred by the Settlement Administrator.

## IX.   OBJECTIONS TO THE SETTLEMENT

134.   **Objections.** Class Members who wish to object to any aspect of the Settlement including the Fee, Expense and Service Award Application must file with the Court a written statement signed by the Class Member containing their objections prior to the Exclusion/Objection Deadline and abide by the requirements laid out in the Class Notice.   The written objections must also be mailed to the Settlement Administrator with a post-mark date no later than the Exclusion/Objection Deadline.

135.   **Requirements for the Objection.**   The written objections must include all information specified in the Long Form Notice including but not limited to the following:

(a)       The Class Member's name, address and telephone number.

(b)       The Class Member's Identification Number.

(c)       A statement that the Class Member objects to the Settlement in lawsuit entitled *Martin et al. v. Toyota Motor Credit Corporation*, Case No. 2:20-cv-10518-JVS-MRW.

(d)       A description of all objections to the Settlement, the reasons for said objections, and any legal authority supporting those objections.

(e)       A statement describing whether the objection applies only to the individual Class Member, to a specific subset of the Class or to the entire Class.

(f)       The Class Member's signature.

(g)      If the individual is a Non-Statutory Class Member, they must also submit a completed and signed Claim Form verifying under penalty of perjury that they meet the requirements for qualifying as a Class Member.

136.   **Additional Requirements if a Lawyer is Asserting an Objection.**  If a lawyer is asserting an objection on the Class Member's behalf, the lawyer must also (a) file a notice of appearance with the Court on or before the Exclusion/Objection Deadline; (b) file a sworn declaration attesting that the lawyer represents the Class Member and specifying the number of times during prior five-year period that the lawyer has objected to a class action settlement on his or her own behalf or on behalf of a class member.

137.   **Notice of Intent to Appear**.  If the Class Member or his or her attorney wishes to appear at the Final Approval Hearing, they must file a Notice of Intention to Appear with the Court on or before the Exclusion/Objection Deadline indicating that they would like to speak at the hearing.  If the Notice of Intention to Appear is not timely filed with the Court, then the Class Member and his or her attorney may be barred from speaking or otherwise presenting any views at the Final Approval Hearing.

138.   **No Right to Object.**  Only individuals who qualify as Class Members and do not Request Exclusion from the Settlement shall have the right to object to the Settlement.   If an individual does not provide proof that they qualify as a Class Member or if the individual previously Requested Exclusion from the Settlement, the individual shall not have standing to object to the Settlement.

139.   **Appeal of an Overruled Objection.**  If an objecting Class Member appeals the Final Approval Order, they will be required to put up a cash bond to be set by the Court sufficient to reimburse TMCC and Class Counsel's appellate fees, TMCC and Class Counsel's expenses, and the lost interest for one year to the Class caused by the likely delay. Any award or payment of attorneys' fees made to the counsel of an objecting Class Member shall be made only by Court order and upon a

showing of a substantial benefit conferred to the Class. Any award of attorneys' fees by the Court will be conditioned on the objecting Class Member and his or her attorney stating under penalty of perjury that no payments shall be made to the objecting Class Member.

## X.    DUTIES OF THE SETTLEMENT ADMINISTRATOR

140.    The Settlement Administrator shall be responsible for the following tasks:

(a)    If elected by TMCC, prepare and provide the CAFA Notice to the appropriate federal and State officials on behalf of TMCC within ten (10) days after the filing of the Motion for Preliminary Approval in accordance with CAFA.

(b)    Receiving the Class Information from TMCC and maintaining the Class Information in a secure and confidential manner to protect the privacy of the potential Class Member.

(c)    Calculating the GAP Refunds for the Non-Statutory Class Members based on the information provided by TMCC and using the Pro Rata Method.

(d)    Conducting a National Change of Address ("NCOA") search to obtain up-to-date address information for potential Class Members prior to disseminating the Notice of Settlement.

(e)    Printing and disseminating the Notice of Settlement by first-class mail and email (where available) to each and every potential Class Member.

(f)    Securing a URL for the Settlement Website with a name approved by the Parties.

(g)    Establishing and maintaining the Settlement Website in conformance with the terms of this Agreement, including but not limited to ensuring the functionality of the Claims Process and publishing the documents required to be included on the Settlement Website as set forth in Paragraph 121 of this Agreement.

1    (h)    Establishing a toll-free telephone number, email address and
2    mailing address for Class Members to contact the Settlement Administrator.

3    (i)    Recording an automated message agreed to by the Parties that
4    provides information about the Settlement for Class Members who contact the
5    Settlement Administrator via telephone.

6    (j)    Identifying target websites that are likely to be viewed by potential
7    Class Members and securing the placement of Digital Advertisements about the
8    Settlement on those websites during the Claims Period.

9    (k)    Maintaining appropriate staffing to respond to inquiries from
10    Class Members, including answering telephone calls.

11    (l)    Promptly mailing any Notices of Settlement returned to the
12    Settlement Administrator as undeliverable to the forwarding address affixed thereto,
13    or, if no forwarding address is provided, using skip-tracing or other best practices to
14    locate the potential Class Member's current address and remailing the Notice of
15    Settlement thereto.

16    (m)    Printing and disseminating the Long Form Notice and/or Claim
17    Form by first-class mail and email (where available) to every Non-Statutory Class
18    Member who requests a hard-copy of the Long Form Notice or Claim Form.

19    (n)    Providing the Court with a declaration confirming compliance
20    with the Notice Plan, which such declaration will be filed by Class Counsel.

21    (o)    Furnishing promptly to Counsel for the Parties copies of any
22    Requests for Exclusion, Opt-Out Forms, objections, or other written or electronic
23    communications from each Class Member that the Settlement Administrator receives;

24    (p)    Keeping track of each Request for Exclusion and Opt-Out Form,
25    including maintaining the original mailing envelope in which the Request for
26    Exclusion or Opt-Out Form was mailed and reporting to Counsel for both sides the
27    total numbers and identities of those who have Requested Exclusion or returned
28    completed Opt-Out Forms.

1    (q)    Apprising Class Counsel and Counsel for TMCC of the activities
2  of the Settlement Administrator via a weekly report, including status reports regarding
3  the Class Notice, Requests for Exclusion, and completed Opt-Out Forms received,
4  and promptly providing copies to Class Counsel and Counsel for TMCC of all
5  electronic or written communications between the Settlement Administrator and any
6  Class Member.

7    (r)    Promptly notifying Class Members who submitted an incomplete
8  Claim Form of the deficiencies with their form so that they may be corrected within
9  thirty (30) days.

10    (s)    Within twenty-one (21) days after the Objection/Exclusion
11  Deadline, providing a declaration to the Court with a list of all individuals who
12  Requested Exclusion from the Class and/or Objected to the Settlement, along with
13  up-to-date information regarding the number of Claims Forms submitted by the
14  Claims Form Deadline.

15    (t)    Upon Final Approval, determining the amount of GAP Refunds
16  owed to the Non-Statutory Class in accordance with the terms of this Agreement.

17    (u)    Ensuring that all Non-Statutory Class Members with Approved
18  Claims who requested electronic payments through PayPal, Venmo or other similar
19  services receive their Settlement payments.

20    (v)    Issuing and mailing a Settlement check to all Non-Statutory Class
21  Members with Approved Claims who did not request or receive electronic payments.

22    (w)    Skip-tracing or otherwise attempting to ascertain current address
23  information for each Settlement check returned as undeliverable.

24    (x)    Placing a stop-pay order on all Settlement checks not cashed
25  within 180 days of issue.

26    (y)    Performing all tax reporting duties required by federal, state,
27  and/or local law related to any Approved Claims for GAP Refunds, Fee and Expense
28  Awards, and Service Awards pursuant to this Settlement Agreement.

SETTLEMENT AGREEMENT
*WILLIAM MARTIN et al. v. TOYOTA MOTOR CREDIT CORPORATION, CASE NO. 2:20-cv-10518-JVS-MRW*
116000927v2

1       (z)      Reporting timely each Approved Claim for a GAP Refund on an

2   IRS Form W-2 and IRS form 1099 to each applicable Class Member.

3       (aa)    Reporting timely on an IRS Form 1099 the Fee and Expense

4   Awards and Service Awards to the Class Counsel and Class Representatives,

5   respectively.

6       (bb)    Removing the Settlement Website from the Internet promptly if

7   the Settlement is terminated or if the Court denies final approval of the Settlement,

8   and, in any event, within one-hundred and eighty (180) days after the Effective Date.

9       (cc)    Emailing Class Members who did not cash their Settlement

10  Checks after 180 days and whose Settlement Checks equal or exceed $5.00, so that a

11  new Settlement Check can be issued.

12      (dd)    Responding timely to communications from Class Counsel or

13  Counsel for TMCC.

14      (ee)    Performing such other tasks as the Parties mutually agree or that

15  are specified in this Agreement.

16      141.  The Settlement Administrator shall keep all information it obtains

17  relating to the identification and contact information of Class Members strictly

18  confidential pursuant to the Protective Order previously entered in this case and use

19  it only for the sole purposes described herein and shall destroy or return all such

20  information to Counsel for TMCC upon completion of the Settlement administration

21  tasks. Furthermore, upon completion of its duties, the Settlement Administrator shall

22  destroy or return to Class Counsel and Counsel for TMCC all documents related to

23  the Action, including all documents it received in connection with this case from the

24  Parties, Class Members, Class Representatives, or any other individuals (including,

25  but not limited to, objections, Requests for Exclusion, and Opt-Out Forms).

26      142.  Class Counsel and Counsel for TMCC will provide the Settlement

27  Administrator with a copy of this Settlement Agreement which identifies and lists

28  duties to be performed by the Settlement Administrator, as described above.

SETTLEMENT AGREEMENT
*WILLIAM MARTIN et al. v. TOYOTA MOTOR CREDIT CORPORATION, CASE NO. 2:20-cv-10518-JVS-MRW*

116000927v2

143.   The Settlement Administrator shall provide Class Counsel and Counsel for TMCC a copy of its engagement agreement as well as all invoices relating to the administration of the Settlement.

