JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-10518 JVS (MRW) | Date | November 15, 2022 |
| Title | William Martin et al v. Toyota Motor Credit Corporation et al | | |

Present: The Honorable    **James V. Selna, U.S. District Court Judge**

| | |
|---|---|
| Lisa Bredahl | Not Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

Proceedings:    **[IN CHAMBERS] Order Regarding Motion for Final Settlement Approval and Attorneys Fees [88] [106]**

Plaintiffs William Martin and Lori Mitchell, et al., (collectively, "Plaintiffs") filed a motion for final approval of a nationwide class action settlement.  (Approval Mot., Dkt. No. 106.)  Plaintiffs additionally filed a motion for attorneys' fees, costs, and incentive awards.  (Fees Mot., Dkt. No. 88.)  Defendant Toyota Motor Credit Corporation ("TMCC") filed a response to Plaintiffs' motion for attorneys' fees.  (Opp'n., Dkt. No. 107.)  Plaintiffs responded.  (Reply, Dkt. No. 121.)  The Court heard oral argument on these matters on November 14, 2022.

For the following reasons, the Court **GRANTS** final approval of the Settlement, **GRANTS** Plaintiffs $19 million in attorneys' fees, **GRANTS** a total of $1,020,000 in Notice and Administration Costs, and **GRANTS** a total of $5,000 in service payments to be divided equally between the named Plaintiffs.

## I. BACKGROUND

### A.    *Allegations and Procedural History*

The general background of this dispute is well-known to the parties and to the Court.  Plaintiffs alleged that TMCC knowingly collected unearned fees for Guaranteed Automobile Protection Waivers ("GAP Waivers") after the early payoff of a customer's retail installment sales contract and refused to refund them despite being obligated to do so.  (Second Amended Complaint ("SAC"), Dkt. No. 53 ¶ 1.)  A GAP Agreement is an

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-10518 JVS (MRW) | Date | November 15, 2022 |
|---|---|---|---|

| Title | William Martin et al v. Toyota Motor Credit Corporation et al |
|---|---|

addendum to a financing agreement to purchase a car, which provides that if a customer suffers a total loss in an accident during the course of the financing agreement, the customer will be paid the difference between the insurance payout based upon the vehicle's value and the remaining balance on the loan in exchange for a GAP fee.  (SAC ¶¶ 4-6.)

Plaintiffs and the Class financed the purchase of their cars by entering into retail installment sales contracts with auto dealerships (the "dealers") in which Plaintiffs agreed to pay the price of their cars in monthly installments, with interest, over a fixed period of years.  (SAC ¶ 2.)  The dealers then immediately sold or assigned the retail installment sales contracts to TMCC, who became the creditor.  (Id. ¶¶ 2-3.)  Each of the retail installment contracts at issue in this lawsuit included a GAP Waiver, a debt cancellation agreement that provides that in the event a customer suffers a "total loss" and their vehicle is worth less than the balance owed to the creditor, the creditor agrees to waive that balance.  (Id. ¶ 4.)  This difference between the balance owed the creditor and the value of the car is called the "deficiency balance," or "GAP."  (Id. ¶ 5.)

The total cost of GAP coverage for the full term of the contract is separately listed on the retail installment sales contract as part of the total amount financed (the "GAP fees").  (Id. ¶ 6.)  The contract also lists out the total amount of interest that the customer will pay over the course of the agreement.  (Id.)  Although these amounts are individually listed, the customer pays both the interest and the GAP coverage in monthly installments over the life of the contract.  (Id.)

When customers pay off the finance agreements early (i.e., before the maturity date), this results in what TMCC and the industry refer to as "unearned GAP fees" and "unearned finance charges."  (Id. ¶ 7)  Plaintiffs explain:

> For example, if the total cost of GAP protection for four years of GAP coverage is $800, but the customer pays off their finance agreement in two years, this results in $400 of "unearned GAP fees" for the unused half of the contract term.  This portion of the GAP fees is "unearned" because once the finance agreement is paid-off early, there is no possibility of a GAP and the customer is no longer receiving anything of value by paying for future GAP protection.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-10518 JVS (MRW) | Date | November 15, 2022 |
|---|---|---|---|

| Title | William Martin et al v. Toyota Motor Credit Corporation et al |
|---|---|

(Id.)

     When a customer wants to pay off their finance agreement prior to the end of the contract term, TMCC informs the customer of the total payoff amount that the customer owes. This amount typically does not include the unearned finance charge, but does include the unearned GAP fees. (Id. ¶ 8.) Plaintiffs contend that at the time of an early payoff, TMCC "fraudulently represents to its customers (including Plaintiffs and the Class) that they owe TMCC the unearned GAP fees for the remaining term of the contract, even though TMCC knows these fees are not earned, and can never be earned, because the finance agreement is terminating early." (Id.) As a result of this practice, TMCC collects and keeps tens of millions of dollars of unearned money each year. (Id.) It is possible for customers to reclaim the unearned GAP fees. But the "'fine print' language" on the back of the GAP Waiver addendums requires customers to send written notice of cancellation in order to claim the unearned GAP fees as a credit or refund after an early payoff. (Id. ¶ 11.)

     Plaintiffs contend that the early payoff of contract automatically terminates the GAP Waiver addendum. (Id. ¶ 10.) Moreover, Plaintiffs allege that TMCC knows that if the contract is terminated early, so there is no basis for continuing to charge customers for future GAP coverage. Plaintiffs therefore argue that there is no legitimate basis for TMCC to include the unearned GAP fees in the early payoff amount quoted to customers. (Id. ¶ 11.)

     After an early payoff, TMCC sends the customer (including Plaintiffs and the Class) a uniform letter from "Toyota Financial Services" confirming that the finance agreement has been "paid in full."[1] (Id. ¶ 12.) In the letter, TMCC informs customers that "[i]f you have paid off your account before the original maturity date" (i.e., an "early payoff") "you may be entitled to a refund" for products such as GAP, and "you can cancel these products by contacting your dealer or the product provider/administrator directly." (Id.) Plaintiffs argue that these notices are misleading because customers are in fact entitled to a GAP refund; and the language discourages customers from seeking the refund. (Id.)