144.   All disputes relating to the Settlement Administrator's ability and need to perform its duties shall be resolved jointly by Class Counsel and Counsel for TMCC consulting in good faith.  If the Parties are unable to reach agreement, either may raise the disagreement with the Court.

## XI.    FEE, EXPENSES AND SERVICE AWARDS

145.   **Attorneys' Fees and Expenses.** Class Counsel may submit an application to the Court for payment of Fee Award plus reimbursement of reasonable expenses incurred in connection with prosecuting this Action.  Class Counsel agree that they will not seek an amount in excess of $19 million for attorneys' fees and will not seek an amount in excess of $150,000 for expenses.  TMCC reserves its right to object to Class Counsel's request for fees and expenses.

146.   **Payment of Fee and Expense Award.**  Any Fee and Expense Awards approved by the Court shall be paid by the Settlement Administrator from the Settlement Fund within thirty (30) days of the Effective Date and provision of appropriate tax forms by Counsel to the Settlement Administrator.  The Fee and Expense Awards shall be paid to Frank Sims & Stolper LLP, which may further pay such funds to Class Counsel, subject to the terms herein.

147.   **No Liability for Fees and Expenses of Class Counsel.** Neither the Class Releasees nor their counsel shall have any responsibility for, interest in, or liability whatsoever with respect to any payment(s) to Class Counsel pursuant to this Agreement and/or to any other Person who may assert some claim thereto or any Fees and Expense Award that the Court may make in the Action, other than as set forth in this Agreement. Similarly, neither the Class Releasees nor their counsel shall have any responsibility for, interest in, or liability whatsoever with respect to allocation among Class Counsel, and/or any other person who may assert some claim thereto, of

any Fees and Expense Award that the Court may make in the Action.

148. **Plaintiffs' Service Award Application.** Class Counsel and Plaintiffs may submit application(s) to the Court for a Service Award as part of the Fee, Expense and Service Award Application. Class Counsel and Plaintiffs agree that the request for Service Awards shall not exceed $2,500 for each Class Representative. TMCC agrees not to oppose such a request of up to $2,500 to each of the Class Representatives for their time, effort, and expense in prosecuting this litigation and achieving this Settlement. Any Service Awards which are awarded by the Court shall be paid from the Settlement Fund. Any Service Awards shall be paid by the Settlement Administrator from the Settlement Fund within thirty (30) Days of the Effective Date and provision of appropriate tax forms to the Settlement Administrator.

149. **The Fees, Expense and Service Awards Shall Not Impact the Effectiveness of this Agreement.** The procedure for and the allowance or disallowance by the Court of any Fees, Expense or Service Awards are not part of the Settlement set forth in this Agreement and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Agreement. Any order or proceeding relating to the Fees, Expense or Service Awards, or any appeal from such awards or any other order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Agreement. No order of the Court or modification or reversal on appeal of any order of the Court concerning any Fees, Expense or Service Award shall constitute grounds for cancellation or termination of this Agreement.

## XII.  CONDITIONS OF SETTLEMENT AND EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION

150. **Effective Date.** The Effective Date of this Agreement shall be conditioned on the occurrence of all of the following events:

(a)    TMCC no longer has any right to terminate this Agreement, nor is there a possibility of termination of this Agreement as set forth herein or, if TMCC

39

does have such right, TMCC has given written notice to Class Counsel that it will not exercise such right.

(b)     The Court has entered the Final Approval Order and Judgment.

(c)     The Class Released Claims and the Action are dismissed with prejudice pursuant to the Final Approval Order and Judgment; and

(d)     The expiration of any appeal periods and/or resolution of all appeals have occurred in accordance with the following:

(i)     If no appeal is taken from the Final Approval Order or Judgment, the date after the time to appeal therefrom has expired; or

(ii)     If any appeal is taken from the Final Approval Order or Judgment, the date after all appeals therefrom, including petitions for rehearing or re-argument, petitions for rehearing *en banc*, and petitions for certiorari or any other form of review, have been finally disposed of, such that the time to appeal therefrom has expired, in a manner resulting in an affirmance without material modification of the relevant order or judgment.

151.    **Occurrence of Effective Date.**  Upon the occurrence of Effective Date, and all of the events referenced in Paragraph 150 above, the Settlement Administrator shall issue the appropriate Settlement payments to the Class and pay the Fee and Expense and Service Awards approved by the Court from the Settlement Fund.  The Fee and Expense and Service Awards shall be issued within thirty (30) days after the Effective Date.  The payments to the Non-Statutory Class shall be issued within thirty (30) days after the Effective Date, or as soon thereafter as reasonably practicable.

152.    **TMCC's Payment of GAP Refunds and Interest to the Statutory Class.**  Within thirty (30) days after the Effective Date, or as soon thereafter as reasonably practicable, TMCC will complete the required payments to the Statutory Class in accordance with the terms of this Agreement.  Within ninety (90) days after the Effective Date, TMCC will provide a declaration to the Settlement Administrator

and Class Counsel verifying that the payments to the Statutory Class have been completed. The declaration will include a list of Statutory Class Members, the amount of their GAP Refund and the accrued interest. Any checks that were returned or not cashed will be handled in accordance with the applicable State's unclaimed property/escheatment laws.

153. **Failure of Effective Date to Occur.** If all of the conditions specified in this Section are not met, then this Agreement shall be cancelled and terminated and any funds deposited with the Settlement Administrator shall be returned to TMCC, subject to and in accordance with the provisions set forth herein unless the Parties mutually agree in writing to proceed with this Settlement Agreement. The effectiveness of the Settlement is expressly conditioned on the Settlement Agreement being approved by the Court and any appellate court reviewing the Settlement without it being rejected or required to be materially modified by any Court ruling or any order resulting from an appeal or other review. If the Settlement is not finally approved by the Court and any appellate court reviewing it without material modification, this Agreement shall terminate and cease to have any effect.

154. **Termination.** Plaintiffs, through Class Counsel, and TMCC shall have the right, but not the obligation, to terminate this Agreement if: (a) the Court rejects, modifies, or denies approval of any portion of this Agreement or the proposed Settlement that results in a substantial modification to a material term of the proposed Settlement; or (b) the Court, or any appellate court(s), does not enter or completely affirm, or alters, narrows or expands, any portion of the Final Approval Order, that results in a substantial modification to a material term of the proposed Settlement. However, the Parties agree to act in good faith to secure Final Approval of this Settlement and to attempt to address in good faith concerns regarding the Settlement identified by the Court and any appellate court. The terminating party must exercise the option to withdraw from and terminate this Agreement, as provided in this Section, by a signed writing served on the other Parties no later than ten (10) days after

receiving notice of the event prompting the termination.  If, but only if, this Agreement is terminated pursuant to this Section then:

    (i)    The Parties will be returned to their positions *status quo ante* and this Agreement shall be null and void and shall have no force or effect and all of its provisions, and all negotiations, statements, and proceedings relating to it shall be without prejudice to the rights of Plaintiffs, TMCC or any Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of this Agreement, except that the Parties shall cooperate in requesting that the Court set a new scheduling order such that no Party's substantive or procedural rights are prejudiced by the settlement negotiations and proceedings.

    (ii)    Neither this Agreement, the fact of its having been made, nor the negotiations leading to it, shall be admissible or entered into evidence for any purpose whatsoever.

155. **Other Orders.** No Party shall have any obligation whatsoever to proceed under any terms other than those substantially in the form provided and agreed to herein; provided, however, that no order of the Court concerning any Fee, Expense and Service Award Application, or any modification or reversal on appeal of such order, shall constitute grounds for cancellation or termination of this Agreement by any Party. Without limiting the foregoing, TMCC shall have, in its sole and absolute discretion, the option to terminate the Settlement in its entirety in the event that the Judgment, upon becoming Final, does not provide for the dismissal with prejudice of the Action and the Class Released Claims.

### XIII.  NO ADMISSION OF LIABILITY

156. **Final and Complete Resolution.** The Parties intend the Settlement as described herein to be a final and complete resolution of all disputes between them with respect to the Action, and to compromise claims that are contested, and it shall not be deemed an admission by any Party as to the merits of any claim or defense or any allegation made in the Action.

42

SETTLEMENT AGREEMENT
*WILLIAM MARTIN et al. v. TOYOTA MOTOR CREDIT CORPORATION, CASE NO. 2:20-cv-10518-JVS-MRW*
116000927v2

157. **Federal Rule of Evidence 408.** The Parties agree that this Agreement, its terms, and the negotiations surrounding this Agreement shall be governed by Federal Rule of Evidence 408 and any state-law equivalents and shall not be admissible or offered or received into evidence in any suit, action, or other proceeding, except upon the written agreement of the Parties hereto, pursuant to an order of a court of competent jurisdiction, or as shall be necessary to give effect to, declare, or enforce the rights of the Parties with respect to any provision of this Agreement.

158. **Use of Agreement as Evidence.** Whether or not this Agreement becomes Final or is terminated pursuant to its terms, the Parties expressly agree that neither this Agreement nor the Settlement, any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any claims released by this Agreement, any allegation or defense asserted in the Action, or any violation of any statute or law or of any wrongdoing or liability of TMCC, and evidence thereof shall not be discoverable or used, directly or indirectly, in any way, whether in the Action or in any other proceeding; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any liability, fault, or omission of the Class Releasees in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal. Neither this Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement, shall be admissible in any proceeding for any purpose, except to enforce the terms of the Settlement; provided, however, that the Class Releasees may file this Agreement (including the Exhibits), the Final Approval Order, and/or the Judgment in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or

1  counterclaim.

2  **XIV. REPRESENTATIONS AND WARRANTIES**

3  159.  This Agreement and the Settlement shall be subject to the ordinary and

4  customary judicial approval procedures under Rule 23.  Until and unless this

5  Agreement is dissolved or becomes null and void by its own terms, or unless

6  otherwise ordered by the Court, or if Final Approval is not achieved, Plaintiffs and

7  TMCC represent and warrant that they shall take all appropriate steps in the Action

8  necessary to preserve the jurisdiction of the Court, use their best efforts to cause the

9  Court to grant Preliminary and Final Approval of this Agreement as promptly as

10  possible and take or join in such other steps as may be necessary to implement this

11  Agreement and to effectuate the Settlement. This includes the obligation to (a) oppose

12  non-meritorious objections and to defend this Agreement and the Settlement before

13  the Court and on appeal, if any; (b) seek approval of this Agreement and of the

14  Settlement by the Court; (c) move for the entry of the orders required to effectuate

15  Preliminary and Final Approval; and (d) join in the entry of such other orders as are

16  necessary to effectuate this Agreement.