---

[1] Here Plaintiffs reference Exhibit D, which was filed with the original complaint. Dkt. No. 1.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-10518 JVS (MRW) | Date | November 15, 2022 |
|---|---|---|---|

| Title | William Martin et al v. Toyota Motor Credit Corporation et al |
|---|---|

Plaintiffs filed suit on November 17, 2020.  (Complaint, Dkt. No. 1.)  In the operative pleading, the SAC, Plaintiffs bring five causes of action for: (1) breach of contract; (2) breach of contract in statutory refund states; (3) violations of the California Consumer Legal Remedies Act; (4) violations of the California Unfair Business Practices Act; and (5) declaratory relief.  (See SAC ¶¶ 36-91.)

The lawsuit was deemed related to the then-pending Wells Fargo matter, 8:18-cv-00332-JVS (MRWx), which likewise concerned allegations that Wells Fargo failed to pay GAP refunds after early payoffs.  (Dkt. No. 5.)  This Court approved a final settlement in that case in an order dated November 16, 2021.  See Herrera v. Wells Fargo Bank, N.A., 2021 WL 9374975 (C.D. Cal. Nov. 16, 2021).  The TMCC matter was reassigned to this Court on November 18, 2020.  (Dkt. No. 12.)

> B.    *Summary of the Settlement*

> 1.    The Settlement Classes

The Settlement Class (also referred to as the "Class") includes two groups: the Statutory Class and the Non-Statutory Class.  (Settlement, Dkt. No. 60-1, ¶ 10.)  The Statutory Class is defined as:

> [A]ll persons in the United States: (a) who entered into Finance Agreements with GAP protection in the States of Alabama, Colorado, Indiana, Iowa, Massachusetts, New Jersey, Oklahoma, Oregon, Texas, Vermont, Wisconsin or Wyoming; (b) whose agreements were assigned to [TMCC]; (c) who paid off their Finance Agreements at least 30 days prior to the original maturity date; (d) whose Early Payoffs occurred during the Statutory Class Period; and; (e) who did not previously receive a GAP Refund or suffer a total loss of the Vehicle during the term of the Finance Agreement.

(Id. ¶ 60.)  The Non-Statutory Class is defined as:

> [A]ll persons in the United States (a) who entered into Finance Agreements with GAP protection that were assigned to [TMCC]; (b) who paid off their Finance Agreements at least 30 days prior to the original scheduled maturity

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-10518 JVS (MRW) | Date | November 15, 2022 |
|---|---|---|---|

| Title | William Martin et al v. Toyota Motor Credit Corporation et al |
|---|---|

date; (c) whose Early Payoffs occurred during the time period January 1, 2016 through October 25, 2021; and (d) who did not receive a GAP Refund, or suffer a total loss of the Vehicle during the term of the Finance Agreement. Excluded the Non-Statutory Class are any persons who fall under the definition of the Statutory Class. . . .

(Id. ¶ 44.)

### 2.    Consideration for Settlement

Under the terms of the Settlement, TMCC shall directly pay each member of the Statutory Class the full amount of their GAP Refund without any deduction for cancellation fees, plus interest at the applicable State-specific pre-judgment interest rate. (Settlement ¶ 103.) Based on the most recent data provided by TMCC, Plaintiffs' expert estimates that TMCC will pay over $21.5 million to the Statutory Class with an average payment per account of $471.97. (Decl. of L. Scott Baggett ("Baggett Decl."), Dkt. No. 88-3, ¶¶ 15, 34-36.)

Additionally, TMCC will pay members of the Non-Statutory Class who submitted an Approved Claim form from the Settlement Fund. (Settlement ¶ 104.) Non-Statutory Class members were required to submit a completed and signed Claim Form to the Settlement Administrator by the Claim Form Deadline of September 26, 2022. (Id.) At the time of this motion's filing, there were a number of potential Non-Statutory Class members who submitted a form before the deadline but was incomplete or otherwise insufficient. Those potential class members have been given an opportunity to cure their claim forms' deficiencies. (Longley Decl. Supp., Dkt. No. 106-2, ¶ 15.)

TMCC shall also establish a non-reversionary Settlement Fund totaling $59 million to pay for (a) approved claims for GAP Refunds to Non-Statutory Class members; (b) Notice and Administration Costs; (c) fee and expense awards approved by the court; and (d) service awards approved by the Court. (Id. ¶ 105.) Each member of the Non-Statutory Class will be eligible to submit a claim for up to the full amount of their GAP Refund, without any deduction for cancellation fees, to be paid from the Settlement Fund. (Id. ¶ 104.) Each Non-Statutory Class member will be required to submit a completed and signed Claim Form to the Settlement Administrator by the Claim Form deadline

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-10518 JVS (MRW) | Date | November 15, 2022 |
|---|---|---|---|

| Title | William Martin et al v. Toyota Motor Credit Corporation et al |
|---|---|

verifying that they are eligible for the GAP Refund. (Id.)

The Settlement includes as a benefit the "Business Practice Change." This change requires TMCC to automatically and directly provide GAP Refunds to customers in all U.S. States within a reasonable time after receipt of an Early Payoff, provided such payoff occurs more than thirty days prior to the original maturity date of the Finance Agreement. (Id. ¶ 102.) Customers are not required to take any action to seek a refund and no cancellation fee will be charged unless provided for in the customer's GAP agreement. (Id.) TMCC agrees that it will not materially change this practice for at least four years after the Settlement's effective date, and will not revert back to a state-by-state approach during this period. (Id.)

> 3.     Notice and Administrative Costs

The Settlement provides that Notice and Administration Costs shall be paid from the Settlement Fund. (Id. ¶ 106.) The Settlement Administrator initially agreed that these costs will not exceed $800,000, unless specifically approved by the Court and parties. (Id.) The Court previously approved Notice and Administration Costs up to $960,000, and the parties now jointly request this number increase to $1,020,000 to account for additional expenses incurred by the Settlement Administrator. (See Approval Mot.; Decl. of Scott H. Simms ("Sims Decl."), Dkt. No. 106-1, ¶ 2.)

> 4.     Fee and Expense Award

Class Counsel seek an attorneys' fee award not to exceed $19 million and an expense award of no more than $112,600. (Settlement ¶ 145.) No Class members objected to the attorneys' fee award. (Longley Decl. Supp. ¶ 8 However, TMCC has filed an opposition to this amount. (See Opp'n.) The Court will address the parties' contentions below. Any fee and expense awards approved by the Court will be paid from the Settlement Fund. (Settlement ¶ 107.)