17  160.  Any Fees and Expense Awards that Plaintiffs and Class Counsel may

18  seek upon application to the Court pursuant to this Agreement shall include all

19  attorneys' fees and litigation costs that Plaintiffs, Class Counsel, and any of the

20  current and former owners, predecessors, successors, partners, shareholders, agents

21  (alleged or actual), representatives, employees, and affiliates of Class Counsel, seek

22  or may have any right or claim to in connection with the Action and the Class Released

23  Claims.

24  161.  Plaintiffs represent and warrant that other than Class Counsel, as that

25  term is defined herein, there is no other Person having any interest in any award of

26  attorneys' fees, expenses, or litigation costs in connection with the Action,

27  Agreement, or Settlement.

28  162.  Plaintiffs and TMCC represent and warrant that he, she, it, or they have

full authorization and capacity to enter into this Agreement and to carry out the obligations provided for herein. Each Person executing this Agreement on behalf of a Party, entity, or other Person(s) covenants, warrants, and represents that he, she, or it has been fully authorized to do so by that Party, entity, or other Person(s). Plaintiffs and TMCC represent and warrant that he, she, it, or they intend to be bound fully by the terms of this Agreement.

163.   Plaintiffs and TMCC represent and warrant that they have not, nor will they, unless expressly authorized to do so by the terms of this Agreement, (a) attempt to void this Agreement in any way; (b) Opt-Out of the Settlement under this Agreement; (c) solicit or encourage in any fashion a member of the Class to Opt-Out; or (d) solicit or encourage in any fashion any effort by any Person to object to the Settlement under this Agreement.

164.   If any Person breaches the terms of any of the representations and warranties in this Section, the Court shall retain jurisdiction over this matter to entertain actions by a Party against such Person for breach and/or any Party's request for a remedy for such breach.

165.   Class Counsel represent and warrant that they (a) will not seek out or solicit, and (b) have no present intention to pursue individual or class claims against TMCC or any of the Class Releasees with respect to matters within the scope of the Class Released Claims unless this Settlement is not granted Preliminary or Final Approval by the Court.   The Parties understand and agree that nothing in this Paragraph imposes or shall be construed to prohibit or restrict Class Counsel from representing persons who seek representation for such claims subsequent to the date of this Agreement.

166.   Plaintiffs and Class Counsel represent and warrant that they will comply with the Protective Order that applies to this Action and will not use or seek to use the fact or content of the Settlement in this Action in connection with any other claim, action, or litigation against any Class Releasee (excepting only actions to enforce or

construe this Agreement).

167.    Class Counsel represent and warrant to TMCC that they have the authority to execute this Agreement on behalf of Plaintiffs, and themselves, and thereby to bind Plaintiffs, to all terms and conditions of this Agreement, and, subject to Court approval, to bind all Class Members to the terms and conditions of this Agreement.

## XV.    MISCELLANEOUS PROVISIONS

168.    **Voluntary Settlement.** The Parties agree that the terms of the Settlement as described herein were negotiated in good faith by the Parties with the assistance of an independent mediator and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

169.    **Subsequent Events Impacting Administration.** In the event that there are any developments in the effectuation and administration of this Agreement that are not dealt with by the terms of this Agreement, then such matters shall be dealt with as agreed upon by the Parties, and failing agreement, as shall be ordered by the Court.

170.    **Claims in Connection with Administration.** No Person shall have any claim against the Plaintiffs, TMCC, Counsel for TMCC, Class Counsel, the Settlement Administrator, or the Class Releasees or their agents based on the administration of the Settlement substantially in accordance with the terms of this Agreement or any order of the Court or any appellate court.

171.    **Binding Effect.** This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto. Without limiting the generality of the foregoing, each and every covenant and agreement herein by Plaintiffs shall be binding upon all Class Members.

172.    **Authorization to Enter Settlement Agreement.** The undersigned representatives of TMCC represent that they are fully authorized to enter into and to execute this Agreement and any modifications or amendments to this Agreement on

behalf of TMCC. Class Counsel, on behalf of Plaintiffs and the Class, represent that they are, subject to Court approval, expressly authorized to take all actions required or permitted to be taken by or on behalf of the Class pursuant to this Agreement to effectuate its terms and to enter into and execute this Agreement and any modifications or amendments to this Agreement on behalf of the Class that they deem appropriate.

173. **Notices.** All notices and responses to notices under this Agreement shall be in writing. Each such notice or response shall be given either by email unless otherwise specified herein or in the notice to the Class; and, if directed to any Class Member, shall be addressed to Class Counsel at their email addresses set forth below, and if directed to TMCC, shall be addressed to Counsel for TMCC at the email addresses set forth below or such other email addresses as Class Counsel or TMCC may designate, from time to time, by giving notice to all Parties hereto in the manner described in this Paragraph.

If directed to Plaintiffs or any Class Member, email address notice to:

        Jason Frank, jfrank@lawfss.com

        Andrew Stolper, astolper@lawfss.com

        Scott Sims, ssims@lawfss.com

        Maritza Nowowiejski, mnowowiejski@lawfss.com

        Franklin Azar, azarf@fdazar.com

If directed to TMCC, email address notice to:

        Ashley L. Shively, Ashley.Shively@hklaw.com

        Judith Mercier, Judy.Mercier@hklaw.com

174. **Confidentiality of Settlement Negotiations.** The Parties and their counsel shall keep strictly confidential and not disclose to any third party any non-public information regarding the Parties' negotiation of this Settlement and/or Agreement, unless ordered by the Court to do so. For the sake of clarity, information contained within this Agreement shall be considered public, as well as any

information requested by the Court in the approval process and other such information necessary to implement this Settlement, provided such information is filed (and is not under seal) and/or is not considered to be confidential materials under the Parties' Protective Order in this case.

175. **No Party Deemed to Be the Drafter.** None of the Parties hereto shall be deemed to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, rule of interpretation, or construction that would or might cause any provision to be construed against the drafter hereof.

176. **Choice of Law.** This Agreement shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of California, and the rights and obligations of the Parties to this Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of California without giving effect to that State's choice of law principles.

177. **Amendment; Waiver.** This Agreement shall not be modified in any respect except by a writing executed by TMCC and Plaintiffs or Class Counsel, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party. The waiver by any party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement. Nothing in this Agreement (including the fact of Settlement) constitutes or shall be construed as a waiver by TMCC of whatever rights they may have under any arbitration agreement, including with respect to any claim, lawsuit, or judicial proceeding initiated by a member of the Class who has opted-out of the Settlement.

178. **Execution in Counterparts.** This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Counsel for the Parties to this Agreement shall exchange

among themselves original signed counterparts and a complete set of executed counterparts shall be filed with the Court.

179. **Integrated Agreement.** This Agreement constitutes the entire agreement between the Parties with respect to the Settlement. This Agreement supersedes all prior negotiations and agreements, including but not limited to the Term Sheet, and may not be modified or amended except by a writing signed by the Parties and their respective counsel. The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or understanding concerning any part of the subject matter of this Agreement has been made or relied on except as expressly set forth in this Agreement. It is understood by the Parties that, except for the matters expressly represented herein, the facts or law with respect to which this Agreement is entered may turn out to be other than or different from the facts now known to each Party or believed by such Party to be true. Each Party therefore expressly assumes the risk of the facts or law turning out to be different and agrees that this Agreement shall be in all respects effective and not subject to termination by reason of any such different facts or law.

180. **Attorneys' Fees and Costs.** Except as otherwise expressly provided in this Agreement, each party shall bear its own costs and attorneys' fees.

181. **Return or Destruction of Confidential Materials.** The Parties agree to continue to comply with the Protective Order entered in this Action at the conclusion of the case. All agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Agreement.

182. **Intended Beneficiaries.** No provision of this Agreement shall provide any rights to, or be enforceable by, any Person that is not one of the Plaintiffs, a Class Member, TMCC, one of the Class Releasees, Class Counsel, or Counsel for TMCC, except that this Agreement will be binding upon and inure to the benefit of the successors and assigns of the Parties.  No Plaintiff, Class Member, or Class Counsel may assign or otherwise convey any right to enforce any provision of this Agreement.

183. **Regular Course of Business.** The Parties agree that nothing in this Agreement shall be construed to prohibit communications between Class Releasees, on the one hand, and Class Members, on the other hand, in the regular course of business.

184. **Tax Consequences.** No representations or advice regarding the tax consequences of this Agreement have been made by any Party. The Parties further understand and agree that each Party, each Class Member, each of Class Counsel, and Plaintiffs shall be responsible for his, her, its, or their own taxes, if any, resulting from this Agreement and any payments made pursuant to this Agreement.

185. **Bankruptcy Proceedings.** The Parties agree that any Class Member who is in active bankruptcy proceedings or previously was a party to bankruptcy proceedings during the period of time covered in the definition of the Class may only participate in the Settlement subject to applicable bankruptcy law and procedures. TMCC is under no obligation to notify any bankruptcy court that has, had, or may have jurisdiction over such Class Member's bankruptcy proceedings or any trustee or examiner appointed in such Class Member's bankruptcy proceedings of this Agreement or the benefits conferred by this Agreement and the Settlement. The Parties agree that any disputes concerning the rights of the bankruptcy estate to the proceeds of any payment under the Settlement or Service Award shall be adjudicated by the applicable Bankruptcy Court. The Settlement Administrator shall follow any direction of the Bankruptcy Court with respect to the proceeds of any payment or Service Award.