> 5.     Service Award

The Settlement also provides for a Service Award of $2,500 to the two named Plaintiffs, Martin and Mitchell. The Service Awards will be paid from the Settlement

JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-10518 JVS (MRW) | Date | November 15, 2022 |

| | |
|---|---|
| Title | William Martin et al v. Toyota Motor Credit Corporation et al |

Fund.  (Id. ¶ 148.)  There are no objections to the Service Awards.  (Longley Decl. Supp. ¶ 8.)

      6.    Release

      Upon the effective date of the Settlement and pursuant to the Court's entry of the Final Approval Order and Judgment, Plaintiffs and each and every Class Member release Defendants from:

> [A]ny and all past and/or present claims, counterclaims, lawsuits, set-offs, costs, losses, rights, demands, charges, complaints, actions, causes of action, obligations, or liabilities of any and every kind, whether class, individual, or otherwise in nature, including, without limitation, those known or unknown or capable of being known; those which are unknown but might be discovered or discoverable based upon facts other than or different from those facts known or believed at this time; those which are foreseen or unforeseen, suspected or unsuspected, asserted or unasserted, and/or contingent or non-contingent; and those which are accrued, unaccrued, matured or not matured, under the laws of any jurisdiction, which they, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have, arising from or relating in any way to the Class Member's entitlement to a GAP Refund after an Early Payoff that occurred during the Class Period or Statutory Class Period, as appropriate (the "Class Released Claims"). For clarification, the Class Releasees do not include any Dealers or GAP Administrators (other than TMIS), including without limitation, those identified in the Class Members' GAP Agreements or Finance Agreements.

(Id. ¶ 97.)  The Settlement also provides that the Class Releasors shall not commence any future actions following the release of the Class Released Claims.  (Id. ¶ 98.)  The Release includes a covenant not to sue for the Class Releasors and a waiver of California Civil Code § 1542 and similar laws.  Finally, the Settlement provides: "Subject to Court approval, all Class Releasors shall be bound by this Agreement, and all of their claims shall be dismissed with prejudice and released, even if they never received actual notice of the Action or this Settlement."  (Id. ¶ 101.)

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-10518 JVS (MRW) | Date | November 15, 2022 |
|---|---|---|---|

| Title | William Martin et al v. Toyota Motor Credit Corporation et al |
|---|---|

7.      Notice and Claims Processing

The Court previously appointed Atticus Administration ("Atticus") to serve as the Settlement Administrator and ordered notices be sent to the Class on July 13, 2022. (Dkt. No. 63 at 19.) Atticus mailed notice to 663,343 potential class members, 627,164 of whom were potential Non-Statutory Class members and 36,179 of whom were identified as Statutory Class members. (Longley Decl. Supp. ¶ 4.) Additionally, where Atticus had access to potential Class members' email addresses, the Settlement Administrator also sent email notices. (Longley Decl. ¶ 9.) Where the initial notice was returned as undeliverable, Atticus took steps to re-mail notices to updated addresses where possible. (Longley Decl. Supp. ¶ 4.) At the time of this motion's filing, Atticus believes that 97.83% of the Class members have been successfully mailed notice. (Id. ¶ 5.)

Atticus also launched a digital notice campaign on July 27, 2022, including a Settlement Website. (Id. ¶ 6.) This website had received 425,521 total visits as of September 26, 2022, the Claim/Objection/Exclusion deadline. (Id.) As of the filing of this motion, 76,612 Approved Claims were submitted, and 12,376 timely claims that were incomplete but curable were submitted. (Id. ¶¶ 7-10.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure Rule 23(e) requires court approval for class-action settlements. Fed. R. Civ. P. 23(e). When the parties reach a settlement agreement before class certification, a court uses a two-step process to approve a class-action settlement. Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). First, the court must certify the proposed settlement class. (Id.) Second, the court must determine whether the proposed settlement is fundamentally fair, adequate, and reasonable. (Id.)

## III. DISCUSSION

The Final Settlement differs very little from the Preliminary Settlement the Court previously approved. (See Dkt. No. 63.) Accordingly, much of the Court's analysis follows the Preliminary Settlement Approval.

JS - 6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-10518 JVS (MRW) | Date | November 15, 2022 |

| | |
|---|---|
| Title | William Martin et al v. Toyota Motor Credit Corporation et al |

*A.    Class Certification*

The Court preliminarily certified the proposed Class in its prior order.  (Dkt. No. 68 at 8-11.)  No party has given the Court reason to revisit that earlier decision.  Therefore, for the reasons specified in its preliminary approval order, the Court certifies the Settlement Class for final approval of the Settlement.

*B.    Approval of the Proposed Class Settlement*

1.    The Fairness Factors Support Settlement Approval

Under Rule 23(e)(2) if the proposed settlement would bind class members, the Court may approve it only after a hearing and only on finding that it is fair, reasonable and adequate. To make this determination, the Court must consider the following factors:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Before the revisions to the Federal Rule of Civil Procedure 23(e), the Ninth Circuit had developed its own list of factors to be considered.  See e.g., In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 964 (9th Cir. 2011) (citing Churchill Village, L.L.C. v. General Electric, 361 F.3d 566, 575 (9th Cir. 2004)).  The revised Rule 23 "directs the parties to present [their] settlement to the court in terms of [this new] shorter list of core concerns[.]"  Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes.  "The

JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-10518 JVS (MRW) | Date | November 15, 2022 |

| | |
|---|---|
| Title | William Martin et al v. Toyota Motor Credit Corporation et al |

goal of [amended Rule 23(e)] is . . . to focus the [district] court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Id.

### a.    Adequacy of Representation by Class Representatives and Class Counsel

Under Rule 23(e)(2)(A), the first factor to be considered is whether the class representatives and class counsel have adequately represented the class. This analysis includes "the nature and amount of discovery" undertaken in the litigation. Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Committee Notes.  "The extent of the discovery conducted to date and the stage of the litigation are both indicators of [Class] Counsel's familiarity with the case and of Plaintiffs having enough information to make informed decisions." Jimenez v. Allstate Ins. Co., No. 10-cv-08486-JAK (FFMx), 2020 WL 11624498, at *8 (C.D. Cal. May 1, 2020) (quoting In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008)).