186. **No Conflict Intended; Headings**. Any inconsistency between this Agreement and the exhibits attached hereto shall be resolved in favor of this Agreement. The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

187. **Class Member Obligations.** Under no circumstances shall the Settlement or Agreement or any release herein be deemed to alter, amend, or change

the terms and conditions of any account or loan to which any Class Member is or was a party, or to provide a defense to any such loan, nor shall this Agreement or any release herein be deemed to have any effect in any bankruptcy case, in any foreclosure proceeding, or in any other action involving a Class Member hereto, nor shall the Settlement or this Agreement create or be construed as evidence of any violation of law or contract.  In the event this Agreement is so construed as to a particular Class Member, it can be declared by TMCC to be null and void as to that Class Member only (and in such latter event, the Class Released Claims as to that Class Member shall also be void).

188.  **Mediator's Declaration.** The Parties agree that Judge Guilford may file a declaration in support of any approval motions.

189.  **Further disputes:** If any disputes arise out of the finalization of the settlement documentation, said disputes are to be resolved by the Honorable Andrew Guilford (Ret.) first by way of expedited telephonic mediation and, if mediation is unsuccessful, then by way of final, binding, non-appealable determination.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

1       IN WITNESS WHEREOF, the Parties hereto, through their fully authorized

2   representatives, have entered into this Agreement as of the date first below written,

3   and have executed this Settlement Agreement on the date indicated below each

4   respective signature.

5

6   PLAINTIFF WILLIAM MARTIN
    By:

7        DocuSigned by:

8   _____
    C2F562AB4F024BB...
    William Martin

9       6/17/2022
10  Date:_____, 2022

11

12  PLAINTIFF LORI MITCHELL
    By:

13      DocuSigned by:
    Lori Mitchell

14  _____
    A773517855BD4C8...
    Lori Mitchell

15

16  Date:__6/16/2022____, 2022

17

18  **DEFENDANT TOYOTA MOTOR CREDIT CORPORATION**

19  By:

20

21  _____

22  Title: _____

23  Date:_____, 2022

24

25

26

27

28

1    IN WITNESS WHEREOF, the Parties hereto, through their fully authorized

2 representatives, have entered into this Agreement as of the date first below written,

3 and have executed this Settlement Agreement on the date indicated below each

4 respective signature.

5

6 PLAINTIFF WILLIAM MARTIN
 By:

7

8 _____
 William Martin

9

10 Date:_____, 2022

11

12 PLAINTIFF LORI MITCHELL
 By:

13

14 _____
 Lori Mitchell

15

16 Date:_____, 2022

17

18 **DEFENDANT TOYOTA MOTOR CREDIT CORPORATION**

19 By:
     DocuSigned by:

20     Stacie Bambauer
        D4B72702830A447

21     Stacie Bambauer

22 Title: _____Assistant General Counsel_____

23 Date: 6/16/2022 | 9:00:57 PM EDT, 2022

24

25

26

27

28

52

SETTLEMENT AGREEMENT
*WILLIAM MARTIN et al. v. TOYOTA MOTOR CREDIT CORPORATION, CASE NO. 2:20-cv-10518-JVS-MRW*

116000927v2

1

2

3

4

Agreed as to form:

5    Jason M. Frank (190957)
     Andrew Stolper (205642)
6
     Scott H. Sims (234148)
7    FRANK SIMS & STOLPER LLP
     19800 MacArthur Blvd., Ste. 855
8    Irvine, CA 92612
9    Telephone: (949) 201-2400

10

11    Franklin D. Azar (*pro hac vice*)
12    FRANKLIN D. AZAR &
      ASSOCIATES P.C.
13    14426 East Evans Ave.
      Aurora, CO 80014
14    Telephone: (303) 757-3300

15

16    *Counsel for Plaintiffs and the Proposed
      Non-Statutory Class and Statutory
17    Class*

18    Ashley Shively

19    Ashley L. Shively (SBN 264912)
20    HOLLAND & KNIGHT LLP
      50 California Street, Suite 2800
21    San Francisco, CA 94111
22    Telephone: (415) 743-6906

23    *Attorneys for Defendant Toyota Motor
      Credit Corporation*
24

25

26

27

28

53

SETTLEMENT AGREEMENT

116000927v2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Agreed as to form:


_____
Jason M. Frank (190957)
Andrew Stolper (205642)
Scott H. Sims (234148)
FRANK SIMS & STOLPER LLP
19800 MacArthur Blvd., Ste. 855
Irvine, CA 92612
Telephone: (949) 201-2400

_____
Franklin D. Azar (*pro hac vice*)
FRANKLIN D. AZAR &
ASSOCIATES P.C.
14426 East Evans Ave.
Aurora, CO 80014
Telephone: (303) 757-3300

*Counsel for Plaintiffs and the Proposed
Non-Statutory Class and Statutory
Class*

_____
Ashley L. Shively (SBN 264912)
HOLLAND & KNIGHT LLP
50 California Street, Suite 2800
San Francisco, CA 94111
Telephone: (415) 743-6906

*Attorneys for Defendant Toyota Motor
Credit Corporation*

SETTLEMENT AGREEMENT
*WILLIAM MARTIN et al. v. TOYOTA MOTOR CREDIT CORPORATION, CASE NO. 2:20-cv-10518-JVS-MRW*

116000927v2

# EXHBIT A

*Martin et al. v. Toyota Motor Credit Corporation*
Case No. 2:20-cv-10518-JVS-MRW

## STATUTORY CLASS PERIODS

| State | Beginning of Class Period (Ends Oct. 25, 2021) | Interest Rate | Interest Statute |
|---|---|---|---|
| Alabama | Jan. 1, 2018 | 8.0% | Ala. Code § 8-8-1 |
| Colorado | Jan. 1, 2016 | 8.0% | Colo. Rev. Stat. § 5-12-102 |
| Indiana | Nov. 17, 2016 | 8.0% | Ind. Code § 24-4.6-1-101 |
| Iowa | Jan. 1, 2016 | 5.0% | Iowa Code § 535.2(1) |
| Massachusetts | Jan. 1, 2016 | 12.0% | Mass. Gen. Laws. Ch. 231, §6C |
| New Jersey | Oct. 17, 2019 | 0.25% | N.J. Order 13-0022 |
| Oklahoma | Jan. 1, 2016 | 0.03% | 23 Okla. St. § 6, 21; 12 Okla. St.727.1(E),(I) |
| Oregon | Nov. 17, 2016 | 9.0% | Or. Rev. Stat. § 82.010 |
| Texas | Sept. 1, 2017 | 6.0% | Tex. Fin. Code §§ 302.001, 302.002 |
| Vermont | Jan. 1, 2016 | 12.0% | V.R.C.P. Rule 54(a); 9 V.S.A. § 41a(a) |
| Wisconsin | Jan. 1, 2016 | 5.0% | Wis. Stat. §§ 138.04, 138.05 |
| Wyoming | July 1, 2021 | 7.0% | Wyo. Stat. § 40-14-106 |

Note: These periods were agreed to by the Parties for Settlement purposes only.

# EXHBIT B

| CLAIM FORM |
|---|

***Martin, et al. v. Toyota Motor Credit Corporation***
United States District Court, Central District of California
Case No. 2:20-cv-10518--JVS-MRW

**<u>IMPORTANT</u>**
**YOU MUST COMPLETE AND SUBMIT THIS CLAIM FORM ON THE SETTLEMENT WEBSITE**
**OR**
**MAIL THE COMPLETED CLAIM FORM TO THE SETTLEMENT ADMINISTRATOR ON OR BEFORE <<DATE>>**

| **CLASS MEMBER ID:**<br>**VEHICLE:**<br>**MAXIMUM REFUND:** | |
|---|---|

**<u>SECTION I: INSTRUCTIONS</u>**

You have been identified as a potential member of the Non-Statutory Class for the Vehicle identified above. You may be entitled to a potential refund up to the Maximum Refund amount identified above as part of a class action Settlement.

**Please carefully review the following instructions before proceeding**. Failure to follow these directions could cause your Claim to be rejected.

To submit a Claim for a refund, you <u>MUST</u>:

    (1) Enter the Class Member ID number identified on the Postcard or Email Notice you received about this Settlement;

    (2) Check <u>each</u> of the boxes that apply to you; and

    (3) Verify that your answers are accurate by applying an electronic signature at the end of the Claim Form.

You may also complete and sign a hard copy of Claim Form and mail the completed and signed Claim Form to the Settlement Administrator at <<ADDRESS>>

To request that a copy of the Claim Form be sent to you, please contact the Settlement Administrator at the address below:

**YOU MUST SUBMIT YOUR CLAIM FORM ON THE SETTLEMENT WEBSITE OR MAIL YOUR CLAIM FORM TO THE SETTLEMENT ADMNISTRATOR WITH A POSTMARK DATE ON BEFORE <<DATE>> OR ELSE YOU WILL NOT BE ENTITLED TO A REFUND AS PART OF THIS SETTLEMENT**

<<SETTLEMENT ADMINITRATOR NAME & CONTACT INFORMATION>>

## SECTION II: ELIGIBILITY

You are eligible for a payment under this Settlement <u>only</u> if each of the following apply to you:

1. **You purchased GAP protection for the Vehicle identified above**.

   "GAP protection" includes: (a) a Guaranteed Auto Protection Agreement; (b) a Guaranteed Asset Protection Agreement; (c) a GAP Waiver Agreement; or (d) a GAP Debt Cancellation Agreement.

2. **You did not suffer a Total Loss of the Vehicle identified above during the term of your auto loan or finance agreement**.

   "Total Loss" means the Vehicle identified above was either stolen or damaged beyond repair <u>before</u> you paid off your auto loan or finance agreement with Toyota Motor Credit Corporation ("TMCC").

3. **You have not previously received a GAP Refund for the Vehicle identified above from TMCC, a Dealer, a GAP Administrator or any other third party**.

   "GAP Refund" means a refund or credit for a portion of the purchase price you paid for GAP protection. "Dealer" means the auto dealership where You either purchased, traded in or returned the Vehicle identified above. "GAP Administrator" means the company or administrator identified in your GAP Agreement.