Here, the three separate sessions of mediation and extent of discovery support a finding of adequacy of class counsel and representation because it suggests that the parties fully understood the legal and factual issues surrounding the case.  See Nat'l Rural Telecomm. Coop. v. DirecTV, Inc., 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." (quoting 5 Moore's Federal Practice, § 23.85[2][e] (Matthew Bender 3d ed.)).

Additionally, the Court notes that Class Counsel engaged in sufficient discovery prior to reaching the Settlement.  The case settled after two mediations regarding the Settlement Class.  The parties then engaged in a third mediation regarding attorneys' fees. (Frank Decl. ¶¶ 16-18.)  The second two mediations followed the completion of Class discovery and the preparation of Plaintiffs' motion for class certification.  (Id. ¶¶ 13, 14, 35.)  Discovery in this case included (1) reviewing over 20,486 pages of documents, not including spreadsheets; (2) reviewing data for over 1.1 million Finance Agreements with GAP protection that were paid off early during the time period January 1, 2016 through October 25, 2021; and (3) taking five depositions.  (Id. ¶ 13.)

JS - 6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:20-cv-10518 JVS (MRW) | Date | November 15, 2022 |
|---|---|---|---|

| Title | William Martin et al v. Toyota Motor Credit Corporation et al |
|---|---|

Accordingly, the Court finds that the class representatives and class counsel adequately represented the class in this case.

### b.    Negotiated at Arm's Length

The second Rule 23(e)(2) factor asks the Court to confirm that the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B).  As with the preceding factor, this can be "described as [a] 'procedural' concern[], looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement."  Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes.  "[T]he involvement of a neutral or court-affiliated mediator or facilitator in [settlement] negotiations may bear on whether th[ose] [negotiations] were conducted in a manner that would protect and further the class interests."  Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes;  accord Pederson v. Airport Terminal Services, 2018 WL 2138457, at *7 (C.D. Cal. April 5, 2018) (the oversight "of an experienced mediator" reflected noncollusive negotiations).

Here, the settlement negotiations were conducted throughout the course of two separate full-day mediations before the Honorable Jay C. Gandhi (Ret.) and the Honorable Andrew J. Guilford (Ret.).  (Frank Decl., Dkt. No. 87-1 ¶¶ 16-17.)   These mediations were separated by almost nine months during which the parties conducted discovery.  During the mediation with Judge Guilford, the parties successfully reached an agreement on all material terms for the Settlement Class and entered a binding term sheet. (Id. ¶ 17.)  The parties then attended an additional mediation with Judge Guilford specifically to decide the issue of attorneys' fees.  (Frank Decl. ¶ 17.)  During this third session, Judge Guilford determined that $19 million was "fair, adequate, and reasonable" based on his knowledge and involvement in the matter and after applying both the percentage and lodestar methods.  (Guilford Decl., Dkt. No. 88-1 ¶¶ 7-9; Guilford Decl. Supp., Dkt. No. 121-1, ¶ 6.)

Accordingly, the Court concludes that the settlement is a product of informed, arms-length negotiations.

### c.    Adequacy of Relief Provided for the Class

JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No.     2:20-cv-10518 JVS (MRW)                    Date    November 15, 2022

Title        William Martin et al v. Toyota Motor Credit Corporation et al

The third factor the Court considers is whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C), Advisory Committee Notes.

The Settlement has separate provisions for the Statutory and Non-Statutory Class claims. Statutory Class members will receive the full refund and interest owed. Plaintiffs' expert estimates that TMCC will directly pay over $21.5 million to the Statutory Class with an average payout of $472. (Baggett Decl. ¶¶ 15, 25.) Non-Statutory Class members will receive their full GAP refund without a deduction for cancellation fees to be paid from the Settlement Fund. (Longley Decl. Supp. ¶¶ 15-18.) Non-Statutory Class members were required to submit a claim form by September 26, 2022. As of October 10, 2022, there have been 76,612 Approved Claims submitted by Non-Statutory Class members for a total of $30,795,265.23 million in GAP refunds. (Id. ¶ 15.) There are an additional 12,376 claims that were timely filed but contained incomplete information. Those potential Non-Statutory Class members have been given the opportunity to cure their claims' defects. If so cured, the total value of Approved Claims for Non-Statutory Class Members will be $35,934,364.39 with an average refund of $401 per account. (Id.) Accordingly, each participating class member will receive essentially 100% of their damages in this case. (Id.)

The Settlement also provides for a Service Award of $2,500 to the two named Plaintiffs, Martin and Mitchell. The Service Awards will be paid from the Settlement Fund. (Id. ¶ 148.) There are no objections to the Service Awards. (Longley Decl. Supp. ¶ 8.) Accordingly, the Court **GRANTS** a Service Award of $5,000 to be divided equally between the two named plaintiffs.

For these reasons, the Court finds the relief to be adequate.

                i.       Costs, Risks, and Delay of Trial and Appeal

JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-10518 JVS (MRW)              Date    November 15, 2022

Title    William Martin et al v. Toyota Motor Credit Corporation et al

"A[] central concern [when evaluating a proposed class action settlement] . . . relate[s] to the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. In evaluating this factor, the Court "must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case[.]" Kullar v. Foot Locker Retail, Inc., 168 Cal. App. 4th 116, 130 (2008). "In the context of a settlement . . . the test is not the maximum amount plaintiffs might have obtained at trial on the complaint, but rather whether the settlement is reasonable under all of the circumstances." Wershba v. Apple Computer, Inc., 91 Cal. App. 4th 224, 250 (2001).

Here, Plaintiffs believe the Automatic Refund Requirements mandated that TMCC directly issue the refunds to the Statutory Class, but Plaintiffs recognize the interpretation of these laws will, in most instances, present an issue of first impression and there is no guarantee Plaintiffs' view will prevail. (Frank Decl. ¶ 37(a).) The Non-Statutory Class faces additional challenges as it would not be able to rely on the automatic refund requirements and would also be subject to (1) TMCC's defense that they did not strictly comply with the written notice requirements in the GAP Agreements; and (2) the argument that TMCC did not assume the contractual obligation to issue the refund as part of the assignment of the initial finance agreement. (Id. ¶ 37(b).) TMCC notes that a significant percentage of the Class members are subject to arbitrations agreements with class action waivers, which would make bringing individual claims cost-prohibitive. (Id. ¶ 37(c).) Nor is there a guarantee that the Class would even be certified.