## SECTION III:  CHECK ALL OF THE BOXES BELOW THAT APPLY TO YOU

| | |
|---|---|
| ☐ | **I purchased GAP Protection for the Vehicle identified above.** |
| ☐ | **I did <u>not</u> suffer a Total Loss of the Vehicle identified above during the term of my finance agreement with Toyota Motor Credit Corporation.** |
| ☐ | **I <u>never</u> received a GAP Refund for the Vehicle identified above from TMCC, a Dealer, a GAP Administrator or any other third party.** |
| ☐ | **I would like any Settlement Refund to be paid to me electronically via Venmo or Paypal <<Insert Instructions if this Option is Selected>>.  This option is only available if you submit your Claim on the Settlement Website at <<Website Address>>** |
| ☐ | **I would like any Settlement Refund mailed as a check to my current address at _____.** |

<<SETTLEMENT ADMINITRATOR NAME & CONTACT INFORMATION>>

## SECTION IV:  DECLARATION

I declare and affirm, under penalty of perjury under the laws of the United States, that the information in this Claim Form is true and correct to the best of my knowledge, information and belief and that I am eligible to make this claim.  I understand that this Claim Form is subject to audit, verification and/or review by Toyota Motor Credit Corporation or the Court.

Dated:  ___ ___ / ___ ___ / ___ ___ ___ ___

_____
Claimant Signature

Print Name _____

Claimant ID Number _____

Please let us know the best way to contact you if there are any issues with your Claim Form.

**NOTE: YOU DO <u>NOT</u> NEED TO PROVIDE THIS INFORMATION TO RECEIVE A REFUND AS PART OF THIS SETTLEMENT**

**Email Address (Optional) _____**

**Telephone Number (Optional)  _____**

<<SETTLEMENT ADMINITRATOR NAME & CONTACT INFORMATION>>

# EXHBIT C

# Digital Ad Samples

## Search Ads

**Class Action Lawsuit | Toyota Motor Credit Corporation (TMCC)**
`Ad` www.TMCCGAPSettlement.com
A Class Action Settlement May Affect Your Rights. Martin et al. v Toyota Motor Credit Corporation
Case No. 2:20-cv-10518-JVS-MRW

**Toyota Motor Credit Corporation (TMCC) | Class Action Settlement**
`Ad` www.TMCCGAPSettlement.com
A Class Action Settlement May Affect Your Rights. Martin et al. v Toyota Motor Credit Corporation
Case No. 2:20-cv-10518-JVS-MRW



## Display Ads

**TOYOTA MOTOR CREDIT COPORATION GAP SETTLEMENT**
A Class Action Settlement May Affect Your Rights. Martin et al. v Toyota Motor Credit Corporation
Case No. 2:20-cv-10518-JVS-MRW

**LEARN MORE**

**TMCC GAP SETTLEMENT**
If you purchased GAP coverage on a car financed with Toyota that was paid off early, your rights may be affected

**LEARN MORE**

**TOYOTA GAP SETTLEMENT**
If you purchased GAP coverage on a car financed with Toyota that was paid off early, your rights may be affected

**LEARN MORE**



# Digital Ad Samples – Social Media



# CLAIM FILING OPEN

## MARTIN ET AL V TOYOTA MOTOR CREDIT COPORATION
## CASE NO. 2:20-CV-10518-JVS-MRW

IF YOU PURCHASED GAP COVERAGE ON A CAR FINANCED WITH TOYOTA THAT WAS PAID OFF EARLY, YOUR RIGHTS MAY BE AFFECTED



**LEARN MORE**

**CONTACT US**
123-456-7890

VIST: WWW.TMCCGAPSETTLEMENT.COM



# EXHBIT D

*Martin et al. v. Toyota Motor Credit Corporation*
Case No. 2:20-cv-10518-JVS-MRW

### <u>NOTICE OF PROPOSED CLASS ACTION SETTLEMENT</u>

This Notice of Proposed Class Action Settlement ("Notice") was authorized by the United States District Court for the Central District of California. It is not a solicitation from a lawyer.

**IF YOU RECEIVED A POSTCARD OR EMAIL NOTICE ABOUT THIS SETTLEMENT, YOU HAVE BEEN IDENTIFIED AS A POTENTIAL CLASS MEMBER**

**YOUR <u>CLASS MEMBER ID</u> NUMBER IS PRINTED ON THE POSTCARD OR EMAIL NOTICE YOU RECEIVED**

- A proposed Settlement has been reached in a class action lawsuit that may affect your rights.

- The Settlement resolves a class action lawsuit against Toyota Motor Credit Corporation ("TMCC").

- The lawsuit alleges that TMCC failed to provide customers with a partial refund of the fees paid for Guaranteed Asset Protection ("GAP") after customers paid off their Finance Agreements early. TMCC denies any wrongdoing because, among other reasons, TMCC claims that customers were required to send a written request to cancel their GAP Agreement as a condition precedent to the refund.[1]

- The Settlement resolves the claims of two classes: the "Statutory Class" and the "Non-Statutory Class." Your Postcard or Email Notice will indicate which class you potentially fall under.

- You are a member of the Statutory Class if (1) you entered into a Finance Agreement with GAP protection in the States of Alabama, Colorado, Indiana, Iowa, Massachusetts, New Jersey, Oklahoma, Oregon, Texas, Vermont, Wisconsin or Wyoming; (2) your agreements were assigned to TMCC; (3) you paid off your Finance Agreement at least 30 days before the maturity date (an "Early Payoff"); (4) the Early Payoff occurred during the Statutory Class Period; and (5) you did not receive a GAP Refund or suffer a total loss of your Vehicle during the term of the Finance Agreement.  The list of each State's Statutory Class Period can be found by clicking on the following link: << link >>

- You are member of the Non-Statutory Class if (1) you entered into a Finance Agreement with GAP protection that was assigned to TMCC; (2) you paid off your Finance Agreement at least 30 days before the maturity date (an "Early Payoff"); (3) the date of the Early Payoff was between **January 1, 2016** and **October 25, 2021**; and (4) you did not receive a GAP Refund or suffer a total loss of your Vehicle during the term of the Finance Agreement.  Excluded from the Non-Statutory Class are any persons whose Vehicle is covered by the Statutory Class definition.

- The Court has not decided whether to finally approve the Settlement.

  You must decide whether to: (1) Submit a Claim; (2) "Opt-Out"; (3) Object; or (4) Do Nothing

**THESE OPTIONS AND THE DEADLINES TO EXERCISE THEM ARE FURTHER DETAILED IN THIS NOTICE AND SUMMARIZED ON THE NEXT PAGE.**

---

[1] Capitalized terms in this Notice are defined in the Settlement Agreement <<link>>.

Questions? Call <<Telephone Number>> or visit www.<<NAME>>.com

**YOUR LEGAL RIGHTS WILL BE AFFECTED WHETHER YOU ACT OR NOT. PLEASE READ THIS ENTIRE NOTICE CAREFULLY.**

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FOR MONEY BY <<DATE>>, 2022** | If you are a **Non-Statutory Class Member**, you <u>MUST</u> submit a Claim for a refund by <<DATE>>, 2022, or else you will not receive any money under the Settlement. (**Section 7** <<link>>.)<br><br>You can click on this link to submit an Online Claim <<link>>.<br><br>If you are a **Statutory Class Member**, you <u>DO NOT</u> need to submit a Claim.  You will receive a Settlement Payment directly from TMCC in the mail without taking any further action. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT BY <<DATE>>, 2022** | You may file a written request to exclude yourself or "opt out" from the Settlement by <<DATE>>, 2022.<br><br>If you "opt out," you will not be affected by any of the decisions in this lawsuit.  However, you will not be entitled to receive any money from the Settlement. (**Section 11** <<link>>.)<br><br>If the Settlement is granted final approval by the Court and you did not timely "opt out" of the Settlement, then you will release certain legal claims against TMCC.  (**Section 19** <<link>>.) |
| **OBJECT TO THE SETTLEMENT BY <<DATE>>, 2022** | If you believe the Settlement is unfair or inadequate, you may file a written objection to the Settlement by <<DATE>>, 2022, so long as you do not "opt out" from the Settlement. (**Section 17** <<link>>.) |
| **DO NOTHING** | If you do nothing, and the Settlement is granted final approval by the Court, then you will release certain legal claims against TMCC. (**Section 19** <<link>>.) |

**THESE OPTIONS AND THE DEADLINES TO EXERCISE THEM ARE FURTHER DETAILED IN THIS NOTICE.**

# NOTICE CONTENTS

**BASIC INFORMATION** ................................................................................................**4**
    1.   WHY DID I RECEIVE NOTICE OF THIS SETTLEMENT? ..............................4
    2.   WHAT IS THIS LAWSUIT ABOUT? ..................................................................4
    3.   WHY IS THIS A CLASS ACTION? .....................................................................4
    4.   WHAT ARE THE REASONS FOR THE SETTLEMENT? ..................................5

**THE SETTLEMENT** ....................................................................................................**5**
    5.   WHO IS INCLUDED IN THE SETTLEMENT CLASS? ......................................5
    6.   WHAT BENEFITS DOES THE SETTLEMENT PROVIDE? ...............................6
    7.   DO I NEED TO DO ANYTHING TO RECEIVE A PAYMENT? ........................7
    8.   WHY DID I RECEIVE MULTIPLE NOTICES? ...................................................7
    9.   WHAT CAN I DO IF I BELIEVE MY SETTLEMENT PAYMENT WAS NOT CALCULATED PROPERLY? ...................................................................................8
    10.  HOW WILL THIS SETTLEMENT AFFECT MY RIGHTS? ...............................8

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ..............................................**8**
    11.  HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT? .........................8
    12.  IF I DO NOT REQUEST EXCLUSION, CAN I SUE DEFENDANTS FOR THE SAME CLAIMS LATER? ......................................................................................9
    13.  IF I EXCLUDE MYSELF, MAY I STILL RECEIVE COMPENSATION FROM THE SETTLEMENT FUND? ..............................................................................9

**THE LAWYERS REPRESENTING YOU** ...................................................................**9**
    14.  DO I HAVE A LAWYER IN THIS CASE? ..........................................................9
    15.  HOW WILL THE LAWYERS BE PAID FOR THEIR SERVICES? .....................9
    16.  WILL CLASS REPRESENTATIVES RECEIVE SERVICE AWARDS? ..............9

**OBJECTING TO THE SETTLEMENT** ......................................................................**10**
    17.  HOW DO I INFORM THE COURT IF I OBJECT TO THE SETTLEMENT? ....10
    18.  WHAT IS THE DIFFERENCE BETWEEN OBJECTING TO THE SETTLEMENT AND REQUESTING EXCLUSION? .......................................11

**RELEASE OF CLAIMS** ............................................................................................**11**
    19.  WHAT CLAIMS ARE BEING RELEASED AS PART OF THE SETTLEMENT? ..................................................................................................11

**THE FINAL APPROVAL HEARING** ........................................................................**11**
    20.  WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO GRANT FINAL APPROVAL TO THE SETTLEMENT? ...................................................11
    21.  DO I HAVE TO ATTEND THE HEARING? .....................................................12

**GETTING MORE INFORMATION** ..........................................................................**12**
    22.  HOW DO I GET MORE INFORMATION? .......................................................12

# BASIC INFORMATION

| 1. | WHY DID I RECEIVE NOTICE OF THIS SETTLEMENT? |
|---|---|

A Court authorized this Notice because you have a right to know about a proposed Settlement of this class action lawsuit and about your options before the Court decides whether to grant final approval of the Settlement. If you received a Postcard or Email Notice about this Settlement, then TMCC's records indicate that you may be a Class Member who is entitled to a monetary payment under the Settlement.