Accordingly, the costs, risks, and delay of trial and appeal favor final approval.

### ii.    Effectiveness of Proposed Method of Relief Distribution

Next, the Court must consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Id.

JS - 6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:20-cv-10518 JVS (MRW)          Date  November 15, 2022

Title  William Martin et al v. Toyota Motor Credit Corporation et al

Here, the relief distribution is straightforward.  Statutory Class members will not have to submit a claim and will directly receive their settlement payment from TMCC by mail; the payments of which will be verified by TMCC's records.  (Settlement ¶ 103; Dkt. No. 84.)  Non-Statutory Class members will be able to easily complete and submit their Claim Form online by scanning the QR Code on their Notice of Settlement or clicking on the link in the Email-Notice.  (Settlement ¶¶ 123-124.)  Non-Statutory Class members can also request a hard-copy of the Claim Form be mailed or emailed to them, or they can download and print it from the Settlement Website.  (Id.)  The Claim Form only requires the Non-Statutory Class members to check three boxes verifying their eligibility for Settlement relief and sign the Claim Form.  (Id.)  Approved claims to the Non-Statutory Class are to be paid electronically or by mail at the election of the Class member.  (Id.)  The Court previously found this similar claims process was a reasonable means of distributing relief in Wells Fargo.  Wells Fargo, 2021 WL 3932257, at *11.

### iii.    Terms of Proposed Award of Attorneys' Fees

Third, the Court must consider "the terms of any proposed award of attorneys' fees, including timing of payment."  Fed. R. Civ. P. 23(e)(2)(c).  In considering the proposed award of attorneys' fees, the Court must scrutinize the Settlement for three factors that tend to show collusion: "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a "clear sailing arrangement," under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement
contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class."  Briseno v. ConAgra Foods, Inc., 998 F.3d 1014, 1022 (9th Cir. 2021) (internal quotation marks omitted) (citing In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 947 (9th Cir. 2011)).  The Court must consider whether these factors exist in post-class certification settlements.  Id. at 1026.

In class action cases where the defendants provide monetary compensation to the plaintiffs, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method."  Bluetooth Headset, 654 F.3d at 942.  In the percentage method, "the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee," using 25% as a benchmark.  Hanlon, 150 F.3d at 1029.  Similar to the lodestar, the 25% benchmark can be adjusted upward or

JS - 6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  2:20-cv-10518 JVS (MRW)          Date  November 15, 2022

Title  William Martin et al v. Toyota Motor Credit Corporation et al

downward, depending on the circumstances. In re Hyundai & Kia Fuel Econ. Litig., 926
F.3d 539, 570 (9th Cir. 2019) (citing Six (6) Mexican Workers v. Ariz. Citrus Growers,
904 F.2d 1301, 1311 (9th Cir. 1990)).

As an initial matter, the proposed agreement does not contain a reverter clause that
returns unawarded fees to the defendant; any unawarded fees would be returned to the
general settlement fund.  Secondly, Plaintiffs have requested $19 million in attorneys fees
in accordance with Judge Guilford's recommendation.  (See Guilford Decl. ¶ 8.)  TMCC
has argues that this amount is unreasonable.  For reasons explored below, the Court finds
that $19 million is a reasonable fee and awards Plaintiffs' attorneys' fees in that amount.

### iv.   Agreement Identification Requirement

The Court must also evaluate any agreement made in connection with the proposed
Settlement.  See Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3).

Here, the Settlement Agreement before this Court is the only agreement. (Approval
Mot. at 24.)  Thus, the Court need not evaluate any additional agreements outside of the
evaluation it makes of the Settlement Agreement.

### d.   Equitable Treatment of Class Members

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats
class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  "Matters of
concern could include whether the apportionment of relief among class members takes
appropriate account of differences among their claims, and whether the scope of the
release may affect class members in different ways that bear on the apportionment of
relief."  Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Committee Notes.

Here, the Settlement distinguishes between Statutory Class members and the Non-
Statutory Class members.  (Frank Decl. ¶ 37(b).)  The Statutory Class members are
receiving refunds plus interest directly from TMCC.  (Settlement ¶ 103.)  Plaintiffs assert
that this is reasonable because the Statutory Class members have stronger claims because
they can rely on Automatic Refund Requirements, which require TMCC to "ensure" that
a GAP Refund is paid after an early payoff.  (Id.)  The Non-Statutory Class members

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-10518 JVS (MRW) | Date | November 15, 2022 |

| | |
|---|---|
| Title | William Martin et al v. Toyota Motor Credit Corporation et al |

must submit claims and will be paid from the Settlement Fund.  Otherwise, the Settlement and Release is the same for all Settlement Class members.  (Id. ¶ 97.)

As each of the above factors weighs in favor of approval, the Court **GRANTS** final approval of the class action settlement.

C.    *The Proposed Settlement Class Meets the Notice Requirements Under Federal Rule of Civil Procedure 23(c)(2)(B)*

Under Rule 23(c)(2)(B), "for any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2)(B) further states that the notice may be made by one of the following: United States mail, electronic means, or another type of appropriate means.  (Id.)  "The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  (Id.)

The Court finds that the class settlement meets Rule 23's notice requirements.  The Class Settlement Administrator, Atticus Administration ("Atticus"), sent notices to the Class beginning on July 13, 2022, per the Court's order.  (Dkt. No. 63 at 19.)  Atticus mailed notice to 663,343 potential class members, 627,164 of whom were potential Non-Statutory Class members and 36,179 of whom were identified as Statutory Class members.  (Longley Decl. Supp. ¶ 4.)  Additionally, where Atticus had access to potential Class members' email addresses, the Settlement Administrator also sent email notices. (Longley Decl. ¶ 9.)  Where the initial notice was returned as undeliverable, Atticus took steps to re-mail notices to updated addresses where possible.  (Longley Decl. Supp. ¶ 4.) At the time of this motion's filing, Atticus believes that 97.83% of the Class members have been successfully mailed notice.  (Id. ¶ 5.)

JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-10518 JVS (MRW) | Date | November 15, 2022 |
|----------|--------------------------|------|-------------------|

| Title | William Martin et al v. Toyota Motor Credit Corporation et al |
|-------|---------------------------------------------------------------|

Additionally, Atticus slaunched a digital notice campaign on July 27, 2022, including a Settlement Website. (Id. ¶ 6.) This website had received 425,521 total visits as of September 26, 2022, the Claim/Objection/Exclusion deadline. (Id.) As of the filing of this motion, 76,612 Approved Claims were submitted, and 12,376 timely claims that were incomplete but curable were submitted. (Id. ¶¶ 7-10.)

The Settlement provides that Notice and Administration Costs shall be paid from the Settlement Fund. (Id. ¶ 106.) The Settlement Administrator initially agreed that these costs will not exceed $800,000, unless specifically approved by the Court and parties. (Id.) The Court previously approved Notice and Administration Costs up to $960,000, and the parties now jointly request this number increase to $1,020,000 to account for additional expenses incurred by the Settlement Administrator. (See Approval Mot.; Decl. of Scott H. Simms ("Sims Decl."), Dkt. No. 106-1, ¶ 2.) Because the Settlement Administrator attests that there will be sufficient money in the Net Settlement Fund to increase the Notice and Administration Costs without decreasing the amount paid to any Class members, the Court **GRANTS** the request. (Longley Decl. Supp., Dkt. No. 106-2 ¶ 18.)

Thus, the Court finds that the Settlement meets Rule 23(c)(2)(B)'s notice requirements.

### D.   Attorneys' Fees

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Attorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is 'fundamentally fair, adequate, and reasonable.'" Staton, 327 F.3d at 963 (quoting Fed. R. Civ. P. 23(e)). "The reasonableness of any fee award must be considered against the backdrop of the 'American Rule,' which provides that courts generally are without discretion to award attorneys' fees to a prevailing plaintiff unless (1) fee-shifting is expressly authorized by the governing statute; (2) the opponents acted in bad faith or willfully violated a court order; or (3) 'the successful litigants have created a common fund for recovery or extended a substantial benefit to a class.'" In re Bluetooth, 654 F.3d at 941 (quoting Alyeska Pipeline Service Co. v. Wilderness Society,

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    2:20-cv-10518 JVS (MRW)                Date    November 15, 2022

Title    William Martin et al v. Toyota Motor Credit Corporation et al

421 U.S. 240, 275 (1975) (Brennan, J., dissenting)).

"In class action cases where the defendants provide monetary compensation to the plaintiffs, 'courts have discretion to employ either the lodestar method or the percentage-of-recovery method.'" In re Hyundai and Kia Fuel Economy Litigation, 926 F.3d 539, 570 (9th Cir. 2019) (en banc) (quoting In re Bluetooth, 654 F.3d at 942).  Thus, the court evaluates the fee request under both methods.

        1.    Percentage Method

"[W]here the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained may courts include such relief as part of the value of a common fund for purposes of applying the percentage method of determining fees." Staton, 327 F.3d at 974.  The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998). The Court has discretion in determining what constitutes the total value of the settlement in the denominator.  See In re Online DVD, 779 F.3d at 953.  The benchmark is also not rigid - it leaves room for the consideration the circumstances of the case.  Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047-50 (9th Cir. 2002).  A "mechanical or formulaic application" of the percentage method is inappropriate "where it yields an unreasonable result."  In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 109 F.3d 602, 607 (9th Cir. 1997). Relevant factors in determining the reasonableness of the fee award include the results achieved, the risk of the litigation, the skill required, and the contingent nature of the fee. Id.

Plaintiffs request $19 million in attorneys fees, adopting the recommendation of Judge Guilford in his capacity as mediator.  (See Fees Mot. at 10; Guilford Decl., Dkt. No. 88-1 ¶7.)  TMCC challenges the recommendation on the basis that Judge Guilford provided "no reasoning or analysis to support his figure."  (Opp'n. at 3-4.)  Notably, in their reply, Plaintiffs include a supplemental declaration from Judge Guilford.  He states in this declaration that TMCC's characterization of his recommendation was "not accurate," necessitating a correction of the record.  (Dkt. No. 121-1, Guilford Decl. Supp. ¶ 3.)  Judge Guilford clarified that he did, in fact, "consider[] the percentage method and lodestar method in determining an appropriate mediator's proposal."  (Id. ¶ 6.)

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-10518 JVS (MRW) | Date | November 15, 2022 |
|---|---|---|---|

| Title | William Martin et al v. Toyota Motor Credit Corporation et al |
|---|---|

Accordingly, while the Court maintains the sole discretion to determine the appropriate fees, costs, and incentive awards, the Court gives due regard to Judge Guilford's recommendation.

Plaintiffs contend that the total value of the settlement is over $107.8 million. (Fees Mot. at 18.) They calculate this number by adding (1) the Settlement Fund ($49 million); (2) the money TMCC paid to the Statutory Class ($21.5 million); (3) the notice and administrative costs ($1.02 million); and (4) the future value of the Business Practice Change for existing Class Members ($27.3 million). (Id.) TMCC agrees with the inclusion of all but one of these figures: the future value of the Business Practice Change for existing Class Members. (Opp'n. at 21.)

In Herrera v. Wells Fargo Bank, N.A., this Court approved the inclusion of "the future value of the Business Practice Change to class members" in the total value of the settlement. 2021 WL 9374975, at *12 (C.D. Cal. Nov. 16, 2021). TMCC asserts that the Court should not do the same here, because TMCC had begun to discuss changing its business practice before the present action was filed. (Shivley Decl., Ex. 1 at 40:18 - 41:21.) Conversely, in Herrera, Wells Fargo changed its business practice as a result of the settlement. 2021 WL 9374975, at *12. However, TMCC does not present any evidence that it, in fact, changed its business practice before this lawsuit was filed, nor that it would have done so but for the pseudo-injunctive relief obtained by Plaintiffs. While TMCC cites testimony that this change was being discussed in July 2020, before this suit was filed, Plaintiffs note that the testimony goes on to say that TMCC had been discussing this change "for years" without taking any action. (Frank. Decl. Supp. Ex. B, 38:16-29, 41:9-42:3.) In further support, Plaintiffs proffer a TMCC email evidencing that two months after this case was filed, TMCC engaged in its "first touchbase" to discuss whether they would "move[] to cancelling GP" refunds "in all states for prepaid accounts." (See Frank Decl. Supp., Ex. A; Ex. B, at 73:21-75:6, 77:6-25.) The Court therefore finds that the value of the Business Practice Change to class members may be properly included in the total value of the settlement. See Herrera, WL 9374975, at *12.