This Notice explains the lawsuit, the Settlement, and your legal rights.

Judge James V. Selna of the United States District Court for the Central District of California is overseeing this case and has exclusive jurisdiction over the Settlement. This litigation is known as *Martin, et al. v. Toyota Motor Credit Corporation,* Case No., 2:20-cv-10518-JVS-MRW.

| 2. | WHAT IS THIS LAWSUIT ABOUT? |
|---|---|

If you received a Postcard or Email Notice about this Settlement, then according to TMCC's records, you financed the purchase of the Vehicle identified in the Postcard or Email Notice that was sent to you. In addition, according to TMCC's records, you purchased GAP protection for your Finance Agreement.

GAP protection is an addendum to the Finance Agreement which provides that the creditor on the Finance Agreement (TMCC) will waive certain amounts owed under the Finance Agreement in the event the customer's car is "totaled" or stolen.

According to the lawsuit, customers may be entitled to a partial credit or refund of the purchase price for GAP protection if the Finance Agreement is paid off early (an "Early Payoff"). This amount is referred to in this Notice as a "GAP Refund."

Plaintiffs allege that TMCC was contractually required to issue a GAP Refund after an Early Payoff of the Finance Agreement. Plaintiffs further contend that certain States have laws, regulations, or guidance that required TMCC to automatically issue the GAP Refund after an Early Payoff ("Automatic Refund Requirements").

TMCC denies any wrongdoing in this lawsuit. TMCC contends that unless the GAP Agreement is subject to a State-specific Automatic Refund Requirement, customers are required to provide a written request to cancel their GAP Agreement or a written request for a refund as a prerequisite for the refund. TMCC also disputes whether certain States had Automatic Refund Requirements in effect that required TMCC to issue a GAP Refund after an Early Payoff.

The Second Amended Complaint in this lawsuit, which provides greater details about Plaintiffs' claims, can be viewed by clicking on the following link: <<link>>

| 3. | WHY IS THIS A CLASS ACTION? |
|---|---|

A class action lawsuit allows a large number of people with a common complaint to sue collectively while being represented by one or more members of the group called the "Class Representatives."

In this case, the Class Representatives, William Martin and Lori Mitchell, have brought this lawsuit on behalf of themselves and others with similar claims. Together, all the individuals with similar claims (with the exception of those who request exclusion or "opt out" from the Class) are referred to as "Class Members."

| 4. | WHAT ARE THE REASONS FOR THE SETTLEMENT? |
|---|---|

The Court has not ruled in favor of either the Plaintiffs or TMCC. Instead, both sides agreed to a Settlement that they believe is a fair, reasonable and adequate compromise of their respective positions.

The parties reached this Settlement after litigating this case for over one and a half years, conducting substantial discovery, and with the assistance of an experienced neutral mediator and former U.S. District Court judge.

By agreeing to the Settlement, the parties avoid the costs, delays, and uncertainty of further litigation, and Class Members receive the benefits described in this Notice. As in any litigation, Plaintiffs and the Class Members would face an uncertain outcome if they did not agree to the Settlement, and the case could continue for a long period of time. Continuation of the case could result in a judgment greater or less than the Settlement. Plaintiffs and Class Counsel believe this Settlement provides a fair and reasonable resolution of the claims asserted in this lawsuit for the benefit of the Class Members.

TMCC denies any wrongdoing and the Settlement shall in no event be construed or deemed to be evidence or an admission or concession on the part of TMCC with respect to any claim or of any fault, liability, wrongdoing, or damage.

## THE SETTLEMENT

| 5. | WHO IS INCLUDED IN THE SETTLEMENT CLASS? |
|---|---|

There are two classes that are part of this Settlement: the "Statutory Class" and the "Non-Statutory Class."

The Postcard or E-Mail Notice you received will indicate if you are potentially a member of the Statutory Class or the Non-Statutory Class. You are considered a Class Member if you fit either of the class definitions.

**The Statutory Class:** The Statutory Class includes all persons in the United States: (a) who entered into Finance Agreements with GAP protection in the States of Alabama, Colorado, Indiana, Iowa, Massachusetts, New Jersey, Oklahoma, Oregon, Texas, Vermont, Wisconsin or Wyoming; (b) whose agreements were assigned to TMCC; (c) who paid off their Finance Agreements at least 30 days prior to the original maturity date (an "Early Payoff"); (d) whose Early Payoffs occurred during the Statutory Class Period; and (e) who did not receive a GAP Refund or suffer a total loss of their Vehicle during the term of the Finance Agreement.

For purposes of the Settlement only, the Parties have agreed to a list of twelve (12) States that had Automatic Refund Requirements. The list of each of these State's Statutory Class Period can be found by clicking on the following link: << link>>

**The Non-Statutory Class:** The Non-Statutory Class includes all persons in the United States: (a) who entered into Finance Agreements with GAP protection; (b) whose agreements were assigned to TMCC; (c) who paid off their Finance Agreements at least 30 days prior to the

original maturity date (an "Early Payoff"); (d) whose Early Payoffs occurred during the period **January 1, 2016** through **October 25, 2021**; and (e) who did not receive a GAP Refund or suffer a total loss of your Vehicle during the term of the Finance Agreement. The Non-Statutory Class also excludes any persons whose Vehicle is covered by the Statutory Class definition.

It is possible that you have more than one Vehicle covered by the Settlement. If so, please follow the instructions in this Notice for each Vehicle separately. (See **Section 8**.) It is possible that you could be a Non-Statutory Class Member for one Vehicle (in which case, you will be required to submit a Claim for that Vehicle in order to receive money under the Settlement), and a Statutory Class Member for another vehicle (in which case, you will not be required to submit a Claim).

If you did not receive a Postcard or Email Notice but believe you are a member of the Statutory Class or Non-Statutory Class, you can contact the Settlement Administrator at <<telephone number>> or <<email address>>. You will be required to provide any documents or information you have to support your claim to the Settlement Administrator.

| 6. | WHAT BENEFITS DOES THE SETTLEMENT PROVIDE? |
|---|---|

Under the Settlement, TMCC has agreed to provide the following benefits as consideration for the resolution and release of the Class Members' claims:

- **Business Practice Change.** Commencing on October 25, 2021, approximately one year after the filing of the lawsuit, TMCC implemented changes to its refund practice so that it now automatically and directly provides GAP Refunds to all retail customers in all U.S. States within a reasonable time after receipt of an Early Payoff, provided such payoff occurs more than thirty (30) days prior to the original maturity date of the Finance Agreement. Customers are not required to take any action to seek a refund and no cancellation fee is charged unless provided for in the customer's GAP Agreement. The practice applies to all customers whose Finance Agreements with GAP protection have been or will be assigned to TMCC. TMCC agrees it will not materially change this practice for at least four (4) years after the Effective Date of the Settlement Agreement, and it will not revert back to a State-by-State approach during this four-year period. Plaintiffs' expert estimates that TMCC will pay out at least $275 million in refunds during this four-year period that it was not paying prior to the filing of the lawsuit.

- **Statutory Class.** TMCC will directly pay each member of the Statutory Class the full amount of their GAP Refund without any deduction for cancellation fees, plus interest at the applicable State-specific prejudgment interest rate from the date of the Early Payoff. It is estimated that TMCC will pay over $\_\_\_\_ million collectively to the Statutory Class.

- **Non-Statutory Class.** Each member of the Non-Statutory Class will be eligible to receive up to the full amount of their GAP Refund without any deduction for cancellation fees, to be paid from the Settlement Fund (described below). Each member of the Non-Statutory Class will be required to timely submit a completed Claim Form verifying under penalty of perjury that: (a) they purchased GAP protection for the Vehicle identified on their Claim Form; (b) they did not suffer a total loss of the Vehicle identified on their Claim Form during the term of their Finance Agreement; and (c) they did not previously receive a GAP Refund for the Vehicle identified on their Claim Form from TMCC, a Dealer, a GAP Administrator or any other third-party. The settlement payments to the Non-Statutory Class Members may be reduced on a prorated basis depending on the amounts remaining in the Settlement Fund.

- **Settlement Fund.** TMCC will establish a settlement fund ("Settlement Fund")

totaling $59 million to pay: (a) the Approved Claims for GAP Refunds to the Non-Statutory Class Members; (b) Notice and Administration Costs; (c) any Fee and Expense Awards to Class Counsel approved by the Court; and (d) any Service Awards to the Class Representatives approved by the Court. If the collective total of these items exceeds $59 million, then the settlement payments to the Non-Statutory Class Members will be reduced on a prorated basis to account for the difference. Each Non-Statutory Class Member's payment from the Settlement Fund will be reduced by the same percentage.