Plaintiffs have produced evidence that the amount that would be paid to existing Class members is readily ascertainable. (See Baggett Decl., Dkt. No. 88-3, ¶¶ 32-44). Thus, the Court finds that the total value of the settlement is $107.8 million. Accordingly, Class Counsel's requested $19 million is 17.6% of the total settlement, well

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-10518 JVS (MRW) | Date | November 15, 2022 |
| --- | --- | --- | --- |

| Title | William Martin et al v. Toyota Motor Credit Corporation et al |
| --- | --- |

below the Ninth Circuit's 25% benchmark. See Hanlon, 150 F.3d at 1029. However, the Court retains the discretion to adjust the benchmark percentage where the result would be unreasonable. See Petroleum Prods., 109 F.3d at 607. Relevant factors in determining the reasonableness of the fee award include the results achieved, the risk of the litigation, the skill required, and the contingent nature of the fee. Id. The Court recognizes that this case was resolved relatively quickly, resulting in 3,099.30 hours billed by Class Counsel, which is significantly less than in Herrera. 2021 WL 9375975, at *13 (17,711.6 hours). (See Frank Decl., Dkt. No. 88-5 ¶ 40). Further, although this case involved some risks, it was not "extremely risky," as Class Counsel avers. In support of its argument that Class Counsel brought this case at extreme risk to themselves, Plaintiffs note that this Court had previously dismissed the complaint in Herrera with leave to amend. (Fees Mot. at 23.) However, Class Counsel brought this action within a few months of the Court approving a final settlement in Herrera. (Case No. 8:18-cv-00332, Dkt. No. 209.) Given that this case involved nearly identical GAP Agreement policies as the plaintiffs in Herrera, the risk of bringing the present action was relatively slight.

Notwithstanding the above, Class Counsel achieved exceptional results for the class. The settlement includes a 100% refund for each class member. (Frank Decl. ¶ 36.) Additionally, Class Counsel generated benefits beyond the cash settlement fund in the form of a Business Practice Change requiring TMCC to automatically pay GAP refunds directly to consumers who pay off their GAP insurance early. (Longley Decl. ¶ 30; Settlement ¶ 102.) Further, Class Counsel took the case on a full contingency basis. (Frank Decl. ¶ 39.) On balance, the Court finds that the factors support the reasonableness of a 17.6% attorneys' fee.

Thus, the Court finds that $19 million is a reasonable attorneys' fee under the percentage model.

### 2. Lodestar Method

The Ninth Circuit encourages courts to use the lodestar method as a "cross-check" on the reasonableness of a fee award determined with the percentage method. See Vizcaino, 290 F.3d at 1050; Petroleum Prods., 109 F.3d at 607 ("It is reasonable for the district court to compare the lodestar fee, or sum of lodestar fees, to the 25% benchmark, as one measure of the reasonableness of the attorneys' hours and rates.").

JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-10518 JVS (MRW) | Date | November 15, 2022 |

| | |
|---|---|
| Title | William Martin et al v. Toyota Motor Credit Corporation et al |

To calculate the "lodestar," the court must multiply the number of hours the attorneys reasonably spent on the litigation by the reasonable hourly rate in the community for similar work. <u>McElwaine v. U.S. West, Inc.</u>, 176 F.3d 1167, 1173 (9th Cir. 1999). The court may raise or lower the lodestar based on several factors:

(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

<u>Fischel v. Equitable Life Assurance Soc'y</u>, 307 F.3d 997, 1007 n.7 (9th Cir. 2002). The court must be cautious, however, not to adjust the lodestar figure based on any of the foregoing factors that are subsumed in the original lodestar calculation. <u>Morales v. City of San Rafael</u>, 96 F.3d 359, 364 & n.9 (9th Cir. 1996). The Ninth Circuit has noted that multipliers range from 1.0-4.0 and a "bare majority" fall within the range of 1.5-3.0. <u>Vizcaino</u>, 290 F.3d at 1051 n.6; <u>Van Vranken v. Atl. Richfield Co.</u>, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation.").

Class Counsel provide declarations attesting that they spent 3,099.3 hours on this case, resulting in over $2.4 million. (Frank Decl. ¶¶ 40-42.) TMCC contests the accuracy and veracity of Class Counsel's time-keeping in four ways: improper staffing, duplicative work and transient timekeepers, block billing, and excessive internal conferencing and excessive research. (<u>See</u> Opp'n at 14-18.) As to TMCC's contentions that too many attorneys attended depositions and reviewed filings, TMCC does not point to any legal authority from this circuit counseling that this Court should "impose its own judgment regarding the best way to operate a law firm, nor to determine if different staffing decisions might have led to different fee requests." <u>Moreno v. City of Sacramento</u>, 534 F.3d 1106, 1115 (9th Cir. 2008). Similarly, TMCC petitions the Court to decrease the lodestar by more than $100,000 for "transient timekeepers" who engaged in "duplicative and unnecessary work." (Opp'n. at 16.) However, TMCC again fails to

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-10518 JVS (MRW)                Date   November 15, 2022

Title   William Martin et al v. Toyota Motor Credit Corporation et al

cite to any legal authority in this circuit indicating that merely having multiple attorneys attend depositions or review motions is cause to reduce the lodestar by 50%. See Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1111-12 (9th Cir. 2014) ("duplicative work is not inherently inappropriate") (citing Moreno, 534 F.3d at 1112).

The same is true for TMCC's argument that Class Counsel engaged in "excessive internal conferencing" and "excessive research." TMCC cites to Gauchat-Hargis v. Forest River, Inc., in which the district court eliminated 20.5 hours where it appeared "that senior attorneys were spending time educating more junior attorneys." 2013 WL 4828594, at *3 (E.D. Cal. Sep. 9, 2013). TMCC does not contend here that senior attorneys were spending time educating junior attorneys; on the contrary, TMCC argues that not enough junior attorneys were staffed on the case at all. Consequently, the Court declines to reduce the hours simply because Class Counsel communicated frequently and engaged in research TMCC views as unnecessary. See Charlebois v. Angels Baseball LP, 993 F. Supp. 2d 1109, 1125 (C.D. Cal. 2012) (declining to reduce the number of hours because "Class Counsel kept each other informed about the case and double-checked each other's work"); Moreno, 534 F.3d at 1112 ("the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.").