**NOTE**: GAP Refunds will be calculated using the pro rata method.

| 7. | **DO I NEED TO DO ANYTHING TO RECEIVE A PAYMENT?** |
|---|---|

**If you are a Non-Statutory Class Member: You <u>must</u> submit a Completed Claim Form by <<Deadline>>, 2022 to receive money from the Settlement.**

**If you are a Statutory Class Member: You do <u>not</u> need to submit a Claim Form.  You will receive your settlement payment directly from TMCC.**

**For Non-Statutory Class Members Only:** You will need to verify under penalty of perjury that: (a) You purchased GAP protection for the Vehicle identified on your Claim Form; (b) You did not suffer a total loss of the Vehicle identified on your Claim Form during the term your Finance Agreement; and (c) You did not previously receive a GAP Refund from TMCC, a Dealer, a GAP Administrator or any other third-party.

To Submit a Claim, please do one of the following:

1. Scan the QR Code on the Postcard Notice or click the link on the Email Notice you received about the Settlement to complete and submit an online Claim Form.

2. Click on this link <<link>> and input your Class Member ID number (which can be found on the Postcard or Email Notice you received) to complete and submit an online Claim Form.

3. Click on this link <<link>> to print and complete a paper Claim Form that you will then sign and mail to the Settlement Administrator at the following address:

    Martin v. TMCC Settlement  c/o Atticus Administration
    PO Box 64053
    Saint Paul, MN 55164

4. You may also contact the Settlement Administrator at <<telephone number>> or <<email address>> to request a Claim Form be sent to you via mail or email.  Once received, you must complete, sign and mail the Claim Form to the Settlement Administrator at the address shown above.

If you send a Claim Form by mail, it must be postmarked on or before **<<Deadline>>, 2022** to be valid.

**For Statutory Class Members:**  You do not need to do anything to receive a payment under the Settlement.  TMCC was able to determine your eligibility for a payment from its own records.

| 8. | **WHY DID I RECEIVE MULTIPLE NOTICES?** |
|---|---|

If you received more than one Postcard or Email Notice about the Settlement, it may mean you have more than one vehicle covered by the Settlement.  The front of the Postcard or Email Notice will identify the vehicle covered by the Settlement and will indicate whether you are

potentially a Statutory Class Member or Non-Statutory Class Member for that vehicle.

If you received Notices for more than one vehicle, please follow the instructions in this Notice for each different vehicle. You will need to complete a separate Claim Form for each different vehicle if you are a Non-Statutory Class Member for each of those vehicles.

| 9. | WHAT CAN I DO IF I BELIEVE MY SETTLEMENT PAYMENT WAS NOT CALCULATED PROPERLY? |
|---|---|

If you believe your payment was improperly calculated, you can contact the Settlement Administrator by phone or email and provide your relevant information. If the Settlement Administrator or TMCC determines that your payment was improperly calculated, your payment will be updated and a new check will be issued.

| 10. | HOW WILL THIS SETTLEMENT AFFECT MY RIGHTS? |
|---|---|

If this Settlement is granted final approval by the Court and you do not "opt-out" or request exclusion from the Settlement, then you will release certain claims against TMCC as described in Section 19 below.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

| 11. | HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT? |
|---|---|

If you do not want to be a part of the Settlement, then you must take steps to request exclusion from the Settlement.

To request exclusion or "opt out" from the Settlement, you must mail a written Request for Exclusion to the Settlement Administrator at the following address:

<div align="center">

Martin v. TMCC Settlement c/o Atticus Administration
PO Box 64053
Saint Paul, MN 55164

</div>

The Request for Exclusion must be post-marked on or before **<<Deadline>>, 2022.**

Your Request for Exclusion must include the following information:

1. Your name, address, and telephone number;

2. Your Class Member ID number provided on the front of the Postcard or Email Notice you received;

3. A statement that "I do not want to be a member of the Class in *Martin et al. v. Toyota Motor Credit Corporation.,* Case No. 2:20-cv-10518-JVS-MRW pending in the United States District Court for the Central District of California. I understand that it will be my responsibility to pursue any claims I may have, if I so desire, on my own and at my expense"; and

4. Your signature and date.

Your Request for Exclusion must be for yourself. Attempts to exclude multiple individuals as part of single Request for Exclusion are not allowed and shall be of no force or effect.

<div align="center">

Questions? Call <<Telephone Number>> or visit www.<<NAME>>.com

8

</div>

| 12. | IF I DO NOT REQUEST EXCLUSION, CAN I SUE DEFENDANTS FOR THE SAME CLAIMS LATER? |
|---|---|

No. Unless you request exclusion from the Settlement, you will give up the right to sue TMCC for the claims resolved by this Settlement as described in Section 19 below.

| 13. | IF I EXCLUDE MYSELF, MAY I STILL RECEIVE COMPENSATION FROM THE SETTLEMENT FUND? |
|---|---|

No.  If you exclude yourself from the Settlement, you will <u>not</u> be eligible to submit a Claim Form or receive any payment from the Settlement.

## THE LAWYERS REPRESENTING YOU

| 14. | DO I HAVE A LAWYER IN THIS CASE? |
|---|---|

Yes. The Court has appointed the following law firms to represent you and the other Class Members as "Class Counsel." You can contact Class Counsel at the addresses or telephone numbers listed below. They are:

Jason M. Frank
Andrew D. Stolper
Scott H. Sims
**FRANK SIMS &
STOLPER LLP**
19800 MacArthur Blvd.,
Suite 855
Irvine, CA 92612
Telephone: (949) 201-2400
Facsimile: (949) 201-2405

Franklin D. Azar
**FRANKLIN D. AZAR &
ASSOCIATES, P.C.**
14426 East Evans Avenue
Aurora, CO 80014
Telephone: (303) 757-3300
Facsimile: (303) 759-5203

**<span style="color:red">You will not be charged for contacting these lawyers. If you want to be represented by a different lawyer, you may hire one at your own expense.</span>**

| 15. | HOW WILL THE LAWYERS BE PAID FOR THEIR SERVICES? |
|---|---|

Class Counsel will apply to the Court for an award of attorneys' fees and costs to compensate them for their legal services and expenses incurred in this matter. The application for an award of attorneys' fees and costs will be posted to the Settlement Website at www.<<name>>.com. Pursuant to the terms of the Settlement, Class Counsel intends to request an award of $19 million in legal fees and reimbursement of their expenses in an amount not to exceed $150,000.

Any Fee and Expense Awards approved by the Court will be paid out from the Settlement Fund.

| 16. | WILL CLASS REPRESENTATIVES RECEIVE SERVICE AWARDS? |
|---|---|

Class Counsel will file an application for Service Awards to be paid to each of the Class Representatives in recognition of the time and effort they provided in this lawsuit on behalf of the Class. The application for Service Awards will be posted to the Settlement Website at www.<<name>>.com.  Pursuant to the terms of the Settlement, Class Counsel intends to request

a Service Award of $2,500 for each of the Class Representatives.

Any Service Awards approved by the Court will be paid out from the Settlement Fund.

# OBJECTING TO THE SETTLEMENT

| **17.    HOW DO I INFORM THE COURT IF I OBJECT TO THE SETTLEMENT?** |
|---|

If you are a member of the Class, and do not Request Exclusion or "opt out" from the Settlement, you can object to any part of the Settlement. You can give reasons why you think the Court should not approve the entire Settlement or parts of it.

To object, you must timely file a written objection with the Court and mail the same to the Settlement Administrator at the following address:

<div align="center">

Martin v. TMCC Settlement  c/o Atticus Administration

PO Box 64053

Saint Paul, MN 55164

</div>

The objection must be filed on or before <<**Deadline**>>, **2022**, and mailed to the Settlement Administrator with a post-mark date on or before <<**Deadline**>>, **2022.**

Your objection must state all of the following:

1. Your name, address, and telephone number;

2. Your Class Member ID number provided on the front of the Postcard or Email Notice;

3. A statement saying that you object to the Settlement in *Martin et al. v. Toyota Motor Credit Corporation.,* Case No. 2:20-cv-10518-JVS-MRW and describing the nature of your objection;

4. A statement describing whether your objection applies only to yourself, to a specific subset of the Class, or to the entire Class;

5. The specific grounds for your objection;

6. Any legal authority that supports your objection; and

7. Your signature.

If a lawyer is asserting an objection on your behalf, the lawyer must also:

1. File a notice of appearance with the Court on or before <<**Deadline**>>, **2022**;

2. File a sworn declaration attesting that he or she represents you; and

3. File a sworn declaration that specifies the number of times during the prior five-year period that he or she has objected to a class action settlement on his or her own behalf or on behalf of a class member.

If you wish to appear at the Final Approval Hearing, you (or your attorney) must file a Notice of Intention to Appear with the Court indicating that you (or your attorney) would like to speak at the hearing. The Notice of Intention to Appear must be filed with the Court on or before <<**Deadline**>>, **2022**. If you (or your attorney) do not file a timely Notice of Intention to Appear, you (or your attorney) will be barred from speaking or otherwise presenting any views at the Final Approval Hearing.

You (or your attorney) must file your written objection and any additional documents required

<div align="center">Questions? Call <<Telephone Number>> or visit www.<<NAME>>.com</div>

<div align="center">10</div>

above with Courtroom 10C of the United States District Court for the Central District of California, the Honorable James V. Selna presiding, located at 411 West Fourth Street, Santa Ana, California 92701-4517.

| 18. | WHAT IS THE DIFFERENCE BETWEEN OBJECTING TO THE SETTLEMENT AND REQUESTING EXCLUSION? |
|---|---|

Objecting is notifying the Court that you think something about the Settlement is unfair, unreasonable, or inadequate. You can only object to the Settlement if you are a Class Member.

Requesting exclusion from the Settlement is notifying the Court that you do not want to remain a Class Member. If you exclude yourself, you have no basis to object because the Settlement no longer affects you.