TMCC also raises concerns that partners from Frank Sims & Stolper and Azar & Associates, the two firms representing the Class, billed too many hours for document review and other discovery. (Opp'n. at 15; Stiefel Decl., Dkt. No. 107-1 at 16-17.) See Dahan v. Sussman Shank, LLC., 2017 WL 2713737, at 88 (C.D. Cal. Feb. 7, 2017) (faulting senior attorney for billing "tasks properly done by a more junior attorney, such as document review and discovery requests or responses"). However, the majority of time recorded by Azar & Associates was billed by junior attorneys. (See Stiefel Decl. at ¶ 27.) Additionally, Class Counsel states that it is Frank Sims & Stolper's "general practice" to have partners "intimately involved in all aspects of the litigation, including drafting pleadings, taking depositions, conducting research, and high level document review." (Reply at 24; Frank Decl. Supp. ¶ 38.) As such, the fact that most work typically assigned to junior attorneys was done by partners at this firm is not reason to reduce the number of hours or rates. See Moreno, 534 F.3d at 1112 ("By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   2:20-cv-10518 JVS (MRW)                    Date   November 15, 2022

Title   William Martin et al v. Toyota Motor Credit Corporation et al

more of a slacker."). Cf. Garcia v. City of Santa Clara, 2017 WL 1398263, at *5 (N.D. Cal. Apr. 19, 2017) (there was "no need" for senior associate to have conducted document review).

Finally, TMCC argues that the Court should reduce the "block-billed" hours by 20%, the "amount noted by the Ninth Circuit as the middle range for time increases that occurs through block billing." (Opp'n. at 17.) Hajro v. U.S. Citizenship & Immigr. Servs., 900 F. Supp. 2d 1034, 1053 (N.D. Cal. 2012). Block billing is inappropriate where individual or unrelated tasks are lumped together "because that practice can make it difficult, if not impossible, for the court to assess the reasonableness of the tie spent on each task." Crandall v. Starbucks Corp., 2016 WL 2996935, at *3 (N.D. Cal. May 25, 2016). Upon reviewing the 24 page exhibit purporting to summarize "the 1,602 block-billed hours" recorded by Class Counsel, (Stiefel Decl., Ex. G), the Court finds that the majority are not "block-billed," but rather contain a detailed description of a task or a series of related tasks. For example, Jason Frank billed 8.5 hours on July 12, 2021 and included the following description: "Prepare for deposition; review documents re same; review notice of deposition." (Id. at 5.) Although this entry, and many others like it, contains more than one item, all actions listed are related to the same underlying task and should not be excluded or reduced on that basis. See Roadrunner Transp. Servs., Inc. v. Tarwater, 2013 WL 12170492, at *2 (C.D. Cal. Dec. 9, 2013) ("Attorneys do not have to make one billing entry per task for a court to see where time was spent"). Accordingly, the Court accepts the reasonableness and veracity of Class Counsel's billing practices.

Class Counsel additionally estimate they will incur "at least an additional $600,000 in fees opposing TMCC's efforts, and performing other work to secure the implementation of this Settlement." (Frank Decl. ¶¶ 40-42.) Although this is merely a projection, the Court finds that projected fees are appropriate considerations in lodestar cross-checks. See In re Volkswagen "Clean Diesel" Litig., 746 F. App'x. 655, 649 (9th Cir. 2018) (holding that "[t]he district court did not err in including projected time in its lodestar cross-check"); Hanlon, 150 F.3d at 1029-30 (finding no abuse of discretion where the district court considered projected future fees to "enforce the contractual elements of the settlement agreement and represent any class members who encounter difficulties"). However, the Court declines to aggregate fees incurred by Class Counsel in the separate but related Herrera case. (See Fees Mot. at 27-28.) Although doing so would only be for purposes of performing a lodestar cross-check, Class Counsel was

JS - 6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-10518 JVS (MRW) | Date | November 15, 2022 |
|---|---|---|---|

| Title | William Martin et al v. Toyota Motor Credit Corporation et al |
|---|---|

previously compensated for the work they did in Herrera.  See Herrera, 2021 WL 9374975, at *14;  Lobatz v. U.S. W. Cellular of California, Inc., 222 F.3d 1142, 1149 (9th Cir. 2000) (affirming the district court's decision to aggregate the number of hours class counsel spent on separate but related litigation because the court "did not determine that the attorney fee award at the time of the . . . settlement was to compensate class counsel for all the hours they had spent on the case to that point").

For these reasons, the Court finds that the proper lodestar is $3 million. A $19 million fee award therefore results in a 6.33 multiplier.  Although this multiplier is higher than those in common fund cases, the Ninth Circuit approved a similar multiplier resulting in a 25% fee award as it fell "well within the range of multipliers that courts have allowed." Steiner v. Am. Broad Co., 248 Fed. Appx. 780, 783 (9th Cir. 2007) (citing Vizcaino, 290 F.3d at 1051 n. 6 (finding a range of multipliers from 0.6 to 19.6).) Further, Class Counsel "should not be 'punished' for efficiently litigating this action" and achieving a settlement before billing more hours.  In re Volkswagon "Clean Diesel" Mktg., 2017 WL 1352859, *6 (N.D. Cal. Apr. 12, 2017).  Finally, a $19 million fee award will not result in reducing the recovery of any Class Member.  On the contrary, Plaintiffs estimate that there will be between $2.9 and $8.9 million left in the Settlement Fund for a potential *cy pres* distribution.  (Reply at 6.)

The overriding factor in approving the fee request is the fact that all class members will be made whole or substantially whole.  That is a highly unusual outcome, and the fee award reflects that fact.

Accordingly, the Court **GRANTS** Plaintiffs' request for a $19 million fee award.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** final approval of the Settlement, **GRANTS** Plaintiffs $19 million in attorneys' fees, **GRANTS** a total of $1,020,000 in Notice and Administration Costs, and **GRANTS** a total of $5,000 in service payments to be divided equally between the named Plaintiffs.

**IT IS SO ORDERED.**