## RELEASE OF CLAIMS

| 19. | WHAT CLAIMS ARE BEING RELEASED AS PART OF THE SETTLEMENT? |
|---|---|

Upon Final Approval of the Settlement by the Court, each Class Member who does not request exclusion, individually or together, and each and every one of their former, present, or future agents, predecessors, successors, heirs, legatees, executors, administrators, insurers, assigns, trustees, spouses, and domestic partners ("Class Releasors") releases and fully discharges TMCC and Toyota Motor Insurance Services ("TMIS"), and each of their former, present, or future agents, insurers, predecessors, successors, subsidiaries, parent company(ies), affiliates, officers, directors, and employees and attorneys ("Class Releasees") from any and all past and/or present claims, counterclaims, lawsuits, set-offs, costs, losses, rights, demands, charges, complaints, actions, causes of action, obligations, or liabilities of any and every kind, whether class, individual, or otherwise in nature, including, without limitation, those known or unknown or capable of being known; those which are unknown but might be discovered or discoverable based upon facts other than or different from those facts known or believed at this time; those which are foreseen or unforeseen, suspected or unsuspected, asserted or unasserted, and/or contingent or non-contingent; and those which are accrued, unaccrued, matured or not matured, under the laws of any jurisdiction, which they, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have, arising from or relating in any way to the Class Member's entitlement to a GAP Refund after an Early Payoff that occurred during the Class Period or Statutory Class Period, as appropriate (the "Class Released Claims"). For clarification, the Class Releasees do not include any Dealers or GAP Administrators (other than TMIS), including without limitation, those identified in the Class Members' GAP Agreements or Finance Agreements.

## THE FINAL APPROVAL HEARING

| 20. | WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO GRANT FINAL APPROVAL TO THE SETTLEMENT? |
|---|---|

The Court has scheduled a Final Approval Hearing for **<<DATE>>, 2022 at 1:30 PM** in Courtroom 10C of the United States District Court, Central District of California, Southern Division, located at the Santa Ana Courthouse - 411 West Fourth Street, Santa Ana, CA 92701. The hearing date and time is subject to change. Updates to the date and time will be posted to the

Settlement Website at www.<<NAME>>.com.

At the Final Approval Hearing, the Court will consider granting final approval of the Settlement based on whether it is fair, reasonable, and adequate. The Court will also consider requests by Class Counsel for attorneys' fees and expenses related to the litigation and the Class Representative Service Awards. If there are timely and complete objections, the Court will consider those objections at the hearing as well.

At or after the hearing, a decision will be made whether to grant final approval of the Settlement. It is not known how long it will take for the Court to decide. Class Members should visit the Settlement Website at wwww.<<NAME>>.com to stay updated about the current status of the case.

| 21. | DO I HAVE TO ATTEND THE HEARING? |
|---|---|

No. Attending the hearing is not required, but you are welcome to attend at your own expense.

If you send an objection, you do not have to come to Court to talk about it. As long as your objection is timely and complies with the requirements set forth in this Notice and the Settlement Agreement, the Court will consider it. You may also pay your own lawyer to attend.

# GETTING MORE INFORMATION

| 22. | HOW DO I GET MORE INFORMATION? |
|---|---|

This Notice is a summary of the proposed Settlement. More details regarding the terms of the Settlement can be found in the Settlement Agreement posted on the Settlement Website at www.<<NAME>>.com.

You may also contact the Settlement Administrator by calling the toll-free number, <<Telephone Number>> by emailing <<Email Address>> or by writing to:

<div align="center">

Martin v. TMCC Settlement  c/o Atticus Administration

PO Box 64053

Saint Paul, MN 55164

</div>

You may also contact Class Counsel using the contact information provided above in Section 14. You will not be charged for contacting Class Counsel.

<div align="center">

Questions? Call <<Telephone Number>> or visit www.<<NAME>>.com

</div>

# EXHBIT E

*William Martin et al. vs. Toyota Motor Credit Corp.*
U.S. District Court, Central District of California
Case No. 2:20-cv-10518-JVS-MRW

**IMPORTANT LEGAL NOTICE**

**IF YOU ENTERED INTO A FINANCE AGREEMENT WITH GAP PROTECTION THAT WAS ASSIGNED TO TOYOTA MOTOR CREDIT CORPORATION ("TMCC") YOU MAY BE ELIGIBLE FOR A SETTLEMENT PAYMENT.**

A proposed Settlement has been reached in a class action lawsuit that may affect your rights. The lawsuit alleges that Toyota Motor Credit Corporation ("TMCC") failed to provide customers with a partial credit or refund of the fees paid for Guaranteed Asset Protection ("GAP") after customers paid off their finance agreements early. TMCC denies any wrongdoing.

- TMCC's records indicate that you are a potential member of the "**Non-Statutory Class**" concerning the following vehicle: <<Vehicle>>.

- You may be eligible for a maximum Settlement payment of <<MaxAmount>>.

MARTIN V TMCC SETTLEMENT
C/O ATTICUS ADMINISTRATION
PO BOX 64053
SAINT PAUL MN 55164

Presorted First-Class Mail
U.S. Postage
**PAID**
Twin Cities MN
Permit #XXX

<<barcode>>
<<barcode>>

**CLAIMANT ID:** <<Unique ID>>
<<FIRST NAME>> <<LAST NAME>>
<<ADDRESS 1>> <<ADDRESS 2>>
<<CITY>> <<ST>> <<ZIP>>

**To receive a payment from this Settlement you must submit a completed Claim Form by [claim form deadline].** To complete a Claim Form, please do one of the following:

1. Scan the QR Code at the right to complete and submit an online Claim Form.
2. Go to www.websiteaddress.com and use your Claimant ID to submit an online Claim Form.
3. Go to www.websiteaddress.com to print a paper Claim Form to submit by mail.



**Opt-Out Option:** If you do not wish to participate in the Settlement, you <u>must</u> mail an "Opt-Out" Request to the Settlement Administrator postmarked no later than **[exclusion deadline]**. If you "opt-out", you will not be legally bound by anything that happens in this lawsuit, but you will not be eligible to receive a Settlement payment.  If you do not "opt-out," and the Court grants final approval of the Settlement, you will release the claims asserted in the lawsuit against TMCC.

**Objection Option:** If you do not "opt-out" and wish to object to the Settlement, you must inform the Court through a written objection of why you do not like the settlement. The objection must contain specific information that can be found in the full Class Notice on the settlement website and must be filed with the Court and mailed to the Settlement Administrator by [objection deadline]. The Court will consider objection at the Final Approval Hearing. If you object and wish to speak at the hearing, you may file a Notice of Intent to Appear with the Court through your own attorney and at your own expense.

The Court appointed the law firms of Frank Sims & Stolper LLP and Franklin D. Azar & Associates as Class Counsel to represent the interests of the Settlement Class. The Court will hold a **Final Approval Hearing** on [hearing date] at [hearing time] in [Division/Room] of the U.S. District Court, Central District of California at [address].

To review the complete Class Notice and for more information about the Settlement, including details on how to File a Claim, "Opt-Out" or  submit an Objection,  please visit the Settlement Website at www.settlementwebsite.com. You may also call or email the Settlement Administrator at 1-800-XXX-XXXX or settlementwebsite@atticusadmin.com with any questions or to have the full Class Notice mailed to you.

This Notice was authorized by U.S. Dist. Court for the Central Dist. of California.  It is not a solicitation from an attorney

# EXHBIT F

*William Martin et al. vs. Toyota Motor Credit Corp.*
U.S. District Court, Central District of California
Case No. 2:20-cv-10518-JVS-MRW

**IMPORTANT LEGAL NOTICE**

**IF YOU ENTERED INTO A FINANCE
AGREEMENT WITH GAP PROTECTION THAT
WAS ASSIGNED TO TOYOTA MOTOR CREDIT
CORPORATION ("TMCC") YOU MAY BE
ELIGIBLE FOR A SETTLEMENT PAYMENT.**

A proposed Settlement has been reached in a class
action lawsuit that may affect your rights. The lawsuit
alleges that Toyota Motor Credit Corporation ("TMCC")
failed to provide customers with a partial credit or refund
of the fees paid for Guaranteed Asset Protection ("GAP")
after customers paid off their finance agreements early.
TMCC denies any wrongdoing.

- TMCC's records indicate that you are a potential
  member of the **"Statutory Class"** concerning the
  following vehicle: <<Vehicle>>.

- You may be eligible for a maximum Settlement
  payment of <<MaxAmount>>.

MARTIN V TMCC SETTLEMENT
C/O ATTICUS ADMINISTRATION
PO BOX 64053
SAINT PAUL MN 55164

Presorted First-
Class Mail
U.S. Postage
**PAID**
Twin Cities MN
Permit #XXX

<<barcode>>
<<barcode>>

**CLAIMANT ID:**  <<Unique ID>>
<<FIRST NAME>> <<LAST NAME>>
<<ADDRESS 1>> <<ADDRESS 2>>
<<CITY>> <<ST>> <<ZIP>>

**You are not required to do anything to receive a refund.** TMCC will directly pay you the full amount your GAP Refund (without any deduction for cancellation fees), plus interest.

**Opt-Out Option:** If you do not wish to participate in the Settlement, you <u>must</u> mail an "Opt-Out" request to the Settlement Administrator postmarked no later than **[exclusion deadline]**. If you "opt-out", you will not be legally bound by anything that happens in this lawsuit, but you will not be eligible to receive a Settlement payment. If you do not "opt-out," and the Court grants final approval of the Settlement, you will release the claims asserted in the lawsuit against TMCC.

**Objection Option:** If you do not "opt-out" and wish to object to the Settlement, you must inform the Court through a written objection of why you do not like the settlement. The objection must contain specific information that can be found in the full Class Notice on the settlement website and must be filed with the Court and mailed to the Settlement Administrator by **[objection deadline]**. The Court will consider objection at the Final Approval Hearing. If you object and wish to speak at the hearing, you may file a Notice of Intent to Appear with the Court through your own attorney and at your own expense.

The Court appointed the law firms of Frank Sims & Stolper LLP and Franklin D. Azar & Associates as Class Counsel to represent the interests of the Settlement Class. The Court will hold a **Final Approval Hearing** on **[hearing date]** at **[hearing time]** in **[Division/Room]** of the U.S. District Court, Central District of California at **[address]**.

To review the complete Class Notice and for more information about the Settlement, including details on how to File a Claim, "Opt-Out" or submit an Objection, please visit the Settlement Website at **www.settlementwebsite.com**. You may also call or email the Settlement Administrator at **1-800-XXX-XXXX** or **settlementwebsite@atticusadmin.com** with any questions or to have the full Class Notice mailed to you.

This Notice was authorized by U.S. Dist. Court for the Central Dist. of California. It is not a solicitation from an attorney.